1  RIMAC & MARTIN
   A Professional Corporation
2  JOSEPH M. RIMAC – CSBN 72381
   WILLIAM REILLY – CSBN 177550
3  1051 Divisadero Street
   San Francisco, CA 94115
4  Telephone: (415) 561-8440
   Facsimile:  (415) 561-8430
5
6  MCGUINN, HILLSMAN & PALEFSKY
   CLIFF PALEFSKY (State Bar No. 77683)
7  KEITH EHRMAN (State Bar No. 106985)
   535 Pacific Ave.
8  San Francisco, CA 94133
   Telephone: (415) 421-9292
9  Facsimile: (415) 403-0202

10 Attorneys for Plaintiff
   HUGO SLUIMER

11

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15

16 HUGO SLUIMER,                          )
                                          ) CASE NO.
17            Plaintiff,                   )
                                          ) **COMPLAINT FOR BENEFITS AND**
18 v.                                      ) **RELIEF UNDER ERISA**
                                          )
19 VERITY, INC., a corporation, and THE   )
   VERITY INC. CHANGE IN CONTROL          )
20 AND SEVERANCE BENEFIT PLAN,            )
                                          )
21            Defendants.                 )
                                          )
22 ─────────────────────────────────────  )

23

24                        **JURISDICTION**

25      1.      This action for declaratory, injunctive, and monetary relief is brought pursuant to §

26 502 of ERISA (29 U.S.C. § 1132), and the Declaratory Judgment Act, 28 U.S.C. § 2201.  This Court

27 has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because this

28 action arises under the laws of the United States.

**VENUE**

2.     Venue lies in the Northern District of California because, pursuant to ERISA § 502 (e) (2) (29 U.S.C. § 1132 (e) (2)), Defendant THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE BENEFIT PLAN (the "PLAN") is administered in this District and the wrongful conduct alleged herein took place in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391 (b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

**PARTIES**

3.     At all relevant times, Plaintiff HUGO SLUIMER was, and is, a PLAN PARTICIPANT, as defined in ERISA § 3 (7) (29 U.S.C. § 1002 (7)).

4.     At all relevant times, Defendant VERITY, INC. ("VERITY") was a corporation organized under one of the United States, with its current corporate headquarters in San Francisco, California.  VERITY develops and sells business software worldwide.  At all relevant times, Defendant PLAN was an employee welfare benefit plan within the meaning of ERISA § 3 (1) (29 U.S.C. § 1002 (1)), sponsored and administered by VERITY .  At all relevant times, the PLAN was administered, at least in part, in the Northern District of California.  At all relevant times, the PLAN offered severance and other benefits to certain employees of VERITY, including Plaintiff.

5.     At all relevant times, VERITY was a fiduciary of the PLAN within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002 (21).  At all relevant times, VERITY exercised control over the payment of severance and other benefits which are PLAN assets.  This lawsuit arises out of VERITY's failure to grant certain benefits to Plaintiff to which Plaintiff was entitled under the terms of the PLAN.

**FACTS COMMON TO ALL CLAIMS**

6.     Plaintiff became employed by VERITY in 1990.  Plaintiff worked for VERITY for more than fifteen years and received multiple promotions during that time.  As of 2005, Plaintiff was VERITY's Senior Vice President for EMEA (Europe, Middle East and Africa) and APAC (Asia Pacific) Operations.  In this role, Plaintiff had responsibility for all of VERITY's worldwide operations outside of the Americas, and was one of VERITY's most senior executives.  In his

COMPLAINT FOR BENEFITS [ERISA]                                   CASE NO.

1  capacity as Senior Vice President for EMEA and APAC Operations, Plaintiff had responsibility for

2  over 100 reports, including 10 country managers; Plaintiff was responsible for overseeing operations

3  generating approximately $50,000,000 in revenue (roughly half of VERITY's total worldwide

4  revenue); and Plaintiff reported directly to VERITY's President/CEO.  In his capacity as Senior Vice

5  President for EMEA and APAC Operations, Plaintiff had responsibility for all aspects of VERITY

6  operations outside of the Americas, including responsibility for sales, marketing, finance,

7  administration, technical operations, and oversight of consultants.

8         7.     As of April 2005, VERITY was evaluating the possibility of being acquired by and/or

9  merged with another company.  On April 6, 2005, as an incentive to keep certain VERITY

10  employees employed during this transition process, and to provide certain benefits to employees in

11  the event of a 'change of control' and subsequent termination, VERITY created the PLAN.  Among

12  other things, the PLAN provided that, if a PLAN participant suffered a "covered termination" within

13  18 months following a "change of control", the PLAN participant was entitled to receive certain

14  benefits, including: a cash severance payment, accelerated stock option vesting, an extended time

15  period in which to exercise stock options, continued medical benefits, and other benefits.  Under the

16  PLAN, a "covered termination" was defined as either an "involuntary termination without cause" or

17  a "constructive termination".  Under the PLAN, a "constructive termination" occurred when there

18  was a "substantial reduction in the [employee's] duties or responsibilities...in effect immediately

19  prior to the...Change of Control . . ."

20         8.     On May 4, 2005 VERITY provided Plaintiff with a Participation Notice for the

21  PLAN, which confirmed that Plaintiff was a PLAN participant. The Participation Notice confirmed

22  that, as a PLAN participant, Plaintiff was eligible for benefits under the PLAN in the event that he

23  suffered a "covered termination" following a "change of control".  These benefits included

24  Accelerated Vesting of Stock Options, Extended Exercisability of Stock Options and Continued

25  Medical Benefits.  Because Plaintiff was a Dutch citizen, Plaintiff elected to not participate in the

26  cash severance benefit provided to other PLAN participants.  Instead, Plaintiff chose to have his cash

27  severance payment governed by Dutch law.  Plaintiff's Participation Notice specifically noted that

28  Plaintiff had declined to participate in the cash severance payment benefits portion of the PLAN, but

COMPLAINT FOR BENEFITS [ERISA]                CASE NO.

1   confirmed that Plaintiff was otherwise a PLAN participant and thus eligible for the other PLAN

2   benefits in the event of a "covered termination", including accelerated vesting of stock options.

3        9. The PLAN provided that the PLAN ADMINISTRATOR was the VERITY Vice President

4   of Human Resources, who was located at VERITY's corporate headquarters within the Northern

5   District of California, and that Plaintiff should direct applications for benefits or inquiries about the

6   PLAN to the PLAN Administrator.

7        10.    In or about December 2005, VERITY entered into an agreement to be acquired by,

8   and was acquired by, AUTONOMY COMPANY PLC ("Autonomy").  Autonomy was a software

9   developer headquartered in England.  In acquiring VERITY, Autonomy assumed liability for many

10  of VERITY's obligations.  Autonomy's acquisition of VERITY constituted a "change of

11  control"under the terms of the PLAN.  Therefore, under the terms of the PLAN, if Plaintiff suffered

12  a "covered termination" within the next 18 months, Plaintiff was entitled to receive benefits under

13  the PLAN, including accelerated vesting of Plaintiff's stock options.

14       11.    On December 29, 2005, Autonomy sent a letter to Plaintiff, entitled  "Warning of

15  Possible Redundancy - Acquisition of Verity, Inc. by Autonomy Corporation PLC".  In this letter,

16  Plaintiff was warned that his position had been identified as "at risk of redundancy", and that "if...a

17  suitable alternative position is not identified, [Autonomy] may proceed to terminate your

18  employment by reason of redundancy."  Plaintiff received this letter on January 6, 2006.

19       12.  On January 5, 2006, Plaintiff was contacted by Autonomy's Chief Operating Officer,

20  Andrew Kanter ("Kanter").  Kanter was fully aware of Plaintiff's job title and duties and

21  responsibilities at VERITY.  Kanter informed Plaintiff that there was no similar position at

22  Autonomy which would be available to Plaintiff.  A few hours after the call, Plaintiff's company e-

23  mail was shut off without notice to Plaintiff, and all of Plaintiff's e-mails were re-directed to

24  Autonomy's Chief Financial Officer.  During January 2006, Autonomy informed Plaintiff's co-

25  workers and clients that Plaintiff would no longer be working with the company.  Consistent with

26  instructions given to him, Plaintiff ceased performing work.

27       13.    On approximately January 24, 2006, Kanter met with Plaintiff and read to Plaintiff a

28  draft "exit letter" which stated that Autonomy could not offer Plaintiff an equal position at

-4-

1   Autonomy compared to the position he had at VERITY. Kanter then suggested to Plaintiff that

2   Plaintiff propose an "exit fee", i.e., an appropriate employment separation package. Between

3   January and March 2006, Plaintiff informed Kanter that he was entitled to certain severance and

4   other benefits as a result of the "change of control" and lack of a comparable job for him at

5   Autonomy, and that he expected Autonomy/VERITY to honor its legal obligations to him.

6       14.    On approximately March 23, 2006, Kanter sent Plaintiff a letter in which he

7   acknowledged that Plaintiff's job as Senior Vice President of EMEA and APAC Operations had

8   lapsed. In a bad faith effort to avoid payment to Plaintiff of severance and other PLAN benefits,

9   Kanter informed Plaintiff that Autonomy had found Plaintiff an "alternative opportunity" in a

10  division of Autonomy. In fact, the "alternative" job offered to Plaintiff by Kanter appeared on its

11  face to involve a substantial reduction in Plaintiff's duties and responsibilities from his prior job as

12  Senior Vice President for EMEA and APAC Operations. In addition, the "alternative" job offered to

13  Plaintiff did not have a clearly defined role, responsibilities, business plan or reporting structure.

14      15.    On April 3, 2006, Plaintiff informed Kanter in writing that the "alternative" position

15  offered by Kanter appeared to be completely different from his job as Senior Vice President of

16  EMEA and APAC, and that nobody had yet been able to provide a clear job description or plan for

17  him. On April 7, 2006, Plaintiff informed Kanter in writing that he believed his employment had

18  been terminated in accordance with the change of control provisions of the PLAN, and that he

19  should therefore be entitled to accelerated vesting of his stock options and continued medical

20  benefits. Plaintiff also informed Kanter that because his employment had been terminated following

21  the change of control, he was also entitled to receive a cash severance payment under Dutch law.

22      16. During March and April 2006, Plaintiff and Kanter had a series of oral conversations, as

23  well as written communications, in which Plaintiff explained that the "alternative" job was not

24  comparable to his prior VERITY job as Senior Vice President, and that Plaintiff was therefore

25  entitled to a cash severance payment and to certain benefits under the PLAN. Kanter knew and

26  believed that the job offered to Plaintiff by Autonomy involved a substantial reduction in duties and

27  responsibilities; was not 'comparable' to Plaintiff's VERITY job; that Plaintiff had been

28  'constructively terminated' within the definition of the PLAN; and that Plaintiff was thus legally

**COMPLAINT FOR BENEFITS [ERISA]**                                    **CASE NO.**

1  entitled to benefits under the PLAN.  However, in his capacity as COO of Autonomy, Kanter

2  wanted to avoid paying Plaintiff any compensation and benefits resulting from this constructive

3  termination, in an effort to save money for Autonomy and VERITY.  Therefore, in a bad faith effort

4  to avoid paying Plaintiff the severance and benefits due to him, Kanter told Plaintiff that his

5  employment "had not been terminated" and that Plaintiff was therefore not entitled to any severance

6  or benefits under the PLAN.

7        17.  On April 11, 2006, Kanter asked Plaintiff to meet with David Humphries ("Humphries")

8  to discuss Plaintiff's "alternative job".  Kanter had informed Plaintiff that Humphries was to be

9  Plaintiff's supervisor in the new job Kanter had offered to Plaintiff.  On April 18, 2006, Plaintiff met

10  with Humphries to discuss the "alternative job".  Based on Plaintiff's conversation with Humphries

11  and Humphries' description of Plaintiff's expected role and duties, it was clarified and re-confirmed

12  that the "alternative" job offered by Autonomy would involve a substantial reduction in Plaintiff's

13  job duties and responsibilities compared to Plaintiff's prior job as VERITY's Senior Vice President

14  of EMEA and APAC Operations, and that the jobs were not at all comparable.  For example, in

15  Plaintiff's "new" job, he would have approximately 5 reports (rather than 100); he would be

16  responsible for overseeing approximately $3,000,000--$5,000,000 in annual revenue (rather than

17  overseeing $50,000,000 in annual revenue); he would be responsible only for the sales function

18  (rather than being responsible for sales, marketing, administration, finance, technical operations and

19  consultants); he would be reporting to a "Director" level employee (rather than reporting directly to

20  the President/CEO); and he would be responsible for selling in a specialized niche market within

21  Autonomy (rather than focusing on the company's core business).

22        18.  Plaintiff wrote to Kanter on April 25, 2006, and informed him that the "alternative" job

23  offered by Autonomy was obviously "not comparable at all" to his former job with VERITY. Both

24  Kanter and Plaintiff knew and believed that the "alternative" position offered to Plaintiff involved a

25  substantial reduction in job duties and responsibilities, and that Plaintiff had therefore suffered a

26  "constructive termination" under the terms of the PLAN.  Nevertheless, in a bad faith effort to save

27  Autonomy and VERITY money in his capacity as COO of Autonomy, Kanter again refused to

28  acknowledge that Plaintiff had been constructively terminated.

-6-

COMPLAINT FOR BENEFITS [ERISA]                    CASE NO.

19. In April 2006, Plantiff filed a lawsuit in a Dutch court, in order to recover severance pay under Dutch law as a result of Autonomy's failure to give him a comparable job following the change of control ("the Dutch Lawsuit"). Plaintiff's attorneys served the legal papers for this lawsuit on Autonomy on approximately April 27, 2006.

20. On May 1, 2006, because Autonomy had failed to give Plaintiff a comparable job following the change of control and Plaintiff had experienced a constructive termination under the PLAN, Plaintiff wrote to the PLAN Administrator (Jack Landers, the Vice President of Human Resources for VERITY in California) as required by the PLAN, and informed the Administrator that there had been a change of control under the terms of the PLAN and that Plaintiff was now entitled to receive the benefits due him under the PLAN, including accelerated vesting of options.

21. In response to Plaintiff's May 1, 2006 letter to the PLAN Administrator, Kanter wrote to Plaintiff on May 3, 2006, and asserted that Plaintiff was not entitled to benefits under the PLAN on the grounds that Plaintiff had been offered "re-employment" by Autonomy. As of May 3, 2006, Kanter was not the PLAN Administrator nor did Kanter have any authority under the PLAN to make a determination to deny Plaintiff benefits under the PLAN, nor did Kanter claim to have any authority to make such a decision.

22. In April and May 2006, as part of the Dutch Lawsuit proceedings, Plaintiff submitted written materials to the Court (and to Autonomy/VERITY) which described Plaintiff's job duties and responsibilities as VERITY Vice President of EMEA and APAC Operations; described his duties and responsibilities in his "alternative" job at Autonomy; and explained why the two positions were not comparable and constituted a substantial reduction in Plaintiff's job duties and responsibilities. In addition, as part of the Dutch Lawsuit proceedings, the Dutch Court held a hearing on approximately May 30, 2006. Both Plaintiff and Kanter attended this hearing, with Kanter appearing as the company's representative and witness. During the May 30, 2006 hearing, the Court took sworn testimony from Plaintiff and from Kanter regarding the nature of the two jobs and whether they were comparable. During his testimony, Plaintiff explained to the Court his job duties in both jobs and described why they were not comparable. Autonomy/VERITY was provided with all written materials submitted to the Court by Plaintiff, including materials describing how the two jobs

1  were not comparable. Kanter was present as the company's representative during these Court

2  hearings; heard Plaintiff's testimony; saw the evidence and materials submitted by Plaintiff as part of

3  his case; and gave testimony himself as the company's representative.

4       23.  On approximately June 7, 2006, the Dutch Court issued its written decision in the Dutch

5  Lawsuit. The Court ruled in favor of Plaintiff, finding that the "alternative" position offered to

6  Plaintiff at Autonomy was not comparable to his job with VERITY, and noting the change in

7  Plaintiff's responsibilities and duties. The Dutch Court therefore ruled that Plaintiff's employment

8  would be deemed terminated, and that Autonomy was obligated to pay Plaintiff a cash severance

9  payment. Autonomy received a copy of the Dutch Court's decision, and did thereafter pay Plaintiff

10  the cash severance amount ordered by the Dutch Court.

11       24.  On July 6, 2006, Kanter wrote to Plaintiff and again stated that Plaintiff's May 1, 2006

12  "application for benefits" under the PLAN (which Plaintiff had sent to the PLAN Administrator) was

13  denied. Kanter asserted that Plaintiff had not suffered a 'constructive termination' within the

14  meaning of the PLAN. As of July 6, 2006, Kanter was not the PLAN Administrator nor did he have

15  any authority under the PLAN to make a determination to deny Plaintiff benefits under the PLAN,

16  nor did Kanter even claim that he had any authority to make such a decision.

17       25.  On July 13, 2006, Plaintiff again wrote to the PLAN Administrator (the Vice President

18  of Human Resources of VERITY in California) and confirmed again that he was requesting his

19  benefits under the PLAN since he had experienced a 'constructive termination' under the terms of

20  the PLAN. Plaintiff specifically referred the PLAN Administrator to the Dutch Lawsuit and noted

21  that the Dutch Court had ruled that the position offered to him by Autonomy following the change in

22  control was not a 'comparable' job. Plaintiff reiterated to the PLAN Administrator that he had

23  suffered a "constructive termination" under the PLAN because of the substantial reduction in his

24  duties and responsibilities.

25       26.  In violation of PLAN requirements, Defendants failed to act on Plaintiff's July 13, 2006

26  request for review, and failed to notify Plaintiff promptly of their decision, within 60 days of receipt

27  of Plaintiff's July 13, 2006 request.

28  / / /

-8-

**COMPLAINT FOR BENEFITS [ERISA]**                    **CASE NO.**

27.     In response to Plaintiff's July 13, 2006 letter to the PLAN Administrator, Kanter eventually wrote a letter dated September 29, 2006, which Plaintiff received on October 26, 2006. In this letter, Kanter informed Plaintiff that his claim for benefits under the PLAN (and his request for review of the original denial) was denied. In the September 29, 2006 letter, Kanter admitted that he was aware of the Dutch Court decision. Nevertheless, Kanter again asserted in bad faith that Plaintiff had not suffered a "constructive termination" under the PLAN. In this September 29, 2006 letter, Kanter also asserted that he (Kanter) had just recently assumed the duties as the PLAN Administrator. Kanter also informed Plaintiff that, under section 11(b)(4) of the PLAN, Plaintiff was being notified that he had right to bring a civil action under Section 502(a) of ERISA.

28.     Defendants have produced no evidence to show that as of September 2006 Kanter was authorized by the PLAN to act as the PLAN Administrator and so make any determinations at to Plaintiff's entitlement to PLAN benefits, even though Plaintiff requested such information. Furthermore, to the extent that Kanter ever was authorized to act as the PLAN Administrator, Kanter was biased and had a clear conflict of interest with respect to determining whether Plaintiff was entitled to PLAN benefits.

29.     At all relevant times, Plaintiff complied with all terms and conditions of the PLAN and remained, and continues to remain, eligible for Accelerated Vesting of Options, Extended Exercisability of Options and Continued Medical Benefits under the PLAN. At all relevant times herein, Plaintiff has been, and remains entitled to benefits under the terms of the PLAN.

30.     At various times after May 1, 2006, Plaintiff has requested that Defendants produce certain documents to which Plaintiff was entitled pursuant to ERISA and applicable Department of Labor Regulations, including documents relating to the PLAN, the PLAN's administration and the determination to deny Plaintiff benefits under the PLAN. Defendants have refused, and continue to refuse, to produce to Plaintiff the documents requested.

31.     Plaintiff has exhausted his administrative remedies.

/ / /

/ / /

/ / /

-9-

**COMPLAINT FOR BENEFITS [ERISA]**                    **CASE NO.**

# FIRST CLAIM FOR RELIEF

## (Claim for PLAN Benefits Pursuant to ERISA § 502(a) (1) (B))

32.   Plaintiff realleges and incorporates as though set forth in full the allegations contained in paragraphs 1 through 31 of this Complaint.

33.   The PLAN provides for Accelerated Vesting of Options, Extended Exercisability of Options and Continued Medical Benefits in the event of a PLAN participant's "covered termination". Plaintiff experienced a 'covered termination' under the terms of the PLAN and was thereby entitled to certain PLAN benefits.

34.   ERISA § 502(a) (1) (B) (29 U.S.C. § 1132 (a) (1) (B)), permits a participant in a PLAN to bring a civil action to recover benefits due to her under the terms of a PLAN, to enforce his rights under the terms of a PLAN, and/or clarify his rights to future benefits under the terms of a PLAN.

35.   By, *inter alia*, failing to provide Plaintiff with the PLAN provided Accelerated Vesting of Options, Extended Exercisability of Options and Continued Medical Benefits, despite his having experienced a "covered termination"; committing wholesale and flagrant violations of the procedural requirements of ERISA; having a non-designated individual act as PLAN Administrator; having a purported PLAN Administrator make determinations as to Plaintiff's entitlement to benefits despite a clear bias and conflict of interest on the part of the purported PLAN Administrator; acting in utter disregard of the underlying purpose of the PLAN; relying on a standard of proof not articulated in the PLAN's provisions; materially breaching the provisions of the PLAN; refusing to provide Plaintiff with documentation which substantiated its decision to deny benefits; making a decision that was not supported by substantial evidence; making a decision that was in bad faith; and failing to produce documents to which Plaintiff was entitled pursuant to ERISA and applicable Department of Labor Regulations, Defendants have violated, and continue to violate, the terms of the PLAN and Plaintiff's rights thereunder.

**WHEREFOR,** Plaintiff prays that the Court enter judgment against the Defendants, and each of them, as is hereinafter set forth.

/ / /

-10-

COMPLAINT FOR BENEFITS [ERISA]                    CASE NO.

## SECOND CLAIM FOR RELIEF

### (For Equitable Relief Under ERISA §502(a) (3))

36.    Plaintiff incorporates as though set forth in full the allegations contained in paragraphs 1 through 35 of this complaint.

37.    ERISA § 502(a) (3) (29 U.S.C. § 1132 (a) (3)), permits a participant in a PLAN to bring a civil action to obtain equitable relief to redress any act or practice which violates the terms of a PLAN or ERISA, or to enforce any term(s) of the PLAN or of ERISA.

38.    By, *inter alia*, letting a non-designated individual act as PLAN Administrator; appointing a purported PLAN Administrator make determinations as to Plaintiff's entitlement to benefits despite a clear bias and conflict of interest on the part of the purported PLAN Administrator; committing wholesale and flagrant violations of the procedural requirements of ERISA; acting in utter disregard of the underlying purpose of the PLAN; relying on a standard of proof not articulated in the PLAN's provisions; materially breaching the provisions of the PLAN; refusing to provide Plaintiff with documentation which substantiated its decision to deny benefits; making a decision that was not supported by substantial evidence; making a decision that was in bad faith; and failing to produce documents to which Plaintiff was entitled pursuant to ERISA and the applicable Department of Labor Regulations, refusing to pay the benefits at issue herein, Defendants s have violated the terms of the PLAN and ERISA by its acts, including, but not limited to, breaching its fiduciary duties under ERISA § 404 (29 U.S.C. § 1104).

**WHEREFOR,** Plaintiff prays that the Court enter judgment against the Defendants, and each of them, as is hereinafter set forth.

## THIRD CLAIM FOR RELIEF

### (For Statutory Penalties Under ERISA §502(c) (1))

39.    Plaintiff incorporates as though set forth in full the allegations contained in paragraphs 1 through 38 of this complaint.

40.    ERISA § 502(c) (1) (29 U.S.C. § 1132 (c) (1)), provides for a $100 a day from the date the Plan Administrator fails or refuses to comply with a request for information.

/ / /

-11-

COMPLAINT FOR BENEFITS [ERISA]                    CASE NO.

41.    On and after May 1, 2006, Plaintiff requested that both VERITY and the PLAN produce certain documents to which he was entitled pursuant to ERISA and the applicable Department of Labor Regulations. Defendants refused, and continues to refuse, to do so.

WHEREFOR, Plaintiff prays that the Court enter judgment against the Defendants and each of them, as is hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiff prays that the Court enter judgment against the Defendants, and each of them, as follows:

1.    Declare that Defendants, and each of them, violated the terms of the PLAN and Plaintiff's rights thereunder by failing to provide Plaintiff with Accelerated Vesting of Options, Extended Exercisability of Options and Continued Medical Benefits;

2.    Order Defendants to provide Plaintiff with Options, Accelerated Vesting of Options, Extended Exercisability of Options, and Continued Medical Benefits due him pursuant to the terms of the PLAN, together with prejudgment interest on each through the date judgment is entered herein; or, alternatively, to award monetary damages to Plaintiff as compensation for Defendants failure to provide Plaintiff with the benefits due him under the PLAN;

3.    Order Defendants to pay statutory penalties of $100 a day for their failure and refusal to comply with a request for information;

4.    Declare that Defendants breached their fiduciary duties to Plaintiff and the PLAN and enjoin Defendants from further breaches of their fiduciary duties;

5.    Remove VERITY as a fiduciary of the PLAN and replace VERITY with an independent fiduciary;

6.    Award Plaintiff pre-judgment interest on benefits requested herein;

7.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g) (29 U.S.C. § 1132 (g));

///

///

///

-12-

COMPLAINT FOR BENEFITS [ERISA]                    CASE NO.

1

    8.    Provide such other relief as the Court deems equitable and just.

2

3
                                  Respectfully submitted,

4
                                RIMAC & MARTIN, P.C.

5

6
DATED:  February 29, 2008          By:

7
                                WILLIAM REILLY
                                Attorneys for Plaintiff
                                HUGO SLUIMER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-

**COMPLAINT FOR BENEFITS [ERISA]**                         CASE NO.

JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HUGO SLUIMER

## DEFENDANTS
VERITY, INC., a corporation;
THE VERITY INC. CHANGE IN CONTROL AND
SEVERANCE BENEFIT PLAN

(b) County of Residence of First Listed Plaintiff   MONACO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

(c) Attorney's (Firm's Name, Address, and Telephone Number)
WILLIAM REILLY, ESQ.     (415) 561-8440
RIMAC & MARTIN, P.C.
1051 Divisadero Street
San Francisco, CA  94115

ATTORNEYS (If Known)

E-filing

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 790 Other Labor Litigation | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | ☐ 871 IRS – Third Party 26 USC 7609 | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Removal is based on Federal Question under ERISA, 29 U.S.C. § 1001 et seq.; and on diversity jurisdiction, 28 U.S.C. §§ 1332 and 1441(a) (amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states).

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE
February 29, 2008

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY
RECEIPT# _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO 440 (Rev. 8/01) Summons in a Civil Action

---



# United States District Court

NORTHERN DISTRICT OF CALIFORNIA

HUGO SLUIMER,

V.

VERITY, INC., a corporation, and
THE VERITY INC. CHANGE IN CONTROL
AND SEVERANCE BENEFIT PLAN

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

CV 08     1220     SI

To: (Name and Address of Defendant)
VERITY, INC., a corporation;
THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE BENEFIT PLAN

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

WILLIAM REILLY
RIMAC & MARTIN, PC
1051 Divisadero Street
San Francisco, CA  94115

tel (415) 561-8440    fax (415) 561-8430

an answer to the complaint which is herewith served upon you, within _20_____ days after
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

RICHARD W. WIEKING

FEB 2 9 2008

CLERK                                                          DATE

Helen L. Almacen

(BY) DEPUTY CLERK

WWW.ATFORMS.COM  1-800-617-4202