1  **DOLL AMIR & ELEY LLP**
   Gregory Doll (SBN 193205)
2  Michael M. Amir (SBN 204491)
   Ronald St. Marie (SBN 101398)
3  1888 Century Park East
   Suite 1106
4  Los Angeles, California  90067
   Telephone: (310) 557-9100
5  Facsimile:  (310) 557-9101

6  Attorneys for Defendants
   VERITY, INC., and THE VERITY INC.
7  CHANGE IN CONTROL AND
   SEVERANCE BENEFIT PLAN

8

9              **IN THE UNITED STATES DISTRICT COURT**

10            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12
   HUGO SLUIMER                          CASE NO.  CV 08-1220 SI
13
                      Plaintiff,         **DEFENDANTS' NOTICE OF MOTION**
14                                       **AND MOTION TO DISMISS UNDER**
                                         **RULE 12(B)(6), OR, ALTERNATIVELY,**
15                                       **FOR SUMMARY JUDGMENT OR**
           vs.                           **PARTIAL SUMMARY JUDGMENT**
16                                       **UNDER RULE 56; MEMORANDUM OF**
                                         **POINTS AND AUTHORITIES IN**
17                                       **SUPPORT THEREOF**
   VERITY, INC., a corporation, and THE
18  VERITY INC. CHANGE IN CONTROL AND
   SEVERANCE BENEFIT PLAN,
19
                      Defendants.
20                                       DATE:        July 18, 2008
                                         TIME:        9:00 a.m.
21                                       COURTROOM:   10

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**NOTICE OF MOTION** ................................................................................................................ 1

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................................................... 1

I.     STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II.    INTRODUCTION ............................................................................................................. 2

III.   SUMMARY OF RELEVANT FACTS .............................................................................. 4

       A.  Sluimer's Employment With Verity ......................................................................... 4

       B.  The Change in Control and Severance Benefit Plan................................................. 4

           1.   Participation In The Plan Was Subject to Certain Conditions ...................... 5

                a.   Condition Regarding General Waiver and Release

                b.   Condition Regarding Written Consent to Certain Confidentiality
                     and Non-Competition Obligations

                c.   Notice Requirement for Constructive Terminations

           2.   Certain Employees Were Excluded From The Plan ..................................... 6

           3.   Administration of the Plan........................................................................... 7

       C.  Autonomy's Acquisition of Verity and the Risk of Redundancy............................. 7

       D.  Kanter Becomes the Plan Administrator ................................................................. 8

       E.  Autonomy Offers, and Sluimer Rejects, a Position of Reemployment ................... 8

       F.  Sluimer's May 1, 2006 Inquiry Regarding Benefit, and the Plan Administrator's May 3, 2006

           Response Informing Sluimer of His Grounds for Denying Benefits......................... 9

           1.   Valid Offer of Reemployment.................................................................... 9

           2.   Failure to Confirm Confidentiality Obligations........................................ 10

           3.   Failure to Provide Waiver and Release...................................................... 10

       G.  The Dutch Court's June 7, 2006 Judgment ........................................................... 10

       H.  The Plan Administrator's July 6, 2006 Letter to Sluimer, Further Detailing

           His Grounds for Denying Benefits ......................................................................... 10

ii

1    I.   The Plan Administrator Explains for the Third Time the Bases for His Decision in a Letter

2         Dated September 20, 2006.................................................................................................. 11

3    J.   Sluimer Files Suit in This Court

4  IV.    MOTION TO DISMISS/SUMMARY JUDGMENT STANDARD ................................... 12

5         A.   Rule 12(b) Motion to Dismiss Standard ................................................................ 12

6         B.   Rule 56 Summary Judgment Standard.................................................................... 13

7         C.   Standard of Review for a Plan Administrator's Decision........................................ 14

8  V.     SLUIMER'S FIRST AND SECOND CLAIMS SHOULD BE DISMISSED ..................... 17

9         A.   Sluimer Cannot Allege His Entitle to Benefits Under the Plan................................ 17

10             1.    Sluimer Failed To Comply With the Condition Precedent

11                   Requiring Him to Sign a Release.................................................................... 17

12             2.    Sluimer Failed To Comply With The condition Precedent Requiring

13                   Him To Confirm That He Was Subject To The Non-Competition and

14                   Confidentiality Agreements............................................................................ 19

15             3.    Sluimer Is Excluded From the Plan Because He Was Offered

16                   "Immediate Reemployement" With No Lapse in Pay............................... 20

17             4.    Sluimer Cannot Claim He Was "Constructively Terminated" Because

18                   His Purported Constructive Termination Notice Was Untimely.................. 20

19 B    .    Sluimer's Remaining Allegations Are Insufficient to State a Claim......................... 21

20 VI.    SLUIMER'S THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED ......................... 22

21 VII.   CONCLUSION.................................................................................................................... 23

22

23

24

25

26

27

ii

28

# TABLE OF AUTHORITIES

## Cases

*Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 968-69 (9th Cir. 2006) ........................ 15, 17, 22

*Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004) ................................................. 12

*Allen v. Adage, Inc.,* 967 F.2d 695, 698 (1st Cir.1992) ................................................. 17

*Bender v. XCel Technology,* 507 F.3d 1161 (8th Cir. 2007) ............................................. 18

*Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th Cir. 1994) ................................................ 13

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..................... 13

*Collins v. Pension and Ins. Committee of Southern Cal. Rock Products*, 144 F.3d 1279, 1283, n. 3
   (9th Cir. 1998) ............................................................................... 16

*Cuddington v. Northern Ind. Pub. Serv. Co.,* 33 F.3d 813, 816 (7th Cir. 1994) ............................... 16

*Gable v. Sweetheart Cup Co., Inc.,* 35 F.3d 851, 855 (4th Cir.1994)........................................ 17

*Gehman v. Unum Life Ins. Co. of America*, 2008 WL 666207 at *5 (N.D. Cal. 2008).......... 14, 16, 17

*Harlan v. Sohio Petroleum Co.*, 677 F. Supp. 1021 (N.D. Cal. 1988) ....................................... 18, 19

*Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005)..................................................... 13

*Lockheed v. Spink*, 517 U.S. 882 (1996).............................................................. 17, 18, 20

*Loskill v. Barnett Banks, Inc.*, 289 F.3d 734 (11th Cir. 2002)........................................... 18

*Manshardt v. Fed. Judicial Qualifications Comm.,* 401 F.3d 1014, 1016 (9th Cir. 2005) ............... 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89
   L.Ed.2d 538 (1986)............................................................................. 13

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ........................ 13

*Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2008 WL 220101 (N.D. Cal.
   2008)......................................................................................... 15

*Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998)................................................. 12

*Reichelt v. Emhart Corp.,* 921 F.2d 425, 429-30 (2nd Cir.1990)........................................... 17

*U.A. Local 343 v. Nor-Cal Plumbing, Inc.,* 48 F.3d 1465, 1471 (9th Cir. 1995)............................. 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Statutes and Rules

29 U.S.C. §§ 1002............................................................................................................... 17

ERISA § 502 ............................................................................................................. 11, 16, 22

Fed. R. Civ. Proc. 12.......................................................................................................... 12

Fed. R. Civ. Proc. 56...................................................................................................... 13, 14

NOTICE OF MOTION AND MOTION TO DISMISS

1    <u>**NOTICE OF MOTION**</u>

2    **TO PLAINTIFF HUGO SLUIMER AND HIS COUNSEL OF RECORD:**

3        **PLEASE TAKE NOTICE** that on Friday, July 18, 2008 at 9:00 a.m., or as soon

4    thereafter as counsel may be heard, before the Honorable Susan Illston, defendants Verity, Inc.

5    and The Verity Inc. Change In Control And Severance Benefit Plan (hereinafter "Defendants"),

6    will move, and hereby do move, for an order dismissing the action for failure to state a claim on

7    which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the

8    alternative, for summary judgment or partial summary judgment pursuant to Federal Rule of

9    Civil Procedure 56.

10        Defendants respectfully request that Sluimer's Complaint be dismissed without leave to

11    amend or, alternatively, that the Court order summary judgment or partial summary judgment in

12    Defendants' favor.  Sluimer contends that he was wrongfully denied benefits under an ERISA

13    plan.  As shown herein, however, the denial of benefits sought by Sluimer is justified by his

14    failure to satisfy express conditions precedent and by his status as an excluded employee under

15    terms of the plan.  Further, there are insufficient facts alleged to support Sluimer's claims that

16    Defendants' decision to deny Sluimer benefits was the result of bias or prejudice, or that

17    Defendants failed to timely provide documents requested of them.

18    This motion will be based on this Notice of Motion and Motion and the accompanying

19    Memorandum of Points and Authorities, as well as the concurrently filed Declaration of Andrew

20    M. Kanter in Support of Defendants' Motion; and such additional evidence and argument as

21    may be presented at or before the hearing of the motion.

22        <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

23    **I.    <u>STATEMENT OF ISSUES TO BE DECIDED</u>**

24        Defendants hereby submit the following Statement of Issues To Be Decided in

25    connection with the instant motion:

26        1.    Whether Sluimer's failure to sign a release as required by Section 7(a) of the

27    Change in Control and Severance Benefit Plan (the "Plan") as a condition precedent to eligibility

28

for benefits bars his first and second claims for relief, which seek benefits under the Plan

pursuant to ERISA §§ 502(a)(1)(B) and (a)(3);

     2.     Whether Sluimer's failure to confirm in writing that he would be subject to

Verity's Non-Competition Agreement and Confidentiality Agreements as required by Section

3(b)(iv) of the Plan as a condition precedent to receiving benefits under the Plan bars his first

and second claims for relief, which seek benefits under the Plan pursuant to ERISA

§§ 502(a)(1)(B) and (a)(3);

     3.     Whether Sluimer's failure to provide timely notice of a purported constructive

termination as required by Section 2(f) of the Plan bars him from claiming that he was

constructively terminated as defined by the Plan, and thus bars his first and second claims for

relief, which seek benefits under the Plan pursuant to ERISA §§ 502(a)(1)(B) and (a)(3).

     4.     Whether Sluimer is excluded from receiving benefits under the Plan because he

received an offer of immediate reemployment with no lapse in pay as provided by Section

3(b)(iii) of the Plan; and

     5.     Whether Sluimer's claim for statutory penalties under ERISA § 502(c)(1) fails

because Sluimer received all information he requested about the Plan and his entitlement to

benefits thereunder.

## II.    <u>INTRODUCTION</u>

     The plaintiff in this action, Hugo Sluimer ("Sluimer"), is a former employee of the

defendant, Verity Inc. ("Verity").  In 2005, Verity created an ERISA[1] welfare benefits plan

known as the "Change in Control and Severance Benefit Plan" (the "Plan") (collectively, Verity

and the Plan will be referred to as "Defendants"), which, itself, is a defendant in this case.

Sluimer is now suing for benefits to which he incorrectly claims he is entitled.

---

[1]    "ERISA" stands for the Employee Retirement Investment Savings Act of 1974, a federal statute establishing minimum standards for pension and welfare plans in private industry and provides extensive rules on the income tax effects of transactions associated with employee benefit plans.  *See* 29 U.S.C. § 1132.

Tellingly, Sluimer fails to attach to his Complaint a copy of the very Plan that is the foundation of his action against Defendants. His motive for omitting this written document is transparent: the Plan provides at least four independent bases to establish, as a matter of law, that Sluimer is not entitled to receive benefits. As a matter of settled procedural law in the Ninth Circuit and Northern District of California, this Court can, and respectfully should, consider the written Plan in the context of Defendants' Rule 12(b) motion to dismiss, as well as Defendants' alternative Rule 56 motion for summary judgment. Once the Plan, itself, is reviewed by the Court, the defects in Sluimer's case will be confirmed.

Amongst other reasons, the Court need look no further than the Plan's express condition precedent requiring employees to execute a general release in order to receive benefits pursuant to the Plan. Sluimer does not allege in his Complaint that he signed the required release, for good reason: he never did. Sluimer, instead, opted to sue Verity in the Netherlands to obtain certain employment benefits under a constructive termination theory (and explicitly rejected signing a release except pursuant to some undefined "settlement"). That is his right. But it is also Defendants' right to require the execution of such a release as a condition precedent to receiving benefits. Indeed, the seminal Supreme Court case of *Lockheed v. Spink*, 517 U.S. 882 (1996) stands for this very proposition: namely, that an employer is entitled to require an employee to sign a release as a condition precedent to participation in an ERISA plan. Since *Spink*, the courts consistently have ruled in favor of employers who denied benefits based on an employee's failure to execute a required release. In light of *Spink* and its progeny, Sluimer's undisputed failure to sign the required release, alone, is fatal to his Complaint.

Defendants bring this motion in the first instance pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This is because Sluimer's Complaint, when reviewed in conjunction with the Plan (referenced therein but not attached thereto), fails to allege a claim upon which relief can be granted. Sluimer cannot rely on mere conclusory allegations to suggest his purported "entitlement" to ERISA benefits without addressing the dispositive provisions in the Plan which make it clear that he, on the contrary, is not entitled to benefits at all.

Defendants move in the alternative for summary judgment or partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, based on the information contained in the concurrently submitted declaration of the Plan Administrator.  While each of the exhibits attached to the Plan Administrator's declaration is specifically referenced in Sluimer's complaint (and therefore proper for this Court to consider in the Rule 12(b) context), the decision-making process of the Plan Administrator, which is detailed in his declaration to demonstrate that he did not abuse the discretion provided to him under the Plan, constitutes extrinsic evidence ordinarily beyond the scope of a 12(b) motion, and thus has been submitted in connection with Defendants' alternative request for summary judgment.

## III.    SUMMARY OF RELEVANT FACTS

### A.    Sluimer's Employment With Verity

Verity is a software company.[2]  Sluimer is a former employee of Verity who began his employment with the company in 1990.[3]  He held the title of Senior Vice President as of 2005.[4]

### B.    The Change in Control and Severance Benefit Plan

On April 5, 2005, Verity created the Plan.[5]  The stated purpose of the Plan, as set forth in the document itself, was "to provide for payment of severance benefits to certain employees of Verity, Inc. . . . in the event that such employees are subject to qualifying employment terminations in connection with a Change in Control."[6]  To be clear, the Plan was not designed to automatically pay out to every Verity employee who was a Plan participant following a Change in Control; rather, only those employees who were subject to a "covered termination" and who met the various required conditions would receive benefits.[7]  A covered termination

---

[2]     Complaint ¶ 4.

[3]     Complaint ¶ 6.

[4]     Complaint ¶ 6.

[5]     Complaint ¶ 7.

[6]     Plan, Exhibit A to the Declaration of Andrew Kanter ("Kanter Decl.") at page 1, Section 1; emphasis added (document referenced in Complaint at ¶ 7).

[7]     Plan at page 4, Section 3(a).

included both an: (1) involuntary termination without cause; or (2) a constructive termination, which is defined as a "substantial reduction" the employee's duties.[8]

### 1.    Participation In the Plan Was Subject to Certain Conditions

The Plan specifically imposed certain conditions on an otherwise eligible employee's right to receive benefits under the Plan, including the following three conditions. As set forth below in Section III(F), Sluimer failed to meet each of these conditions.

### a.    Condition Regarding General Waiver and Release

As a condition precedent for eligibility to receive benefits under the Plan, employees were required to execute a general waiver and release in favor of Verity:

> **Release.**  In order to be eligible to receive benefits under the Plan, a Participant also must execute a general waiver and release in substantially the form attached hereto as Exhibit B, Exhibit C or Exhibit D, as appropriate, and such release must become effective in accordance with its terms.[9]

The Plan included three different releases, each which applied to a different group of employees based on their age. The releases were attached to the Plan and provided to the employees at the time they received the Plan.[10] The releases also were available on the Internet through Verity's filings with the Securities and Exchange Commission. The releases each specified the timeframe within which the employee was required to return the release in order for it to become effective.[11]

### b.    Condition Regarding Written Consent to Certain Confidentiality and Non-Competition Obligations

The Plan also contained a condition that eligible employees had to provide written confirmation that they were subject to Verity's confidentiality and non-competition agreements in order to receive benefits under the Plan:

---

[8]    Plan at page 2, Section 2(f).

[9]    Plan at page 8, Section 7(a).

[10]    Kanter Decl., ¶ 3; Plan at page 18-23.

[11]    Plan at pages 17-22.

**Exceptions to Benefit Entitlement.** An employee, including an employee who otherwise is a Participant, will not receive benefits under the Plan (or will receive reduced benefits under the Plan) in the following circumstances, as determined by the Company in its sole discretion. . . . (iv) the employee does not confirm in writing that he or she shall be subject to the Company's Confidentiality Agreement and Non-Compete Agreement.[12]

### c.    *Notice Requirement for Constructive Termination*

An employee who sought to claim that s/he was "constructively terminated" due to a substantial change in her/his employment duties was also subject to an additional notice requirement:

[A] voluntary termination shall not be deemed a Constructive Termination unless (x) the Participant provides the Company with written notice (the "Constructive Termination Notice") that the Participant believes that an event described in this Section 2(f) has occurred, (y) the Constructive Termination Notice is given within three (3) months of the date the event occurred, and (z) the Company does not rescind or cure the conduct giving rise to the event described within 2(f) within fifteen (15) days of receipt by the Company of the Constructive Termination Notice.[13]

### 2.    <u>Certain Employees Were Excluded From The Plan</u>

The Plan specifically excluded any employees who, upon a change in control, were offered "immediate reemployment" by the successor company:

**Exceptions to Benefit Entitlement.** An employee . . . will not receive benefits under the Plan (or will receive reduced benefits under the Plan) in the following circumstances, as determined by the Company in its sole discretion. . . . (iii)  The employee is offered ***immediate reemployment*** by a successor to the Company or by a purchaser of its assets, as the case may be, following a change in ownership of the Company, or a sale of all or substantially all the assets of the division or business unit of the Company.[14]

The Plan adopted a specific definition of "immediate reemployment":

---

[12]    Plan at page 4, Section 3(b)(iv).

[13]    Plan at page 3, Section 2(f).

[14]    Plan at page 4, Section 3(b)(iii); emphasis added.

For the purposes of the foregoing, *'immediate reemployment' means that the employee's employment with the successor to the Company or the purchaser of its assets*, as the case may be, *results in uninterrupted employment such that the employee does not suffer a lapse in pay* as a result of the change in ownership of the Company or sale of assets.[15]

Because, as described in detail below, Sluimer was in fact offered immediate reemployment with no lapse in pay, he was excluded from the Plan under this provision.

### 3.    Administration of the Plan

In the event of a change in control, the Plan was to be administered by the "Plan Administrator," defined as follows:

"***Plan Administrator***" means the Board or any committee duly authorized by the Board to administer the Plan. The Plan Administrator may, but is not required to be, in whole or in part, the Compensation Committee of the Board. The Board may at any time administer the Plan, in whole or in part, notwithstanding that the Board has previously appointed a committee to acts as the Plan Administrator.[16]

The Plan Administrator was granted broad discretion to construe and apply the terms of the Plan:

**Exclusive Discretion.** The Plan Administrator shall have the exclusive discretion and authority to establish rules, forms and procedures for the administration of the Plan and to construe and interpret the Plan and to decide any and all questions of fact, interpretation, definitions, computation or administration arising in connection with the operation of the Plan, including, but not limited to, the eligibility to participate in the Plan and the amount of benefits paid under the Plan. The rules, interpretations, computations and other actions of the Plan Administrator shall be binding and conclusive on all persons.[17]

### C.    Autonomy's Acquisition of Verity and the Risk of Redundancy

On December 29, 2005, Verity was acquired by Autonomy Corporation plc ("Autonomy"), which resulted in a "change of control." By letter dated December 29, 2005, Verity notified Sluimer that as a result of the acquisition some jobs might be eliminated as

---

[15]    Plan at page 4, Section 3(b)(iii); emphasis added.

[16]    Plan at page 4, Section 3(l).

[17]    Plan at page 9, Section 8(a).

NOTICE OF MOTION AND MOTION TO DISMISS

redundant.  Sluimer's position was one identified as at risk of redundancy.[18]  Sluimer was placed on "garden leave" during the redundancy review, meaning that although he was not required to perform his job duties during this time, Sluimer continued to be paid his base salary, commissions and car allowance, and to receive benefits such as stock option vesting.[19]  Sluimer, in fact, was paid on the same terms as he was paid prior to being placed on garden leave.[20]

### D.    Kanter Becomes the Plan Administrator

When the acquisition was completed, Verity became a wholly owned subsidiary of Autonomy, and the outgoing board of Verity was replaced by Andrew Kanter ("Kanter") and Sushovan Hussain ("Hussain"), two executives of Autonomy.  When the dispute with Sluimer described below arose, Kanter was authorized by the board of directors to administer the Plan. Thus, on or about May 1, 2006, Kanter took over the duties of Plan Administrator, as identified in Section 2(l) of the Plan.[21]

### E.    Autonomy Offers, and Sluimer Rejects, a Position of Reemployment

By letter dated March 23, 2006, Autonomy notified Sluimer that Autonomy had identified a new position for him.[22]  The salary and benefits offered by Autonomy, including stock option rights, medical benefits and potential commissions, were the same as those received by Sluimer in his prior position as Senior Vice President of Verity.[23]  Sluimer does not allege otherwise in this lawsuit.

On April 25, 2006, Sluimer rejected the new position.[24]  Though Autonomy wanted him to continue with the company in an executive capacity, Sluimer instead proactively sought to

---

[18]    Kanter Decl., ¶ 7; Exhibit C (referenced in Complaint at ¶ 11).

[19]    Kanter Decl. ¶ 8.

[20]    Kanter Decl. ¶ 8.

[21]    Kanter Decl., ¶ 4.

[22]    Kanter Decl., ¶ 9; Exhibit D (referenced in Complaint at ¶ 14).

[23]    Kanter Decl., ¶ 9.

[24]    Complaint ¶ 18; Kanter Decl., ¶10.

terminate his contract by filing a lawsuit in the Netherlands (the "Dutch Lawsuit").[25]   Autonomy

continued to pay Sluimer until resolution of the Dutch Lawsuit.[26]

### F.   Sluimer's May 1, 2006 Inquiry Regarding  Benefits, and the Plan Administrator's May 3, 2006 Response Informing Sluimer of His Grounds for Denying Benefits

By facsimile dated May 1, 2006, Sluimer inquired whether he was entitled to certain

benefits under the Plan.[27]   The letter was quite unclear as to what Sluimer was requesting, and

thus did not appear to be an application for benefits.[28]   As set forth above, because Sluimer had

sued the company, Kanter was authorized to act as Plan Administrator, and thus undertook the

task of responding to Sluimer's inquiry.  Despite the vague nature of the letter, Kanter

endeavored to provide a detailed response.  In preparing his response, Kanter reviewed the Plan.

He determined that there were multiple reasons why Sluimer was ineligible to participate in the

Plan, including that he had failed to satisfy the conditions precedent for participation.[29]   Kanter

determined that Sluimer had failed to execute a release as required by the Plan.  All employees

who participated in the Plan were required to execute the required release.[30]

By letter dated May 3, 2006, Kanter responded to Sluimer's facsimile, notifying him that

he was not eligible for benefits.  Kanter's letter detailed the following grounds:

### 1.   Valid Offer of Reemployment

> "First, because in Section 3(b)(iii), an employee offered immediate
> reemployment is an express exception to severance benefits described in
> the Plan Entitlement Section 3(b)(iv).  In any event your employment

---

[25]   Complaint ¶ 18.

[26]   Kanter Decl., ¶ 10.

[27]   Kanter Decl., ¶ 11; Exhibit E (referenced in Complaint at ¶ 21).

[28]   Kanter Decl., ¶ 11; Exhibit E (referenced in Complaint at ¶ 21).

[29]   Kanter Decl., ¶ 12.

[30]   Kanter Decl., ¶¶ 13-15.

has been continuous with continued payment of salary, commission and
other benefits such as stock option vesting."

### 2.  Failure to Confirm Confidentiality Obligations

"Secondly, section 3(b)(iv) provides that an employee will not receive
benefits under the Plan if the employee does not confirm in writing that
he or she shall be subject to the Company's Confidentiality Agreement
and Non Compete Agreement, which we have not received."

### 3.  Failure to Provide Waiver and Release

"Thirdly, Section 7 further provides that in order to be eligible for
benefits under the Plan, the employee must execute a waiver and release
generally releasing the Company from any and all claims and liabilities.
In view of the pending litigation between yourself and the Company,
obviously this criterion has not been fulfilled thereby making you
ineligible for the stated benefits."[31]

### G.    The Dutch Court's June 7, 2006 Judgment

On June 7, 2006, the Dutch court reached a judgment that Sluimer was entitled to certain

severance benefits under Dutch law.[32]  In particular, that Court held that although Sluimer was

entitled to certain benefits, he failed to accept the position offered by Verity, and thus a "neutral"

formula (as opposed to a formula that assigned blame to Verity) would be used in calculating

those benefits.  The Court calculated €1,081,842 in accrued benefits under Dutch law, reflecting

the length of Sluimer's tenure with Verity and his senior position at the company.  The Dutch

Lawsuit made no determination on any matter other than Dutch employment matters – that is, it

did not purport to determine whether Sluimer was entitled to ERISA benefits under the Plan.[33]

### H.    The Plan Administrator's July 6, 2006 Letter to Sluimer, Further Detailing His Grounds for Denying Benefits

Because Kanter was uncertain whether Sluimer's May 1 was letter was in fact an

application for benefits, Kanter wrote again to Sluimer on July 6, 2006.  Kanter informed

---

[31]    Kanter Decl., ¶ 16; Exhibit F (referenced in Complaint at ¶ 21).

[32]    Kanter Decl., ¶ 17; Exhibit G (referenced in Complaint at ¶ 23).

[33]    Kanter Decl., ¶ 17; Exhibit G (referenced in Complaint at ¶ 23).

Sluimer that his initial May 1 communication did not technically constitute an "application" for benefits because of its informality; then, in the alternative, Kanter reiterated his grounds for denying benefits under the Plan, as set forth in detail in his May 3, 2006 letter.[34]

**I.      The Plan Administrator Explains  for the Third Time the Bases for His Decision in a Letter Dated September 20, 2006.**

By letter dated July 13, 2006,[35] which was received by Verity on August 1, 2006, Sluimer requested a review of the decision denying him benefits under the Plan.[36]  For the first time, and almost four months after he was offered a position of reemployment, Sluimer also attempted to include a "Constructive Termination Notice", which, importantly, did not comply with the three-month notice window set forth in the Plan.[37]  Also in that letter, Sluimer conceded that he had not complied with two of the conditions precedent to participation in the Plan because he had never executed a release, nor had he confirmed his agreement to abide by the Non-Competition and Confidentiality Agreements.[38]

By letter dated September 29, 2006, Kanter confirmed the denial of Sluimer's request for benefits under the Plan, again identifying multiple grounds for his decision, and again providing a comprehensive recital of the facts underlying that decision.  Among the factors reiterated by Kanter were that: (1) Sluimer had received an offer of reemployment, and had suffered no lapse in pay, and thus he was excluded from the Plan by Section 3(b)(iii); (2) Sluimer had failed to

---

[34]      Kanter Decl., ¶ 18; Exhibit H (referenced in Complaint at ¶ 24).

[35]      This letter was sent by email to a mid-level member of the Autonomy legal department on July 13, 2006, but not received until August 1, 2006, pursuant to the Plan's procedures. Kanter Decl., Exhibits H and I.

[36]      Kanter Decl., ¶ 19; Exhibit I (referenced in Complaint at ¶ 25).

[37]      Under Section 2(f) of the Plan, Sluimer was required to provide a written Constructive Termination Notice within 3 months of the purported constructive termination.  In this case, it is undisputed the latest date on which Sluimer could have possibly claimed constructive termination was when he was offered the so-called "alternative job" on March 23, 2006, and thus any Constructive Termination Notice was due by June 23, 2006, at the very latest.

[38]      Kanter Decl., ¶19, Exhibit I.

1    provide a timely Constructive Termination Notice and thus could not claim that his voluntary

2    departure from Verity constituted a constructive termination as defined by the Plan; and

3    (3) Sluimer had failed to provide both the required waiver and release and written confirmation

4    of his willingness to abide by the Confidentiality and Non-Competition Agreements.[39]

5    **J.     Sluimer Files Suit in This Court**

6    On February 29, 2008, Sluimer filed his "Complaint for Benefits and Relief Under

7    ERISA" (the "Complaint").  The Complaint sets forth three claims for relief:  (1) Claim for Plan

8    Benefits Pursuant to ERISA § 502(a)(1)(B); (2) Claim for Equitable Relief Under ERISA

9    § 502(a)(3); and (3) Claim for Statutory Penalties Under ERISA § 502(c)(1).  The Complaint

10   was served on Verity on March 13, 2008.  By stipulation of the parties, Verity's time to respond

11   to the Complaint was extended to April 22, 2008.

12   **IV.    MOTION TO DISMISS / SUMMARY JUDGMENT STANDARD**

13   **A.     Rule 12(b) Motion to Dismiss Standard**

14   Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is

15   appropriate when it appears beyond doubt that the non-moving party can prove no set of facts in

16   support of its claim.  *Manshardt v. Fed. Judicial Qualifications Comm.,* 401 F.3d 1014, 1016

17   (9th Cir. 2005).  Although the court must take all well-pleaded allegations of material fact as

18   true and construe them in the light most favorable to the non-moving party, "conclusory

19   allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

20   *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004) (emphasis added).

21   In general, courts will treat a motion to dismiss for failure to state a claim as a motion for

22   summary judgment if they are presented with and consider documents extrinsic to the complaint.

23   Fed. R. Civ. Proc. 12(b)&(c).  This rule does not apply, however, when a court considers "a

24   document the authenticity of which is not contested, and upon which the plaintiff's complaint

25   necessarily relies."  *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998) (affirming district

26   court's reliance on plan document in ERISA case, not attached to plaintiff's complaint, in ruling

27   _____

28   [39]     Kanter Decl., ¶ 20; Exhibit J (document referenced in Complaint at ¶ 27).

1    on motion to dismiss); *see also Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).  Thus, the

2    Court may consider documents referred to in the Complaint, such as the Plan and the letters

3    referenced in Sluimer's complaint.  *Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th Cir. 1994)

4    ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity

5    no party questions . . . may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

6            **B.    Rule 56 Summary Judgment Standard**

7            Summary judgment is appropriate when the moving party demonstrates that there is no

8    genuine issue as to any material fact, and that the moving party is entitled to judgment as a

9    matter of law.  Fed. R. Civ. Proc. 56(c).

10           The moving party "bears the initial responsibility of informing the district court of the

11   basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

12   interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

13   demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S.

14   317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. Proc. 56(c)).

15           Once the moving party meets its initial burden, the burden then shifts to the non-moving

16   party to establish that a genuine issue as to any material fact exists.  *Matsushita Elec. Indus. Co.,*

17   *Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The

18   non-moving party cannot simply rest on its allegation without any significant probative evidence

19   tending to support the complaint.  *See U.A. Local 343 v. Nor-Cal Plumbing, Inc.,* 48 F.3d 1465,

20   1471 (9th Cir. 1995).  "[A] complete failure of proof concerning an essential element of the non-

21   moving party's case necessarily renders all other facts immaterial."  *Celotex,* 477 U.S. at 322-23.

22           Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral

23   part of the Federal Rules as a whole, which are designed to secure the just, speedy and

24   inexpensive determination of every action."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24,

25   106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Because Sluimer, not Verity, bears the ultimate burden

26   of persuasion at trial, Verity need only to produce evidence that negates an essential element of

27   Sluimer's claims, or show that Sluimer does not have sufficient evidence on an essential element

28   to carry his ultimate burden of persuasion at trial.  *See Nissan Fire & Marine Ins. Co. v. Fritz*

1   *Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once Verity meets its burden, Sluimer must go

2   beyond the pleadings and, by his own evidence, "set forth specific facts showing that there is a

3   genuine issue for trial."  Fed. R. Civ. Proc. 56(e).  Because no genuine issue of material fact

4   exists here, Defendants are entitled to summary judgment.

5          **C.     Standard of Review for a Plan Administrator's Decision.**

6          There is no right to a jury trial in ERISA actions.  The decision of a plan administrator –

7   where, as here, he or she is granted exclusive discretion to render decisions on eligibility[40] – will

8   be reviewed for abuse of discretion.  *See Gehman v. Unum Life Ins. Co. of America*, 2008 WL

9   666207 at *5 (N.D. Cal. 2008) (per Hon. Susan Illston):

> Under the abuse of discretion standard, the Court will reverse [the plan
> administrator's] determinations if they are arbitrary and capricious.  A plan
> administrator's decision to deny benefits must be upheld under the abuse of
> discretion standard if it is based upon a reasonable interpretation of the plan's
> terms and if it was made in good faith.  The question is not whose
> interpretation of the plan documents is most persuasive, but whether the
> interpretation is unreasonable. The reviewing court must look to the plain
> language of the plan to determine whether the administrator's interpretation of
> that plan is arbitrary and capricious.

15  *Gehman*, 2008 WL 666207 at *5 (granting summary judgment where the plan administrator's

16  interpretation of the ERISA plan did not conflict with its plain and unambiguous language).[41]

17         In such cases, the Court is tasked with determining whether a plan administrator's

18  decision to deny benefits is reasonably supported by evidence:

> The abuse of discretion standard requires only a minimal showing.  It is an
> abuse of discretion for an ERISA plan administrator to make a decision without
> any explanation, or in a way that conflicts with the plain language of the plan,
> or that is based on clearly erroneous findings of fact.  The mere fact that the
> plan administrator's decision is directly contrary to some evidence in the record
> does not show that the decision is clearly erroneous.  Rather, review under the
> clearly erroneous standard is significantly deferential, requiring a definite and

---

[40]      Section 8(a) of the Plan provides:  "The Plan Administrator shall have the exclusive
discretion and authority to establish rules, forms and procedures for the administration of the
Plan and to construe and interpret the Plan and to decide any and all questions of fact,
interpretation, definitions, computation or administration arising in connection with the
operation of the Plan, including, but not limited to, the eligibility to participate in the Plan and
the amount of benefits paid under the Plan."  Plan at page 9.

[41]      Citations and internal quotations omitted.

1
2
3

> firm conviction that a mistake has been committed.  That standard certainly does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is relevant evidence that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.

4    *Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2008 WL 220101 (N.D.

5    Cal. 2008) (per Honorable Jeffrey S. White).[42]

6    Even where a conflict of interest exists, the Ninth Circuit has made clear that an abuse of

7    discretion standard is still applicable; recognizing that district courts are particularly well suited

8    for making findings akin to credibility determinations concerning a plan administrator's

9    rationale for denying a claim.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968-69 (9th

10   Cir. 2006) (en banc).[43]  Thus, the *Abatie* Court held that even where there is an actual conflict of

11   interest, such a conflict is merely another factor to be weighed in determining whether or not the

12   plan administrator abused its discretion.  *Id.*

13   In an apparent effort to survive dispositive motion practice, Sluimer makes the

14   conclusory allegation that the Plan Administrator was biased and/or had a conflict of interest.[44]

15   Such an allegation is insufficient to survive dispositive motion for three reasons.

16   First, under *any* standard of review, Sluimer's claims are fatally defective.  Under *de*

17   *novo* review, for example, "[t]he court simply proceeds to evaluate whether the plan

18   administrator correctly or incorrectly denied benefits, without reference to whether the

19   administrator operated under a conflict of interest."  *Abatie*, 458 F.3d at 963.  As set forth in

20   more detail below in Section IV, there is no question that the Plan Administrator correctly

21   denied benefits based on Sluimer's admitted failure to comply with the Plan's condition

22   precedent requiring a release.  In this regard, Sluimer's grievance is, in actuality, with the terms

23   and conditions of the Plan itself.  Nothing that the Plan Administrator did, or failed to do, in this

24   ---

[42]      Citations and internal quotations omitted.

25   [43]      Citations and internal quotations omitted.

26
27   [44]      Sluimer alleges: "Furthermore, to the extent Kanter ever was authorized to act as the PLAN Administrator, Kanter was biased and had a clear conflict of interest with respect to determining whether Plaintiff was entitled to PLAN benefits."  Complaint ¶ 28.

28

1   case can alter the provisions of the Plan, which make clear that Sluimer is not entitled to recover

2   benefits.  *See Gehman, supra*, 2008 WL 666207 at *4 (court noted that its decision construing

3   unambiguous provision of policy "would be the same under a traditional abuse of discretion

4   standard or a *de novo* standard.").

5         <u>Second</u>, Sluimer's conclusory allegation of a conflict of interest is insufficient to trigger a

6   change in the standard of review.  It is well established that the existence of a conflict of interest

7   cannot be presumed without proof of specific facts to support the claim.  *See Collins v. Pension*

8   *and Ins. Committee of Southern Cal. Rock Products*, 144 F.3d 1279, 1283, n. 3 (9th Cir. 1998),

9   *citing Cuddington v. Northern Ind. Pub. Serv. Co.,* 33 F.3d 813, 816 (7th Cir. 1994) (no

10   automatic conflict of interest even though ERISA plan administrator consisted of company and

11   committee dominated by officers and employees of company).  The basis for Sluimer's

12   allegations of bias against the Plan Administrator is not stated.  Significantly, the Plan

13   Administrator is not alleged to have, nor did he have, a personal, financial, or other interest in

14   the determination of Sluimer's claim.  He is not alleged to bear, nor did he in fact bear, any ill-

15   will toward Sluimer.[45]  While the Plan Administrator engaged in discussions with Sluimer about

16   his future with Verity and Autonomy, nothing alleged in that regard suggests an overriding

17   conflict or bias; on the contrary, the Plan Administrator wanted him to stay.[46]

18         Nor does the fact that Kanter served as the company's representative in the constructive

19   termination lawsuit initiated by Sluimer in the Netherlands demonstrate a conflict of interest.

20   Kanter was the person most knowledgeable about the so-called "alternative job" offered to

21   Sluimer.  Kanter is the Chief Operating Officer of the Autonomy group of companies and the

22   ultimate supervisor of Human Resources matters for Verity.  He had more personal knowledge

23   about the matter than anyone else at the company.   Kanter, however, was not sued personally in

24   the Dutch Lawsuit; nor did he take personal offense to the lawsuit against the company. [47]

25

---

26   [45]      Kanter Decl., ¶ 21.

27   [46]      Kanter Decl., ¶ 21.

28   [47]      Kanter Decl., ¶ 21.

1    <u>Third</u>, even if the Plan Administrator were deemed to have had a conflict of interest, such

2    a conflict would not invalidate his decision.  A potential conflict may "heighten" the otherwise

3    deferential abuse of discretion standard accorded to the review of decisions by plan

4    administrators, but it does invalidate an otherwise proper decision.  *See Abatie*, 458 F.3d at 967;

5    *Gehman*, 2008 WL 666207 at *4.  Kanter rendered a proper decision here.

6    **V.    SLUIMER'S FIRST AND SECOND CLAIMS SHOULD BE DISMISSED.**

7    Sluimer's first claim for relief is for benefits pursuant to ERISA § 502(a)(1)(B).  His

8    second claim merely reiterates, apparently for the purpose of obtaining equitable relief, the same

9    conclusory allegations that comprise the first claim for relief.  Both claims fail for two reasons:

10   (1) Sluimer is not entitled to benefits based on mere conclusory allegations that he is so entitled,

11   particularly where his conclusions are contradicted by the plain language of the Plan; and

12   (2) Sluimer can prove no set of facts, which, even if he were allowed leave to amend, would

13   present a viable claim for relief against Verity.

14        **A.    Sluimer Cannot Allege His Entitlement to Benefits Under the Plan.**

15   Although Sluimer's first and second claims for relief are based entirely on his purported

16   eligibility for benefits under the Plan, the Plan reveals four independent reasons why Sluimer is

17   not eligible for benefits.

18        **1.    Sluimer Failed To Comply With the Condition Precedent Requiring**

19             **Him to Sign a Release.**

20   In *Lockheed v. Spink*, 517 U.S. 882 (1996), the United States Supreme Court ruled that

21   employers may impose whatever conditions they choose on an employee's entitlement to ERISA

22   benefits pursuant to a welfare plan.[48]  Moreover, the Court specifically held that an employer

23

24   _____

25   [48]    A severance benefit plan such as the Plan provides "welfare" rather than "pension or
retirement" benefits. *See* 29 U.S.C. §§ 1002(1) and 1002(2)(A).  "Welfare" benefits are not

26   vested. *See, e.g., Gable v. Sweetheart Cup Co., Inc.,* 35 F.3d 851, 855 (4th Cir.1994); *Reichelt
v. Emhart Corp.,* 921 F.2d 425, 429-30 (2nd Cir.1990); *see also Allen v. Adage, Inc.,* 967 F.2d

27   695, 698 (1st Cir.1992) ("severance pay plans are employee welfare plans, and thus, are not
vested").

28

1   may require execution of a release as a condition to eligibility for benefits.  In reaching its

2   decision, the Court noted that requiring a release was simply *quid pro quo* between the plan

3   sponsor and the participant:

> [An] employer can ask [an] employee to continue to work for the employer, to
> cross a picket line, or to retire early. The execution of a release of claims
> against the employer is functionally no different; like these other conditions, it
> is an act that the employee performs for the employer in return for benefits.

7   *Id.* at 894.

8       Since *Spink*, courts have routinely ruled in favor of employers who denied plan benefits to

9   an employee who failed to sign a release.  For example, in *Loskill v. Barnett Banks*, *Inc.*, 289

10  F.3d 734 (11th Cir. 2002), the court reversed a district court's order granting summary judgment

11  in favor of the plaintiff.  In that case, the plaintiff claimed that an amendment to a plan requiring

12  a release violated other provisions of the plan, and thus was invalid.  The Eleventh Circuit

13  disagreed, and held that the release requirement was a valid condition precedent to receiving

14  plan benefits.  The case was remanded for further proceedings consistent with that holding.

15      Similarly, in *Bender v. XCel Technology,* 507 F.3d 1161 (8th Cir. 2007), the Eighth

16  Circuit affirmed an order granting summary judgment in favor of the employer.  That case

17  involved a severance plan similar to the one at issue here.  Employees were required to sign

18  a release "in a form to be provided by the company."  Plaintiffs refused to sign the release

19  provided by the company, and instead substituted their own, narrower release.  They were

20  terminated following a merger and claimed that they were entitled to benefits under the

21  severance plan.  The employer moved for summary judgment based on plaintiffs' failure to

22  provide a release in the form required by the company.  The district court granted the motion.

23  The appellate court affirmed, holding that the employer was entitled to require a release that

24  covered "any and all claims" as a condition precedent to participation in the plan.  *Id*. at 1171.

25  Plaintiffs' substitute release did not satisfy this requirement, and thus they could not participate

26  in the plan.

27      Finally, a case decided in this district prior to *Spinks* but consistent with its holding is

28  directly on point.  In *Harlan v. Sohio Petroleum Co.*, 677 F. Supp. 1021 (N.D. Cal. 1988),

plaintiff brought several ERISA claims based on defendants' failure to pay benefits under a severance plan.  The plan conditioned receipt of benefits on execution of a release.  Plaintiff never signed the release, and instead filed an EEOC claim after he was terminated.  After the employer learned of the EEOC claim, it refused to permit plaintiff to sign the release because the EEOC claim was "inconsistent with the release."  *Id*. at 1024.  Plaintiff then sued under ERISA based on the employer's refusal to pay him benefits.  The court granted the employer's motion for summary judgment on the ERISA claims, holding that failure to sign the release meant that plaintiff was not entitled to benefits: "That 'plan' included the condition that plaintiff release defendant as a condition to receiving benefits.  Plaintiff cannot accept the benefits and at the same time say the condition was not part of it."  *Id.* at 1026.

Here, Sluimer has not alleged – and cannot allege – that he was eligible to receive Plan benefits for the simple reason that he failed to execute the required waiver and release, which was an express condition precedent to eligibility set forth in Section 7(a).  Sluimer could not have executed a general release and waiver in the form required by Section 7(a) of the Plan without releasing his claims in the Dutch Lawsuit as well as the claims here.  Sluimer, who was represented by skilled counsel, presumably weighed his options and chose to proceed with the Dutch Lawsuit in light of favorable employment laws existing in that jurisdiction.  That is Sluimer's prerogative.  But, as made clear by the foregoing authorities, the consequence of his decision is that he waived his right to seek ERISA benefits under the Plan.

## 2. **Sluimer Failed To Comply With The Condition Precedent Requiring Him To Confirm That He Was Subject To The Non-Competition and Confidentiality Agreements.**

Sluimer also has not alleged – and cannot allege – that he was eligible to receive benefits under the Plan because he failed to satisfy the condition precedent set forth in Section 3(b)(iv) that required that he confirm in writing that he would be subject to the Confidentiality Agreement and Non-Compete Agreements.  While this may have served Sluimer's agenda of potentially allowing him to compete in business against his former employer, it represents an unequivocal failure by Sluimer to comply with a material condition precedent for the receipt of

benefits under the Plan.  It is "an act that the employee performs for the employer in return for benefits," *Spink*, 517 U.S. at 894, and Defendants were entitled to require Sluimer to perform this condition precedent in order to receive benefits under the Plan.  Sluimer's failure to perform this condition precedent provides yet another basis for Kanter's decision to deny Sluimer benefits and, respectfully, Kanter's decision should not be set aside here.

### 3. Sluimer Is Excluded From the Plan Because He Was Offered "Immediate Reemployement" With No Lapse in Pay.

Sluimer has not alleged – and cannot allege – that he was eligible to receive benefits under the Plan because, in fact, he *was* offered immediate reemployment by Autonomy with *no lapse in pay*, and thus is expressly excluded from the Plan by Section 3(b)(iii).  It is undisputed that after placing Sluimer on garden leave, Verity continued to pay Sluimer on the same terms as before.  Sluimer cannot contend in good faith that he suffered a lapse in pay.  While he tries to muddy the waters in his Complaint by alleging that so-called "alternative job" he was offered was *different* in various respects from his prior position, those alleged details are irrelevant to this particular exclusion in the Plan.  The only relevant inquiry is whether or not Sluimer suffered a "lapse in pay."  Sluimer has not suffered any such lapse in pay, and his Complaint fails to suggest otherwise.

### 4. Sluimer Cannot Claim He Was "Constructively Terminated" Because His Purported Constructive Termination Notice Was Untimely

Sluimer has not alleged – and cannot allege – that he was subject to a "Covered Termination" that would trigger his right to participate in the Plan.  The Plan defines two circumstances that qualify as Covered Terminations: (1) an involuntary termination without cause (which does not apply here); and (2) a constructive termination.  In order receive benefits under the Plan pursuant to a "constructive termination," the employee must provide notice of the purported constructive termination, in accordance with Section 2(f) of the Plan, *within three months of the event the employee claims constitutes the termination*.  As set forth above in Section II(I), Sluimer indisputably failed to timely provide the requisite written notice, and cannot allege presently that he was subject to a Covered Termination.

In particular, Sluimer's correspondence was vague regarding what acts by Verity or Autonomy he claimed constituted constructive termination.  For example, arguably, Autonomy's decision to place Sluimer on garden leave would have been the trigger that started the clock running on  Sluimer's time to provide a Constructive Termination Notice.  If that were the case, notice would have been due on or before March 29, 2006 – well before Sluimer sent his first correspondence regarding the Plan on May 1, 2006.  Alternatively, the other possible trigger date for a Constructive Termination Notice could have been March 23, 2006, when Sluimer was offered the new position with Neurodynamics.  Under either scenario, Sluimer's July 13, 2006 letter was too late to constitute a valid or timely Constructive Termination Notice under the Plan.

### B.    Sluimer's Remaining Allegations Are Insufficient to State a Claim.

At paragraph 35 of his Complaint, Sluimer offers in conclusory fashion a barrage of purported grounds to reverse the Plan Administrator's decision, including purported violations of procedural requirements, breaches of the Plan, and general bias and conflicts on the part of the Plan Administrator.  All of these conclusory allegations appear to be boilerplate "catch-all" contentions or mere repetitions of prior allegations in the Complaint, not one of which is sufficient to salvage Sluimer's failing claims.

Sluimer alleges, for starters, the existence of purported (but as yet unidentified) ERISA procedures that were supposedly violated in connection with the handling of his claim.[49]  It is difficult to even respond to this allegation given that none of these procedural issues has been identified in the Complaint.  It is clear, however, that under Ninth Circuit law, most procedural violations are not fatal, and do not alter the standard of review to be applied by the Court:

> A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion.  *See Fought*, 379 F.3d at 1006 (concluding that an inherent conflict of interest, a proven conflict of interest, or a serious procedural irregularity reduces the deference owed to an administrator's decision to deny benefits); *Woo*, 144 F.3d

---

[49]    *See* Complaint ¶ 35: "committing wholesale and flagrant violations of the procedural requirements of ERISA."

1
2
3
4

at 1160 (noting that a conflict of interest or a procedural irregularity can heighten judicial scrutiny). When an administrator can show that it has engaged in an "'ongoing, good faith exchange of information between the administrator and the claimant,' " the court should give the administrator's decision broad deference notwithstanding a minor irregularity.  [Citations.]  A more serious procedural irregularity may weigh more heavily.

5

*Abatie, supra,*, 458 F.3d 955, 972.

6

7

8

9

10

Sluimer then alleges that the Plan Administrator's decision undermined the "underlying purpose of the Plan."  Sluimer contends elsewhere in his Complaint that Verity created the Plan "as an incentive to keep certain VERITY employees employed during this transition process, and to provide certain benefits to employees in the event of a 'change of control' and subsequent termination. . . ."[50]  The "purpose of the Plan," however, is explicitly set forth in the Plan:

11

12

The purpose of the Plan is to provide for the payment of severance benefits to **certain eligible employees** of Verity, Inc. and its wholly owned subsidiaries . . . in the event that such employees are subject to qualifying employment terminations in connection with a Change in Control.[51]

13

14

The Plan Administrator's decision to deny benefits to a "certain [in]eligible employee" – namely, Sluimer – is consistent with this stated purpose.

15

## VI.    SLUIMER'S THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED.

16

17

18

19

Sluimer seeks statutory penalties under ERISA § 502(c)(1) in the amount of "$100 a day from the date the Plan Administrator fails or refuses to comply with a request for information."[52]  Sluimer alleges that the Plan Administrator failed to provide him with documentation that he purportedly requested.

20

21

22

23

24

But the only factual allegation that even arguably supports such contention is that, "[a]t various times after May 1, 2006, Plaintiff has requested that Defendants produce certain documents to which Plaintiff was entitled pursuant to ERISA and applicable Department of Labor Regulations, including documents relating to the [Plan], the [Plan's] administration and

25

26    [50]    Complaint., ¶ 7.

27    [51]    Plan at page 1, Section 1; emphasis added.

28    [52]    Complaint ¶ 40.

NOTICE OF MOTION AND MOTION TO DISMISS

1  the determination to deny Plaintiff benefits under the [Plan]." [53]

2       Defendants cannot respond further to this vague allegation because they do not know the

3  nature of any of the document(s) to which Sluimer is referring, and they are not aware of any

4  document(s) withheld from Sluimer, whether requested or not, to which he even arguably would

5  have been entitled. [54]  On the contrary, as set forth in the concurrently submitted Declaration of

6  Andrew Kanter, no documents were improperly withheld from Sluimer.  Sluimer has failed to

7  meet his pleading burden on this claim, and it should now be dismissed under Rule 12(b)(6) or

8  alternatively Rule 56.

9  **VII.**   **CONCLUSION**

10       Sluimer has no viable claim for benefits here.  Sluimer is excluded from receiving

11  benefits under the plain language of the Plan.  That he failed to attach the Plan to his Complaint

12  underscores his recognition of the defects in his case.  For the reasons stated above, Defendants

13  respectfully request that this Court dismiss Sluimer's Complaint in its entirety, with prejudice,

14  and without leave to amend.  In the alternative, Defendants request that the Court enter summary

15  judgment, or in the alternative partial summary judgment, in their favor, on each of Sluimer's

16  claims for relief.

17  Dated: April 22, 2008           Respectfully submitted

18                       DOLL AMIR & ELEY

19

20                       By _____/s/_____.

21                            Gregory L. Doll
                     Attorneys for Defendants VERITY, INC., and THE

22                       VERITY INC. CHANGE IN CONTROL AND
                     SEVERANCE BENEFIT PLAN

23

24

25

26  _____

27  [53]   Complaint ¶ 30.

28  [54]   Kanter Decl., ¶ 22.

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18

4

and not a party to the within action; my business address is 1888 Century Park East, Suite 1106, Los Angeles, California  90067.

5

      On April 22, 2008, I served the foregoing document(s) described as **DEFENDANTS'**

6

**NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULE 12(B)(6), OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY**

7

**JUDGMENT UNDER RULE 56; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the parties in this action by serving:

8

Joseph M. Rimac, Esq.                        Cliff Palefsky, Esq.
William Reilly, Esc.                          Keith Ehrman, Esq.

9

RIMAC & MARTIN                    McGuinn, Hillsman & Palefsky
1051 Divisadero Street                 535 Pacific Avenue

10

San Francisco, CA 94115              San Francisco, CA 94133

11

12

( )    **By Envelope**:  by placing ( ) the original ( ) a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

13

( )    **By Mail:**  As follows:  I am "readily familiar" with this firm's practice of collection and

14

processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the

15

ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

16

17

( )    **By Personal Service:**  I delivered such envelope by hand to the offices of the addressee(s).

( )    **By Federal Express:**  I caused the envelope(s) to be delivered to the Federal Express office

18

for delivery on the next-business-day basis to the offices of the addressee(s).

19

( X )    **By Electronic Filing:**  Based upon my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this Document, upon its submission to the Court,

20

will be electronically served on the addressees.

21

      Executed on April 22, 2008 at Los Angeles, California.

22

( )    **STATE**  I declare under penalty of perjury under the laws of the State of California that the

23

above is true and correct.

24

(X)    **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

25

26

                      /s/                                 .

27

                      Susan Reimers

28