**RIMAC & MARTIN**
*A Professional Corporation*
JOSEPH M. RIMAC – CSBN 72381
WILLIAM REILLY – CSBN 177550
KEVIN G. GILL – CSBN 226819
1051 Divisadero Street
San Francisco, CA 94115
w_reilly@rimacmartin.com
Telephone: (415) 561-8440
Facsimile:   (415) 561-8430

**MCGUINN, HILLSMAN & PALEFSKY**
CLIFF PALEFSKY (State Bar No. 77683)
KEITH EHRMAN (State Bar No. 106985)
535 Pacific Ave.
San Francisco, CA 94133
KAEMHP@aol.com
Telephone: (415) 421-9292
Facsimile: (415) 403-0202

Attorneys for Plaintiff
HUGO SLUIMER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

*E-FILING*

| | |
|---|---|
| HUGO SLUIMER, | ) |
|           Plaintiff, | ) |
| v. | ) |
| VERITY, INC., a corporation, and THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE BENEFIT PLAN, | ) |
|           Defendants. | ) |

**CASE NO.  C 081220 SI**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**

Date:   July 18, 2008
Time:  9:00 a.m.
Ctrm:  10, 19th Floor

The Honorable Susan Illston

# TABLE OF CONTENTS

I.   **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  **STATEMENT OF FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   THE PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   THE PARTICIPATION NOTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.   THE CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.   Mr. Sluimer's Employment at Verity  . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.   Verity Considers Sale or Merger, and Provides Certain Employees with a Protective Benefit Plan. . . . . . . . . . . . . . . . . 6

        3.   Verity Acquired By Autonomy And Mr. Sluimer Is Told He is Redundant And Will Be Terminated. . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4.   Autonomy Attempts to Avoid Mr. Sluimer's Severance Benefits by Offering Him a Position with a Substantial Reduction in Duties and Responsibilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        5.   Mr. Sluimer Confirms That The Offered Position Amounts To a Substantial Reduction in Duties and Responsibilities. . . . . . . . . . . . . . . 10

        6.   Mr. Sluimer Files Petition With The Dutch Court. . . . . . . . . . . . . . . . . 10

        7.   Mr. Sluimer Attempts To Contact the Plan Administrator. . . . . . . . . . . 11

        8.   The Dutch Court Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        9.   The Dutch Court Rules In Mr. Sluimer's Favor. . . . . . . . . . . . . . . . . . . 12

        10.  Mr. Kanter Repeats Denial of Claim Despite The Dutch Court Findings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        11.  Mr. Sluimer Appeals the Denial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        12.  Mr. Kanter Denied Mr. Sluimer's Appeal Based Upon Same Arguments Rejected by The Dutch Court. . . . . . . . . . . . . . . . . . . . . . . 14

        13.  Mr. Sluimer Make Final Attempt To Resolve Claim With The Plan Administrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        14.  Mr. Sluimer's Counsel's Additional Request For Plan Documents. . . . . 15

        15.  Defendants Again Refuse To Provide Plan Documents. . . . . . . . . . . . . 16

        16.  Plan Benefits To Which Mr. Sluimer Is Entitled. . . . . . . . . . . . . . . . . . 16

III. **LEGAL STANDARDS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.   SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1    B.    STANDARD OF REVIEW FOR ERISA BENEFIT DECISIONS. . . . . . . . . . . 17

2    C.    SCOPE OF REVIEW FOR ERISA BENEFIT DECISIONS. . . . . . . . . . . . . . 18

3    D.    REFUSAL TO PROVIDE DOCUMENTS UNDER ERISA. . . . . . . . . . . . . . 18

4    E.    COLLATERAL ESTOPPEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

5  **IV. ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6    A.    THE CLAIM SHOULD BE REVIEWED DE NOVO. . . . . . . . . . . . . . . . . . . 20

7        1.    Verity Failed to Allow the Plan Administrator Identified in the
             Plan to Make the Decision, and the Decision was instead made
8            by an Unauthorized Person (Mr. Kanter), Who Was Acting With
             a Clear Conflict of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
9
        2.    Mr. Kanter's Appointment of Himself as "Plan Administrator"
10            Is Clear Evidence of Self-dealing. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11        3.    Mr. Kanter/Verity Failed to Act Within the Time Required by
             the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
12
        4.    Mr. Kanter/Verity Failed to Fully Investigate the Claim, Failed
13            to Credit Reliable Evidence, Ignored the Relevant Plan Terms,
             and Otherwise Failed to Produce a Justifiable Determination. . . . . . . . . 22
14
        5.    Alternatively, Deference Must Be Greatly Diminished. . . . . . . . . . . . . 23
15
      B.    SCOPE OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
16
        1.    Defendants Only Produce a Small, Self-Serving Portion
17            of the Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

18        2.    Mr. Sluimer Has a Right to Have the Entire Record
             Considered by the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
19
        3.    Claimants Are Allowed to Augment the Record Where it is
20            Incomplete, But the Defendants Must Rely Solely On the
             Record They Provided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
21
        4.    Claimant Is Allowed To Augment The Record to Show
22            Conflict of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

23    C.    UNDER ANY STANDARD OF REVIEW, MR. SLUIMER'S CLAIM
          SHOULD BE APPROVED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
24
      D.    THE CLAIMS DECISION IS NOT SUPPORTED BY ANY EVIDENCE
25          AND WAS A CLEAR ABUSE OF DISCRETION. . . . . . . . . . . . . . . . . . . . 30

26    E.    THE DUTCH COURT'S DECISION SHOULD BE GIVEN
          COLLATERAL ESTOPPEL EFFECT ON THE APPROPRIATENESS
27          OF THE ALTERNATE JOB. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

28  / / /

-iii-

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**            CASE NO.  C 07-2381 SI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.    THE CLAIMS DECISION WAS SELF-SERVING AND MADE
      IN BAD FAITH, AND MR. KANTER SHOULD BE REMOVED
      AS PLAN ADMINISTRATOR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

G.    MR. SLUIMER IS ENTITLED TO PLAN BENEFITS. . . . . . . . . . . . . . . . . . . 33

H.    THE COURT SHOULD AWARD STATUTORY DAMAGES
      FOR THE DEFENDANTS' FAILURE TO PROVIDE DOCUMENTS
      AND INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**V. CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## TABLE OF AUTHORITIES

### Cases

*Abatie v. Alta Health & Life Ins. Co.*,

458 F.3d 955 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Andrews v. Shalala*,

53 F.3d 1035 (9th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Atwood v. Newmont Gold Co.*,

45 F.3d 1317 (9th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Bendixen v. Standard Ins.*,

185 F.3d 939 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Black & Decker Disability Plan v. Nord*,

538 U.S. 822 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Booton v. Lockheed Med. Benefit Plan*,

110 F.3d 1461 (9th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*British Midland Airways Limited v. Intl. Travel, Inc.*,

497 F.2d 869 (9th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 31

*Celotex Corp. v. Catrett*,

477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Commercial Ins. Co. of Newark, N. J. v. Pacific-Peru Const. Corp.*,

558 F.2d 948 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 31

*Draper v. Baker Hughes Inc.*,

892 F.Supp. 1287 (E.D.Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Firestone Tire and Rubber Co. v. Bruch*,

489 U.S. 101 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 30

*Friedrich v. Intel Corp.*,

181 F.3d 1105 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30

*Gilbertson v. Allied Signal, Inc.*,

328 F.3d 625 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**        CASE NO.  C 07-2381 SI

*Hydranautics v. Film Tec Corp.*,

     204 F.3d 880 (9th Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection*,

     349 F.3d 1098 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 22, 23

*Kearney v. Standard Ins. Co.*,

     175 F.3d 1084 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25

*Kourtis v. Cameron*,

     419 F.3d 989 (9th Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kunin v. Benefit Trust Life Ins. Co.*,

     910 F.2d 534 (9th Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Lujan v. National Wildlife Fed'n*,

     497 U.S. 871 (1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*,

     46 F.3d 938 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability  Income Plan*,

     85 F.3d 455 (9th Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Shane v. Albertson's Inc.*,

     504 F.3d 1166 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Taft v. Equitable Life Assurance Soc'y*,

     9 F.3d 1469 (9th Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Vega v. National Life Insurance Services, Inc.*,

     188 F.3d 287 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Zavora v. Paul Revere Life Ins. Co.*,

     145 F.3d 1118 (9th Cir.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Statutes and Codes**

29 C.F.R. § 2560.503-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

29 U.S.C. § 1022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 34

29 U.S.C. § 1024. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 34

POINTS AND AUTHORITIES IN SUPPORT OF
PL'S MOTION FOR SUMMARY JUDGMENT       CASE NO.  C 07-2381 SI

29 U.S.C. § 1132. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 34

Federal Rule of Civil Procedure 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

**Restatements and Treatises**

Restatement (Second) of Conflicts of Laws, § 98 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . 19, 31

# I. **INTRODUCTION**

This is a case for ERISA benefits under THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE BENEFIT PLAN (the "Plan") issued by defendant VERITY, INC. ("Verity"). The Plan provides for payment of severance benefits when an eligible employee like HUGO SLUIMER (hereinafter Plaintiff or Mr. Sluimer) is terminated (whether actual or constructive) in connection with a change in control of Verity Inc. The parties agreed in Mr. Sluimer's Plan Participation Notice that Dutch law would control his cash severance benefits, and the Plan would govern his other benefits, including accelerated stock option vesting, the time period in which he may exercise those options, and his continued medical benefits.

The parties litigated the identical issues raised in this lawsuit in a Dutch Court. The Dutch Court found that, after the change in control at Verity Inc., Mr. Sluimer was not offered a suitable alternate position, and further found that he would not be offered any suitable position in the future. Further, the Dutch Court awarded Mr. Sluimer € 1,081,824.00 in cash severance benefits.

During, after and in retaliation to the Dutch lawsuit, Verity wrongfully denied Mr. Sluimer's claim for Plan benefits. Andrew Kanter, the Chief Operating Officer of the company that acquired Verity, was the only individual to respond to Mr. Sluimer's claim for benefits, despite the fact that Mr. Kanter was not the Plan Administrator. Further, Mr. Kanter was Verity's representative and witness in the Dutch proceeding that resulted in the € 1,081,824.00 in cash severance award. Mr. Kanter's unsupported denials were based upon the identical arguments that Verity/Mr. Kanter made and were rejected by the Dutch Court.

Additionally, in response to requests for Plan documents and the Administrative Record, Verity refused to provide requested Plan documents and/or produced only documents that it deemed supported the denial. Verity and the Plan committed repeated wholesale and flagrant violations of the procedural requirements of ERISA during the claim. The actions taken by the Plan and Verity fell so far outside the structures of ERISA that no reported decision that we have been able to find states facts even close to the ERISA violations present in this matter.

Mr. Sluimer is independently entitled to his Plan benefits for each of the following reasons: the decision to deny was incorrect and unreasonable, the decision to deny was not supported by any

1  facts and was an abuse of discretion, the decision was made in bad faith, the Dutch Court's ruling

2  should have been given collateral estoppel effect, and Mr. Kanter was not a proper Plan

3  Administrator, is not entitled to any deference, and in fact should be removed as Plan Administrator.

4  Accordingly, Mr. Sluimer respectfully requests that the Court grant his motion for summary

5  judgment, provide him with accelerated stock option vesting, extended time period in which to

6  exercise stock options and continued medical benefits under the Plan, statutory penalties, interest

7  and attorneys' fees.

8  ## II. <u>STATEMENT OF FACTS</u>

9  **A.    THE PLAN**

10  The Plan's "Introduction" provides:

11  The purpose of the Plan is to provide for the payment of severance benefits to certain
    eligible employees of Verity, Inc. and its wholly owned subsidiaries (The
12  "Company") in the event that such employees are subject to qualifying employment
    terminations in connection with a Change in Control.

13  *Sluimer Declaration* Ex A, HS-0001.

14
15  The Plan's General Rules provide: "[s]ubject to the provisions set forth in this Section and

16  Section 7, in the event of a Covered Termination, the Company will provide the severance benefits."

17  *Sluimer Dec.* Ex A, HS-0004.  "Covered Termination" is defined in Section 2 (f) to include

    Constructive Termination which is defined as follows:

18
19  **"*Constructive Termination*"** means a voluntary termination of employment by a
    Participant after one of the following is undertaken without the Participant's express
    written consent:

20
21  (I)    a substantial reduction in the Participant's duties or responsibilities
    (and not simply a change in title or reporting relationships) in effect immediately
22  prior to the effective date of the Change in Control; *provided, however*, that it shall
    not be a "Constructive Termination" if, following the effective date in the Change of
23  Control, either (a) the Company is retained as a separate legal entity or business unit
    and the participant holds the same position in such legal entity or business unit as the
24  Participant held before such effective date, or (b) the Participant holds a position with
    duties and responsibilities comparable (though not necessarily identical, in view of
25  the relative sizes of the Company and the entity involved in the Change in Control)
    to the duties and responsibilities of the Participant prior to the effective date of the
26  Change in Control;

                                        • • •

27  (iv)   a material breach by the Company of any provisions of the Plan or any
    enforceable written agreement between the Company and the Participant; or

28

---

**-2-**

1    (v)    any failure by the Company to obtain assumption of the Plan by any
successor or assign of the Company.

2

3    Notwithstanding the foregoing, a voluntary termination shall not be deemed
Constructive Termination unless (x) the Participant provides the Company with
written notice (the "Constructive Termination Notice") that the Participant believes

4    that an event described in this Section 2(f) has occurred, (y) the Constructive
Termination Notice is given within three (3) months of the date the event occurred,

5    and (z) the Company does not rescind or cure the conduct giving rise to the event
described in this Section 2(f) within fifteen (15) days of receipt by the Company of

6    the Constructive Termination Notice.

7    *Sluimer Dec.* Ex A, HS-0002.

8    Pursuant to Section 4 of the Plan and Mr. Sluimer's Participation Notice, he was eligible to

9    receive the following Plan benefits:

10    (b)    **Accelerated Stock Award Vesting and Extended Exercisability of Stock
Options.** If a Participant incurs a Covered Termination, then effective as of the date

11    of the Participant's Covered Termination, (I) the vesting and exercisability of all
outstanding options to purchase the Company's common stock that are held by the

12    Participant on such date shall be accelerated in full, and (ii) and reacquisition or
repurchase rights held by the Company in respect of common stock issued pursuant

13    to any other stock award granted to the Participant by the Company shall lapse. . . .

14    . . .

15    (c)    **Continued Medical Benefits.** If a Participant incurs a Covered Termination
and the Participant was enrolled in a health, dental, or vision plan sponsored by the
Company immediately prior to such Covered Termination, the Participant may be

16    eligible to continue coverage under such health, dental, or vision plan (or to convert
to an individual policy), at the time of the Participant's termination of employment,

17    under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").
. . .

18    . . . If a Participant timely elects continued coverage under COBRA, the Company
shall pay the full amount of the Participant's COBRA premiums on behalf of the

19    Participant for the Participant's continued coverage under the Company's health,
dental and vision plans, including coverage for the Participant's eligible dependents,

20    during . . . (the "Severance Period") . . .

21    *Sluimer Dec.* Ex A, HS-0005-6.

22    Section 11 (a) of the Plan provides the following methods for seeking benefits:

23    A:    **Applications for Benefits and Inquiries.**    Any application for benefits,
inquiries about the Plan or inquiries about present or future rights under the Plan

24    must be submitted to the Plan Administrator in writing by an applicant (or his or her
authorized representative).  The Plan Administrator is:

25
Verity, Inc.

26    Attn:  Vice President, Human Resources
894 Ross Drive

27    Sunnyvale, CA  94089

28    *Id.*, at HS-0010.

**-3-**

POINTS AND AUTHORITIES IN SUPPORT OF
PL'S MOTION FOR SUMMARY JUDGMENT                    CASE NO.  C 07-2381 SI

1    If a claim is denied, the Plan requires that the decision of a claim on appeal must be made

2  by the Plan Administrator within sixty days after receipt[1] of the notice of appeal, and that the notice

3  shall be deemed given when delivered personally or deposited in the U.S. mail, and addressed to the

4  Plan Administrator.[2]

5    Furthermore, the Plan provides in Section 12 that it is unfunded, and that Verity Inc. or any

6  surviving entity resulting from a Change in Control is liable as follows:

7              **BASIS OF PAYMENTS TO AND FROM PLAN**

8        All benefits under the Plan shall be paid by the Company.  The Plan shall be
      unfunded, and benefits hereunder shall be paid only from the general assets of the
9      Company.

10  *Sluimer Dec.* Ex A, HS-0012.  Section 15 (b) of the Plan provides that the "Plan shall be binding

11  upon any surviving entity resulting for a Change in Control . . ." *Sluimer Dec.* Ex A, HS-0014.

12    The Plan provides at Section 13 (d) that "[t]he Plan Administrator is the named fiduciary

13  charged with the responsibility for administering the Plan" and again confirms that  "[t]he "Plan

14  Sponsor" and the "Plan Administrator" of the Plan is "Vice President, Human Resources" at Verity

15  Inc., 894 Ross Drive, Sunnyvale, CA  94089.  *Id.*, at HS-0012a.

16  **B.    THE PARTICIPATION NOTICE**

17    Under the Plan, Mr. Sluimer was entitled to "Accelerated Vesting of Options," "Extended

18  Exercisability of Options," and "Continued medical benefits."  Mr. Sluimer had an agreement with

19  Verity that his "Cash Severance Benefit" would be determined under Dutch law (which is favorable

20  to Mr. Sluimer), rather than the Plan.

21  _____

22    [1]Section 11 (d) **Decision on Review.**  The Plan Administrator will act on each request for review
    within sixty (60) days after receipt of the request, unless special circumstances require an extension of time
23  (not to exceed an additional sixty (60) days), for processing the request for a review. *Sluimer Dec.* Ex A, HS-
    0011.
24

25    [2]Section 15 (a) **Notices.**  Any notice, demand or request required or permitted to be given by either
    the Company or a Participant pursuant to the terms of this Plan shall be in writing and shall be deemed given
26  when delivered personally or deposited in the U.S. mail, First Class with postage prepaid, and addressed to
    the parties, in the case of the Company, at the address set forth in Section 11(a) and, in the case of a
27  Participant, at the address as set forth in the Company's employment file maintained for the Participant as
    previously furnished by the Participant or such other address as a party may request by notifying the other
28  in writing. *Sluimer Dec.* Ex A, HS-0013.

1    These agreements were summarized and confirmed in Mr. Sluimer's Participation Notice,

2    which provides in pertinent part:

3                                **PARTICIPATION NOTICE**

4         Verity, Inc. (the **"*Company*"**) has adopted the Verity, Inc. Change in Control
      and Severance Benefit Plan (the **"*Plan*"**).  The Company is providing you with this
5     Participation Notice to inform you that, given your position at the Company, you
      qualify as a participant in the Plan.  A copy of the Plan document, which also
6     constitutes a summary plan description, is attached to this Participation Notice.  The
      terms and conditions of your participation in the Plan are as set forth in the Plan, and
7     in the event of any conflict between this Participation Notice and the Plan, the terms
      of the Plan shall prevail except with respect to the cash severance, which you have
8     declined as set forth below.  Subject to the provisions of the Plan, the details of your
      Plan benefits, as described in Section 4 of the Plan (except with respect to the cash
9     severance, which you have declined), are as follows:

10        **Cash Severance Benefit.**  You have declined to accept any cash severance
      benefit under the Plan.   Consequently, you will be entitled to no cash severance
11    benefit under the terms of the Plan, and any cash benefit to which you shall be
      entitled shall be determined under  Dutch law without reference to the Plan.
12
          **Accelerated Vesting of Options:**  Full.
13
          **Extended Exercisability of Options:**  Later of 12 months or the post-
14    termination exercise period of the option; provided, however, that such extended
      exercisability shall not extend beyond the term of the option.
15
          **Continued medical benefits:**  18 months, or such earlier date as you shall
16    secure subsequent employment that shall provide you with similar medical benefits.

17    *Sluimer Dec.* Ex A, HS-0015.

18    **C.    THE CLAIM**

19        **1.    Mr. Sluimer's Employment at Verity**

20        Plaintiff, Hugo Sluimer, became employed by Verity in 1990.  Verity was a computer

21    software provider.  Mr. Sluimer worked for Verity for more than fifteen years and received multiple

22    promotions during that time.  As of 2005, Mr. Sluimer was Verity's Senior Vice President for EMEA

23    (Europe, Middle East and Africa) and APAC (Asia Pacific) Operations. *Pijl Dec.* Ex. B, HS-0337-

24    351.  In this role, Mr. Sluimer  had responsibility for all of Verity's worldwide operations outside

25    of the Americas, and was one of Verity's most senior executives.  In his capacity as Senior Vice

26    President for EMEA and APAC Operations, Mr. Sluimer had responsibility for supervising over 100

27    employees, including 10 individuals who were country managers; Mr. Sluimer was responsible for

28    overseeing operations generating approximately $50,000,000 in annual revenue (roughly half of

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1  Verity's total worldwide revenue); and Mr. Sluimer reported directly to Verity's President/CEO. *Pijl*

2  *Dec.* Exs.  A & B; *Sluimer Dec.* ¶¶ 2 & 8.  In his capacity as Senior Vice President for EMEA and

3  APAC Operations, Mr. Sluimer had responsibility for all aspects of Verity operations outside of the

4  Americas, including responsibility for sales, marketing, finance, administration, technical operations,

5  and oversight of consultants. *Pijl Dec.* Exs.  A & B, *Sluimer Dec.* ¶¶ 2 & 8.

6
7
      **2.**      **Verity Considers Sale or Merger, and Provides Certain Employees with a Protective Benefit Plan**

8       In April 2005, Verity considered the possibility of being acquired by and/or merged with

9  another company.  On April 6, 2005, as an incentive to encourage certain Verity employees to

10  continue to work at Verity during this transition process, and to provide certain benefits to those

11  employees in the event a 'change of control' led to subsequent termination or constructive

12  termination, Verity created THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE

13  BENEFIT PLAN (the "Plan"). *Sluimer Dec.* Ex. A HS-0001-14.   Among other things, the Plan

14  provided that, if a Plan participant suffered a "covered termination" within 18 months following a

15  "change of control", the Plan participant was entitled to receive certain benefits, including: a cash

16  severance payment, accelerated stock option vesting, an extended time period in which to exercise

17  stock options, continued medical benefits, and other benefits. *Id.*   Under the Plan, a "covered

18  termination" was defined as either an "involuntary termination without cause" or a "constructive

19  termination". *Id.*, at HS-0003. Under the Plan, a "constructive termination" occurred when there was

20  a "substantial reduction in the [employee's] duties or responsibilities...in effect immediately prior

21  to the...Change of Control..." *Id.*, at  HS-0002.

22       On May 4, 2005 Verity provided Mr. Sluimer with a Participation Notice for the Plan, which

23  confirmed that he was a Plan participant. The Participation Notice confirmed that, as a Plan

24  participant, Mr. Sluimer was eligible for benefits under the Plan in the event that he suffered a

25  "covered termination" following a "change of control".  *Id.*, at HS-0015.   These benefits included

26  accelerated vesting of stock options, extended exercisability of those options and medical benefits.

27       Because Mr. Sluimer was a Dutch citizen and his employment contract was governed by

28  Dutch law, he elected not to participate in the cash severance benefit provided to other Plan

1   participants. Instead, as stated in Mr. Sluimer's Participation Notice, Verity and Mr. Sluimer agreed

2   that "any cash benefit to which [Sluimer] shall be entitled shall be determined under Dutch law."

3   *Sluimer Dec.* Ex. A HS-0015. Further, Mr. Sluimer's Participation Notice confirmed that he was

4   otherwise a Plan participant and thus eligible for all other Plan benefits in the event of a "covered

5   termination", including accelerated vesting of stock options and medical benefits.

6
7       **3.     Verity Acquired By Autonomy And Mr. Sluimer Is Told He is
            Redundant And Will Be Terminated**

8       In or about December 2005, Verity entered into an agreement to be acquired by, and was

9   acquired by, AUTONOMY COMPANY PLC ("Autonomy"). Autonomy was a software developer

10  headquartered in England. Autonomy's acquisition of Verity constituted a "change of control" under

11  the terms of the Plan. *Sluimer Dec.* Ex. A HS-0020. Therefore, under the terms of the Plan, if Mr.

12  Sluimer suffered a "covered termination" within the next 18 months, He was entitled to receive

13  benefits under the Plan, including accelerated vesting of his stock options.

14      On December 29, 2005, Autonomy sent a letter to Mr. Sluimer, entitled  "Warning of

15  Possible Redundancy - Acquisition of Verity, Inc. by Autonomy Corporation PLC." *Id.*, at HS-0017.

16  In this letter, Mr. Sluimer was warned that his position had been identified as "at risk of

17  redundancy", and that "if...a suitable alternative position is not identified, [the company] may

18  proceed to terminate your employment by reason of redundancy." Mr. Sluimer received this letter

19  on January 6, 2006.

20      On January 5, 2006, Mr. Sluimer was contacted by Autonomy's Chief Operating Officer,

21  Andrew Kanter ("Kanter"). Mr. Kanter was fully aware of Mr. Sluimer's job title and duties and

22  responsibilities at Verity. Mr. Kanter informed Mr. Sluimer that his position was redundant and that

23  it was likely that there was no similar position at Autonomy which would be available to Mr.

24  Sluimer. *Id.*, at HS-0018-19. A few hours after the call, Mr. Sluimer's company e-mail was shut

25  off without notice to him, and all of his e-mails were re-directed to Autonomy's Chief Financial

26  Officer. *Id.*, at HS-0018-19. During January 2006, Autonomy informed Mr. Sluimer's co-workers

27  and clients that he would no longer be working with the company. *Id.*, at HS-0025.

28  / / /

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1    Consistent with instructions given to him by Mr. Kanter, Mr. Sluimer ceased performing

2 work. Although Sluimer was paid during this time period, but he was paid significantly less than

3 the monthly pay that he received over the past three years. From 2003-2005, his average monthly

4 pay was € 45,076 . Had he received his average monthly pay during these three months in 2006, he

5 would have received additional pay of € 8,842 for the month of January 2006, € 18,043 for the

6 month of February 2006 and €15,900 for the month of March 2006. In 2006, he was informed that

7 his monthly pay was based on commissions which were based upon the then current sales of a

8 product that he was no longer in charge of selling and which was being discontinued by Autonomy.

9 Mr. Sluimer suffered a lapse in pay after the change in control. *Sluimer Dec.* ¶ 7.

10    On or about January 24, 2006, Mr. Kanter met with Mr. Sluimer and read him a draft "exit

11 letter" which stated that Autonomy could not offer Mr. Sluimer an equal position at Autonomy

12 compared to the position he had at Verity. *Sluimer Dec.* Ex. A HS-0020-21.  Mr. Kanter then

13 suggested that Mr. Sluimer propose an "exit fee", i.e., an appropriate employment separation

14 package. *Sluimer Dec.* Ex. A HS-0020-21.  Between January and March 2006, Mr. Sluimer

15 informed Mr. Kanter that he was entitled to severance benefits as a result of the "change of control"

16 and lack of a comparable job for him at Autonomy, and that he expected Autonomy/Verity to honor

17 its legal obligations to him. *Id.*, at HS-0018-31.

18
19        **4.    Autonomy Attempts to Avoid Mr. Sluimer's Severance Benefits by Offering
              Him a Position with a Substantial Reduction in Duties and Responsibilities**

20    On or March 23, 2006, Mr. Kanter sent Mr. Sluimer a letter wherein he acknowledged that

21 Mr. Sluimer's prior job had lapsed. *Sluimer Dec.* Ex. A HS-0034-36.  Mr. Kanter also informed Mr.

22 Sluimer that Autonomy had found Mr. Sluimer an "alternative opportunity" at a third entity named

23 Neurodynamics. Mr. Kanter claimed that Neurodynamics was a part of Virage which was a division

24 of Autonomy.  The "alternative" job offered to Mr. Sluimer by Mr. Kanter involved a substantial

25 reduction in Mr. Sluimer's duties and responsibilities from his prior job as Senior Vice President for

26 EMEA and APAC Operations. *Pijl Dec.* Exs. A, B, C & D[3]. In addition, the "alternative" job offered

27
28        [3]The English translations of the documents attached to the *Pijl Declaration*, which are in
Dutch, are attached to the *Reilly Declaration*, Exhibits C -H.

to Mr. Sluimer did not have a clearly defined role, responsibilities, business plan or reporting structure, but appeared to be little more than a job as a salesman. *Sluimer Dec.* Ex. A HS-0049-50; *Pijl Dec* Ex. A. Furthermore, the position that was offered had a substantially smaller duties and responsibilities. *Id.*, at . Exs. A, B, C & D.

Neurodynamics' revenue was about $5,000,000 and had 15 employees, whereas before the acquisition Mr. Sluimer was responsible for revenue of approximately $50,000,000 and managed a team of over 100 employees. *Reilly Dec.*, Ex. C; HS-0365, ¶¶ 22 & 23. Additionally, the offered position only involved sales, whereas Mr. Sluimer's prior position included responsibility for sales, marketing, finance, administration, technical operations, and oversight of consultants. Neurodynamics had a General Manager in place that Mr. Sluimer was to report to, whereas at his old job the General Managers reported to Mr. Sluimer and Mr. Sluimer reported directly to the CEO. *Id., at* HS-0391 ¶¶ 26-31.

On April 3, 2006, Mr. Sluimer informed Mr. Kanter in writing that the "alternative" position offered by Mr. Kanter did not seem appropriate at all as it appeared to be completely different and far diminished from his prior job. Mr. Sluimer also confirmed that he had yet been provided with a clear job description or plan for him. *Sluimer Dec.* Ex. A HS-0040-41.

On April 7, 2006, Mr. Sluimer informed Mr. Kanter in writing that he believed his employment had been terminated in accordance with the change of control provisions of the Plan, and that he was therefore entitled to accelerated vesting of his stock options and continued medical benefits. Mr. Sluimer also informed Mr. Kanter that, because his employment had been terminated following the change of control, he was entitled to receive a cash severance payment under Dutch law. *Sluimer Dec.* Ex. A HS-0046-47.

During March and April 2006, Mr. Sluimer and Mr. Kanter engaged in a series of conversations and written communications, in which Mr. Sluimer again explained that the "alternative" job was not comparable to his prior Verity job, and that he was therefore entitled to a cash severance payment and to benefits under the Plan. *Sluimer Dec.* Ex. A HS-0037-47.

/ / /

/ / /

POINTS AND AUTHORITIES IN SUPPORT OF
PL'S MOTION FOR SUMMARY JUDGMENT            CASE NO.  C 07-2381 SI

**5.    Mr. Sluimer Confirms That The Offered Position Amounts To a Substantial Reduction in Duties and Responsibilities**

On April 11, 2006, Mr. Kanter instructed Mr. Sluimer to meet with Neurodynamics' General Manager David Humphries ("Mr. Humphries") to discuss the proposed "alternative job". *Sluimer Dec.* Ex. A HS-0044.  Mr. Kanter had informed Mr. Sluimer that Mr. Humphries was to be his supervisor in the new job.

On April 18, 2006, Mr. Sluimer met with Mr. Humphries to discuss the proposed "alternative job." *Id.,* at Ex. A HS-0048-51.  Based on Mr. Sluimer's conversation with Mr. Humphries and Mr. Humphries' description of Mr. Sluimer's expected role and duties, it was clarified and re-confirmed that the "alternative" job offered by Autonomy would involve a substantial reduction in Mr. Sluimer's job duties and responsibilities compared to Mr. Sluimer's prior job as Verity's Senior Vice President of EMEA and APAC Operations, and that the jobs were not comparable.  *Id.*

**6.    Mr. Sluimer Files Petition With The Dutch Court**

As the parties had agreed that Mr. Sluimer's cash severance benefits would be governed by Dutch law, Mr. Sluimer filed a petition in the Dutch Court on April 19, 2006. ("the Dutch Lawsuit"). In his Dutch petition, Mr. Sluimer maintained that he was informed that his prior position had lapsed and that the new position that he was offered was not comparable with his prior position.  Before the acquisition, Mr. Sluimer was responsible for revenue of approximately $50,000,000 and managed a team of over 100 employees.  The position that was offered had  substantially smaller interests and responsibilities.  The revenue was about $5,000,000 and the division had 15 employees of which he would only supervise 5. *Reilly Dec.* Ex. C, HS-0365 ¶¶ 22 & 23.  Verity maintained that it offered Mr. Sluimer a comparable alternative position and that he turned it down without good reason. Id., at. Ex. D, HS-380 ¶¶ 28-47; Ex. H HS-0411 ¶ 3.  Verity also maintained that they were not liable because they offered Mr. Sluimer immediate reemployment.  *Id.,* at Ex. D, HS-0378 ¶ 22.  Mr. Sluimer again wrote to Mr. Kanter on April 25, 2006, and informed him that the "alternative" job offered by Autonomy was obviously "not comparable at all" to his former job with Verity.  *Sluimer Dec.* Ex. A HS-0054.

/ / /

### 7.    Mr. Sluimer Attempts To Contact the Plan Administrator

In a letter dated May 1, 2006, as required by Section 11 (a) of the Plan, Mr. Sluimer wrote to the Plan Administrator, Jack Landers, and stated that he believed he was entitled to Plan Benefits. Further, he wrote "[i]f you need more information, please do not hesitate to call me." *Sluimer Dec.* Ex. A HS-0057.  On May 3, 2006, Mr. Kanter, not the Plan Administrator, responded that "[o]n the basis of the terms of the [Plan], we do not consider you to be entitled to the accelerated vesting options and continued medical benefits." *Sluimer Dec.* Ex. A HS-0058.  The letter did not indicate that Mr. Sluimer could appeal the decision even though the Plan and ERISA both have such a requirement.  Nor did the letter otherwise comply with ERISA.  Further the letter stated that any future correspondence regarding Plan benefits or otherwise should be sent to Mr. Kanter directly instead of the Plan Administrator Jack Landers. *Sluimer Dec.* Ex. A HS-0058.

### 8.    The Dutch Court Hearing

In April and May 2006, as part of the Dutch Lawsuit proceedings, Mr. Sluimer submitted written materials to the Court (and to Autonomy/Verity) which described Mr. Sluimer's job duties and responsibilities as Verity Vice President of EMEA and APAC Operations; described the duties and responsibilities in his "alternative" job at Autonomy; and explained why the two positions were not comparable but constituted a substantial reduction in Mr. Sluimer's job duties and responsibilities. *Pijl Dec.* Ex. A.  Verity and Mr. Kanter submitted written materials to the Court claiming, among other things, that Mr. Sluimer was not entitled to a cash severance benefit because it offered Mr. Sluimer a comparable alternative position.  Verity also argued that it was not liable because it offered Mr. Sluimer immediate reemployment and that Mr. Sluimer had not executed releases and/or non-compete agreements. *Pijl Dec.* Ex. A

The Dutch Court heard the case on May 30, 2006.  Both Mr. Sluimer and Mr. Kanter attended this hearing, with Mr. Kanter appearing as the company's representative and witness. *Pijl Dec.* ¶¶ 8, 9 & 10, Ex. C.  During the hearing, the Court heard testimony from Mr. Sluimer and from Mr. Kanter regarding the nature of the two jobs and whether they were comparable.  During his testimony, Mr. Sluimer explained to the Court his job duties in both jobs and described why they were not comparable. *Id*. Further, Mr. Sluimer explained that he suffered a lapse in pay. *Id*.  Mr.

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1  Kanter testified in support of the defendants' arguments that they had offered Mr. Sluimer a

2  comparable alternative position and that Verity was not liable because they offered Mr. Sluimer

3  immediate reemployment. *Id.*

4      Defendants were provided with all written materials submitted to the Court by Mr. Sluimer,

5  including materials describing how the two jobs were not comparable. Mr. Kanter was present as

6  the company's representative during these Court hearings, heard Mr. Sluimer's testimony; saw the

7  evidence and materials submitted by Mr. Sluimer as part of his case; and gave testimony himself as

8  the company's representative. *Id.* at ¶¶ 8, 9 & 10, Exs. A, B & C.

9      **9.    The Dutch Court Rules In Mr. Sluimer's Favor**

10     After considering the evidence and testimony from Mr. Kanter and Mr. Sluimer, the Dutch

11  Court issued its order awarding Mr. Sluimer cash severance benefits on June 7, 2006. *Reilly Dec.*

12  Ex. H. The Dutch Court rejected defendants' arguments that they offered Mr. Sluimer a comparable

13  alternative position, that they were not liable because they offered Mr. Sluimer immediate

14  reemployment and that they were not liable because Mr. Sluimer had not executed releases and/or

15  non-compete agreements. *Id.* The Dutch Court found that the position offered was not an

16  alternative suitable position and that no suitable position would become available.

17     Based on what was adduced from both sides, the cantonal judge is of the opinion
       that, seeing the kind and the importance of the job offered at Neurodynamics, as well

18     as the number of employees at Neurodynamics, Sluimer made it sufficiently
       convincing that from the point of view of the labor law, the job cannot be considered

19     a suitable alternative job. The fact that the job would not change Sluimer's labor
       conditions and that within that job there are/were possibilities for career, do not

20     influence the aforementioned.

21  *Reilly Dec.* Ex. H (Dutch Order) at ¶ 5. Further, because of the absence of an alternative suitable

22  position at Verity/Autonomy, the Dutch Court ruled that Mr. Sluimer's employment would be

23  deemed terminated effective June 23, 2006 and awarded Mr. Sluimer a cash severance benefit of €

24  1,081,824. *Id., at* ¶ 6 & Ruling.

25     **10.    Mr. Kanter Repeats Denial of Claim Despite The Dutch Court Findings**

26     On July 6, 2006, without receiving any additional correspondence from Mr. Sluimer and

27  despite the Dutch Court's Order, Mr. Kanter wrote Mr. Sluimer claiming that Mr. Sluimer's May

28

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1, 2006 letter sought additional information and, that as such, it did not constitute an application

within the meaning of the Plan. Further, the letter stated as follows:

> Notwithstanding the foregoing, to the extent that your letter is deemed to be an application for benefits, we hereby notify pursuant to Section 11(b)(1) and (2) of the Plan you that your application is denied in whole. Firstly, in Section 3(b)(iii), an employee offered immediate reemployment is an express exception to the receipt of severance benefits under. You have been offered such employment, and your employment has been continuous with payment of salary, commission and other benefits such as stock option vesting. You have not suffered a "Constructive Termination" within the meaning of Section 2(f) the Plan.  Also section 3(b)(iv) provides that an employee will not receive benefits under the Plan if the employee does not confirm in writing that he or she shall be subject to the Company's Confidentiality Agreement and Non Compete Agreement.  Finally, Section 7 provides that in order to be eligible for benefits under the Plan,  the employee must execute a waiver  and release generally releasing the Company from any and all claims and liabilities.

*Sluimer Dec.* Ex. A HS-0059-60.  Additionally, the letter now stated that Mr. Sluimer could appeal

the decision and directed him to do so by writing to the Plan Administrator Jack Landers.

### 11.    Mr. Sluimer Appeals the Denial

By registered mail and email sent on July 13, 2006, Mr. Sluimer wrote the Plan Administrator

and requested review based upon the following grounds:

> 1.    as you are aware, the Cantonal Court in The Netherlands ruled on 7 July 2006 that the offered position by Verity/Autonomy (Sr. VP Neurodynamics), is not comparable with the prior position the Participant hold at Verity, Inc. Therefore I claim, per section 2(f) "Constructive  Termination" (I) due to a substantial reduction in the Participant's duties and responsibilities.
> 2.    I disagree with your opinion that I was offered immediate reemployment, per section 3(b)(iii) of the Plan.  I was given half payment during a 3 months period (3 months in the software industry are comparable with at least 1 year in a traditional industry), so the offered reemployment was by far not immediate.  I also believe that Verity/Autonomy's call for section 3(b)(iii) under the Plan is not relevant, simply because a comparable position was never offered, so "Constructive Termination" applies.
> 3.    I also disagree with Verity/Autonomy's other arguments (referring to 3(b)(iv)and section 7), to not consider me entitled to the benefits under the Plan, because I signed a "Proprietary Rights" Agreement when I joined Verity, Inc. (this agreement is comparable with Autonomy's "Confidentiality Agreement").  What's even more important is that such arguments have nothing to do with the core/spirit of the Plan. It is common business practice (as performed by Verity/Autonomy in other settlements under the Plan with former Verity Executives) that such 'sub-agreements' are part of a final 'Separation Agreement' between Verity/Autonomy and the Participant.

*Sluimer Dec.* Ex. A HS-0061.

---

Having not received any response to his July 13, 2006 letter that was sent by registered mail and email, on September 5, 2006, Mr. Sluimer sent an email stating that he had a change of address effective October 1, 2006. *Sluimer Dec.* Ex. A HS-0064.

**12.   Mr. Kanter Denied Mr. Sluimer's Appeal Based Upon Same Arguments Rejected by The Dutch Court**

By letter dated September 29, 2006, Mr. Kanter, not the Plan Administrator, responded to the July 13, 2006 letter Mr. Sluimer had sent to the Plan Administrator, as follows:

> I write on behalf of Verity, Inc. with regards to your letter dated 13 July 2006. Your letter was addressed to the Vice President, Human Resources of Verity, Inc. That position reported to my office, which has global responsibility for group human resources matters. Jack Landers, the previous Vice President, Human Resources of Verity, Inc., has recently left the company, and as such I have assumed his duties as the Plan Administrator within the meaning of the Change in Control and Severance Benefit Plan (the "Plan"), the topic of your letter.
>
> Your letter dated is a request for review under Section 11(c) of the Plan, and was received by Verity on 1 August 2006. This letter is a notification of decision on review under Section11(d) of the Plan. Pursuant to Section 11(d), this decision is being provided within 60 days of receipt of your request.
>
> I regret to inform you that upon re-review Verity has confirmed the denial of the application for benefits in whole. The specific reasons follow.
>
> We draw your attention again to Section 3(b)(iii) of the Plan, which provides that an employee offered immediate reemployment is an express exception to the receipt of severance benefits under the Plan. . . .
>
> Further, you did not suffer a "Constructive Termination" within the meaning of Section 2(f)(I) of the Plan. . . .
>
> You reference the 7 Jury 2006 decision of the Cantonal Court in the Netherlands as evidence supporting your position. Section 10 of the Plan clearly states that the Plan is governed  by the laws of the State of California. There are of course very substantial differences between Dutch and California employment law, such as the applicable rules and regulations, factors considered by the Cantonal Court and standards of evidence. Thus whilst the Cantonal Court decision has been considered in reaching this decision, it is neither binding on the Company for purposes of the Plan nor persuasive in reaching this decision. It should also be noted that at the Cantonal Court hearing your position was clear that the substance of your petition did not address the Plan.
>
> . . .
>
> . . . Under Section 11(b)(4) of the Plan, you are hereby notified that you have a fight to bring a civil action under Section502(a) of ERISA.
>
> . . .

*Sluimer Dec.* Ex. A HS-0065-67. Mr. Kanter gave additional reasons including allegedly improper notice, and a failure to sign non-existent confidentiality agreements, waivers and releases. *Id.*

1       The September 29, 2006 letter from Mr. Kanter was sent to Mr. Sluimer's old address and

2   some time thereafter was sent to Mr. Sluimer's new address, where he received it on October 26,

3   2006. *Sluimer Dec.* Ex. A HS-0065.

4

     **13.**     **Mr. Sluimer Make Final Attempt To Resolve Claim With The Plan**
5                 **Administrator**

6       On February 27, 2007, Mr. Sluimer wrote to the purported Plan Administrator, reiterating

7   the fact that the Dutch Court had already ruled on the issue of whether the sales job Verity had offerd

8   him was comparable, and finding that Mr. Sluimer had been constructively terminated. Mr. Sluimer

9   also reiterated that he had not been offered immediate employment, and never reemployment in his

10  old job, but was left in limbo for three months, and otherwise explained the various ways Mr.

11  Kanter's decision was unsupported. Sluimer Dec. Ex. A HS-0068-69.

12      On March 22, 2007, Mr. Kanter responded as follows:

13      First, the notification of decision on review was sent within the terms of the Plan.
    Section 11(d) states that the Plan Administrator will "act on each request for review
14      within sixty (60) days after receipt of the request." Your request was received by
    Verity on 1 August 2006, and thus the response was within the required 60 days. . .
15

    We note your arguments disagreeing with the decision on review. Each of these
16      matters have been covered in previous correspondence. Without repeating these
    arguments, we note for the record that we respectfully disagree with your
17      conclusions. One new point merits addressing: you state that it is common practice
    to enter into the Company's Confidentiality Agreement and Non-Compete
18      Agreement as required by the Plan as part of a final "Separation Agreement" between
    the Company and the employee. In fact the Company has never done so under the
19      Plan – in each case the Company has required all documents in advance of receiving
    benefits. There have been no "settlements" under the Plan. The Plan is clear that
20      entering into such an agreement and signing a general waiver and release are
    predicate acts, which you have not done.

21

    Per your request, enclosed please find a copy of Autonomy's most recently published
22      annual report, together with a copy of Autonomy's most recently published financial
    results. Please let me know should you require any specific other Plan documents.

23

24  *Sluimer Dec.* Ex. A HS-0070-71.

25      **14.**     **Mr. Sluimer's Counsel's Additional Request For Plan Documents**

26      On October 12, 2007, Mr. Sluimer's counsel wrote the Plan Administrator and requested Plan

27  documents and the administrative record, including but not limited to: the Plan itself; the annual

28  reports for 2005 - 2007; the summary plan description; the Plan's financial reports for 2005 - 2007;

all documents related to the Board's authorization to administer the Plan; the rules and procedures established by the Plan Administrator for 2005 - 2007; a complete copy of the claim file; and other relevant documents. *Reilly Dec.* Ex A, HS-0086-94. Further, Counsel requested a list of any witheld documents, along with an explanation of why they was being withheld. *Id.*

### 15. Defendants Again Refuse To Provide Plan Documents

On November 12, 2007, Mr. Kanter responded and claimed that the requested information was "outside ERISA's boundary pursuant to 29 U.S.C. § 1132 (c)" and was "information protected against disclosure under any doctrine or privilege, including without limitation the attorney-client privilege, work product doctrine and/or any right to privacy." The Plan Administrator produced "1) Verity Inc.'s Change in Control and Severance Plan (with Exhibit A thereto); and 2) correspondence to Hugo Sluimer of 6 July 2006, 3 August 2006, 28 September 2006 and 22 March 2007." *Reilly Dec.* Ex A, HS-0095-123.

### 16. Plan Benefits That Mr. Sluimer Is Entitled To

On July 23, 2006, Verity cancelled all of Mr. Sluimer's outstanding non-vested options to purchase. Had the cancelled options to purchase vested, as required under the Plan, Mr. Sluimer would have received the following vested purchase options:

1) Under Grant 8513, 22,819 options to purchase at an exercise price of $5.13
2) Under Grant 6885, 40,568 options to purchase at an exercise price of $7.25.
3) Under Grant 8061, 54,766 options to purchase at an exercise price of $5.63.

*Sluimer Dec.* Ex. A HS-0083.

Pursuant to the Plan, Mr. Sluimer was also entitled to a 12 month period of "Extended Exercisability" of those options, which should be measured from the date the options are vested.

Additionally, the Plan and Participation Notice provided that Mr. Sluimer was entitled to 18 months of Continued Medical Benefits. Mr. Sluimer paid €3,873.30 to continue his medical benefits for the 18 months after his employment with Verity was terminated in June 2006. *Id.* at HS-0084-85.

### III. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1  party has the initial burden of identifying relevant portions of the record that demonstrate the absence

2  of a fact or facts necessary for one or more essential elements of each cause of action upon which

3  the moving party seeks judgment.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

4        If the moving party sustains its burden, the nonmoving party must then identify specific facts,

5  drawn from materials on file, that demonstrate that there is a dispute as to material facts on the

6  elements that the moving party has contested.  *See* Fed.R.Civ.P. 56(c).  The nonmoving party must

7  not simply rely on the pleadings and must do more than make conclusory allegations in an affidavit.

8  *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990).  Summary judgment must be granted

9  for the moving party if the nonmoving party "fails to make a showing sufficient to establish the

10  existence of an element essential to that party's case, and on which that party will bear the burden

11  of proof at trial."  *Celotex.* at 322.

12  **B.    STANDARD OF REVIEW FOR ERISA BENEFIT DECISIONS**

13        A denial of benefits under ERISA is reviewed *de novo* by the district court "unless the benefit

14  plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits

15  or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115

16  (1989). "[F]or a plan to alter the standard of review from the default of *de novo* to the more lenient

17  abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Abatie*

18  *v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006).

19        The abuse of discretion standard is heightened, however, by the presence of a conflict
       of interest. (citation) "A district court, when faced with all the facts and
20       circumstances, must decide in each case how much or how little to credit the plan
       administrator's reason for denying insurance coverage."

21

22  *Abatie,* 458 F.3d at 968.  Factors that show an administrator's self-interest include:

23        evidence of malice, of self-dealing, or of a parsimonious claims-granting history, the
       administrator provides inconsistent reasons for denial, fails adequately to investigate
24       a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable
       evidence, or has repeatedly denied benefits to deserving participants by interpreting
25       plan terms incorrectly or by making decisions against the weight of evidence in the
       record.

26  *Id.* at 968-69.  When the violations by an administrator are wholesale and flagrant, review is *de novo*.

27  *Id.* at 972.

28

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1    In addition, when an unauthorized person, who does not have fiduciary discretion to

2    determine benefits eligibility, renders such a decision, review is *de novo. Shane v. Albertson's Inc.*,

3    504 F.3d 1166, 1170 (9th Cir. 2007) (*quoting Jebian v. Hewlett-Packard Co. Employee Benefits*

4    *Organization Income Protection,* 349 F.3d 1098, 1105 (9th Cir.2003)).

5    **C.    SCOPE OF REVIEW FOR ERISA BENEFIT DECISIONS**

6    When an ERISA matter is reviewed for an abuse of discretion, the Court's review is generally

7    limited to the Administrative Record reviewed by the Plan Administrator during the claim. *Kearney*

8    *v. Standard Ins. Co.*, 175 F.3d 1084,1094-1095 (9th Cir. 1999).  A District Court may admit

9    additional evidence on *de novo* review. *Abatie* 458 F.3d at 970.  A District Court may also take

10   additional evidence whenever procedural irregularities have prevented full development of the

11   administrative record. *Id.* at 973.

12   **D.    REFUSAL TO PROVIDE DOCUMENTS UNDER ERISA**

13   ERISA requires a plan administrator to timely furnish certain documents when requested by

14   a participant:

15   A summary plan description of any employee benefit plan shall be furnished to
     participants and beneficiaries as provided in section 1024(b) of this title.

16

17   29 U.S.C. § 1022(a);

18   The administrator shall, upon written request of any participant or beneficiary,
     furnish a copy of the latest updated summary plan description, plan description, and

19   the latest annual report, any terminal report, the bargaining agreement, trust
     agreement, contract, or other instruments under which the plan is established or

20   operated.

21   29 U.S.C. § 1024(b)(4).  ERISA then provides for a monetary penalty should an administrator fail

22   or refuse to provide the requested documents or information within 30 days of the request:

23   Any administrator ... who fails or refuses to comply with a request for any
     information which such administrator is required by this subchapter to furnish to a

24   participant or beneficiary ... by mailing the material requested to the last known
     address of the requesting participant or beneficiary within 30 days after such request

25   may in the court's discretion be personally liable to such participant or beneficiary
     in the amount of up to $100 a day from the date of such failure or refusal, and the

26   court may in its discretion order such other relief as it deems proper.

27   29 U.S.C. § 1132(c)(1).  "ERISA expressly commits the decision to assess penalties for failure to

28   provide requested information to the sound discretion of the trial court." *Draper v. Baker Hughes*

**-18-**

1   *Inc.,* 892 F.Supp. 1287, 1297 -1298 (E.D.Cal. 1995). The decision is based on an analysis of the

2   conduct of the defendant. *Id*.

3   **E.     COLLATERAL ESTOPPEL**

4        The doctrine of collateral estoppel (issue preclusion), "prevents relitigation of issues actually

5   litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior

6   proceeding." *Kourtis v. Cameron,* 419 F.3d 989, 994 (9th Cir.2005). A prior court decision has

7   preclusive effect under the doctrine of collateral estoppel where "(1) the issue necessarily decided

8   at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first

9   proceeding ended with a final judgment on the merits; and (3) the party against whom collateral

10  estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v.*

11  *Film Tec Corp.,* 204 F.3d 880, 885 (9th Cir.2000); *Kourtis,* 419 F.3d at 994.

12       This doctrine generally applies to foreign judgments as well:

13       A valid judgment rendered in a foreign nation after a fair trial in a contested
         proceeding will be recognized in the United States so far as the immediate parties and
14       the underlying cause of action are concerned.

15  Restatement (Second) of Conflicts of Laws, § 98 (1971); *see Commercial Ins. Co. of Newark, N. J.*

16  *v. Pacific-Peru Const. Corp.,* 558 F.2d 948, 952 (9th Cir. 1977) (citing the Rest. 2d Confl., § 98 as

17  authority); *British Midland Airways Ltd. v. Intl. Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974) ("It

18  has long been the law that unless a foreign country's judgments are the result of outrageous

19  departures from our own motions of 'civilized jurisprudence,' comity should not be refused")

20                         **IV.  ARGUMENT**

21       After working at Verity for over fifteen years, plaintiff Hugo Sluimer's position was deemed

22  redundant when Verity was acquired by another company.  Mr. Sluimer was a participant in an

23  ERISA benefits plan which provided certain benefits in the event of constructive or actual

24  termination resulting in a change of control at Verity.  Mr. Sluimer suffered constructive and actual

25  termination, and that issue has already been confirmed by a court based in the Netherlands after a

26  contested hearing.  Mr. Sluimer is entitled to his Plan benefits for each of the following reasons: the

27  decision to deny was incorrect and unreasonable; the decision to deny was not supported by any facts

28  and was an abuse of discretion; the decision was made in bad faith; the Dutch Court's ruling should

1   have been given collateral estoppel effect; the defendants failed to provide either Mr. Sluimer or the

2   Court with the complete Administrative Record; and Mr. Kanter was not a proper Plan

3   Administrator, was not even the administrator at all at the time he made the initial benefits decision,

4   suffers from a clear conflict of interest, is not entitled to any deference, and in fact should be

5   removed as Plan Administrator.  Accordingly, Mr. Sluimer respectfully requests that the Court grant

6   his motion for summary judgment, provide him with accelerated stock option vesting, extended time

7   period in which to exercise stock options and continued medical benefits under the Plan, statutory

8   penalties, interest and attorneys' fees.

9   **A.    THE CLAIM SHOULD BE REVIEWED DE NOVO**

10        The courts review of a denial of ERISA benefits is de novo, unless the benefit plan gives the

11  administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe

12  the terms of the plan; if the plan does give such discretionary authority, review is for abuse of

13  discretion.  *Firestone Tire*, 489 U.S. at 115.

14        The Verity, Inc. Change in Control and Severance Benefit Plan language grants the Plan

15  Administrator power to interpret plan terms and to make final benefits determinations.  Nonetheless,

16  this case should be reviewed *de novo*. Review should be de novo for at least four separate reasons:

17  (1) Verity failed to allow the Plan Administrator identified in the Plan to make the decision, but the

18  decision was instead made by an unauthorized person (Mr. Kanter), without fiduciary discretion, but

19  who was acting out of clear self-interest; (2) Mr. Kanter's appointment of himself as "Plan

20  Administrator" is clear evidence of self-dealing; (3) Mr. Kanter/Verity failed to act within the time

21  required by the Plan; and (4) Mr. Kanter/Verity failed to Fully investigate the claim, failed to credit

22  reliable evidence, ignored the relevant Plan terms, and otherwise failed to produce a justifiable

23  determination.

24        **1.    Verity Failed to Allow the Plan Administrator Identified in the Plan to Make the
               Decision, and the Decision was instead made by an Unauthorized Person (Mr.
25             Kanter), Who Was Acting With a Clear Conflict of Interest.**

26        The Administrative Record establishes that the Plan Administrator did not interpret plan

27  terms and/or make the final benefits determinations.  The Plan identifies the Plan Administrator as

28  the Vice President of Human Resources for Verity.  Up through September, 2006, that person was

**-20-**

1   Jack Landers.  Mr. Sluimer's claim was never considered by Mr. Landers.  Rather, it went straight

2   to Mr. Kanter.  That Mr. Kanter subsequently got rid of Mr. Landers and purportedly appointed

3   himself Plan Administrator does not change the fact that the administrator identified in the Plan had

4   nothing to do with the claims analysis or decision here.

5       When an unauthorized person, who does not have fiduciary discretion to determine benefits

6   eligibility, renders a benefits decision, review is *de novo*.  *Shane*, 504 F.3d at1170.

7       Thus, the benefit determination is not entitled to any deference because the Plan

8   Administrator to whom the Plan granted discretion did not make the decision.  Mr. Kanter, made the

9   decision on the claim and he was not the Plan Administrator.  He did not even claim to be the Plan

10  Administrator when he first denied the claim, but only in his belated denial Mr. Sluimer's appeal.

11  Mr. Kanter was never properly vested with the requisite discretionary authority and the claim should

12  be reviewed *de novo*.

13      **2.    Mr. Kanter's Purported Appointment of Himself as "Plan Administrator" Is**
14      **Clear Evidence of Self-dealing**.

15      Mr. Kanter's belated appointment of himself as the "Plan Administrator" goes beyond a

16  conflict of interest, and demonstrates clear self-dealing.

17      Evidence of self-dealing necessitates a de novo review.  *Abatie*, 458 F.3d at 968.

18      The proper Plan Administrator, Mr. Landers, was not terminated until September 2006.

19  Nevertheless, even before Mr. Landers left the company, he was not involved in the claims decision

20  (there was no claims investigation).  Rather, Mr. Kanter took it upon himself to make the claims

21  decision, and that was after trying to persuade Mr. Sluimer to take some inferior offer and being

22  rebuffed.  It was also after losing in the Dutch Lawsuit, where the court found the position Kanter

23  ultimately offered Mr. Sluimer "cannot be considered a suitable alternative job."

24      Mr. Kanter's actions in this matter demonstrate clear self-dealing, and can be afforded no

25  deference at all.  To do anything else is to invite wholesale self-dealing.

26      **3.    Mr. Kanter/Verity Failed to Act Within the Time Required by the Plan**

27      Courts review *de novo* a claim for benefits when an administrator fails to exercise discretion.

28  *See Jebian,* 349 F.3d at 1106 (holding that an administrator failed to exercise its discretion when it

1  did not make a benefits decision within the 60 days specified by the terms of the plan and the

2  applicable regulation, so that the ultimate decision rendered was undeserving of deference).

3       Here, even if the true Plan Administrator (Mr. Landers) had made a decision on this claim

4  (which he did not),  the benefits decision was still not made within the 60 days required  by the terms

5  of the Plan and the applicable regulation.  The appeal was made by registered mail and email on July

6  13, 2006.  A response was required by September 11, 2006.

7       Mr. Kanter's September 29, 2006 letter, purporting to respond to the appeal, claimed for the

8  first time that "Jack Landers, the previous Vice President, Human Resources of Verity Inc., has

9  recently left the company, and as such I have assumed his duties as the Plan Administrator." *Sluimer*

10  *Dec.* Ex. A,  HS-0065.  Mr. Kanter acknowledged that the decision on appeal was issued within 60

11  days of the purported "receipt" of the request by him, not 60 days from notice of the appeal.  Further,

12  Mr. Kanter claimed that receipt of the appeal did not occur until August 1, 2006, despite the fact that

13  it was emailed and sent by registered mail on July 13, 2008. *Sluimer Dec.* Ex. A,  HS-0062-62.

14       The Plan specifically provides that "any notice, demand or request required or permitted to

15  be given by either the Company or the Participant pursuant to the terms of the Plan shall be in

16  writing and shall be deemed given when delivered personally or deposited in the U.S. Mail, First

17  Class with postage prepaid, and addressed to the parties, in the case of the Company, at the address

18  set forth in Section 11(a) . . ." *Sluimer Dec.* Ex. A, HS-0013.  Thus, Mr. Kanter's claim that the Plan

19  had 60 days from his purported August 1, 2006 receipt of the request at an address not designated

20  in the Plan by a person not designated in the Plan conflicts with the terms of Plan.  Furthermore, as

21  noted above, the Plan Administrator did not make the decision on appeal.  Rather, Kanter did.

22       Accordingly, the Plan Administrator failed to exercise its discretion when it did not make a

23  benefits decision within the 60 days specified by the terms of the plan, so that the ultimate decision

24  rendered was "undeserving of deference."  *Jebian,* 349 F.3d at 1106.

25      **4.**    **Mr. Kanter/Verity Failed to Fully Investigate the Claim, Failed to Credit
   Reliable Evidence, Ignored the Relevant Plan Terms, and Otherwise Failed to**

26              **Produce a Justifiable Determination.**

27       Additionally, this matter should be reviewed *de novo* because of the wholesale and flagrant

28  violations of the procedural requirements of ERISA during the claim.

**-22-**

1    The Ninth Circuit has explained that deference must not be given where the person rendering

2    the decision has engaged in wholesale or flagrant violations:

3        When an administrator engages in wholesale and flagrant violations of the procedural
    requirements of ERISA, and thus acts in utter disregard of the underlying purpose of

4        the plan as well, we review *de novo* the administrator's decision to deny benefits. .
    . . Because an administrator cannot contract around the procedural requirements of

5        ERISA, decisions taken in wholesale violation of ERISA procedures do not fall
    within an administrator's discretionary authority.

6

7    *Abatie* 458 F.3d at  972.; see also *Jebian,* 349 F.3d at 1106;  *Gilbertson v. Allied Signal, Inc.,* 328

8    F.3d 625, 632 (10th Cir. 2003).

9        Here, the Plan Administrator identified in the Plan had nothing to do with the claims

10    decision.  Rather, Mr. Kanter made the initial claims decision with no authority whatsoever, only

11    claiming to appoint himself as Plan Administrator when he responded to the appeal.  The defendants

12    engaged in wholesale and flagrant violations of the procedural requirements of ERISA, including:

13    (1) having someone other than the Plan Administrator identified in the Plan make the decision on

14    the claim; (2)  purporting to appoint a self-interested Plan Administrator to administer the appeal (if

15    such an appointment was in fact made); (3) failing to investigate Mr. Sluimer's claim; (4)  failing

16    to obtain evidence to support the decision to deny; (5) failing to provide the requested Plan

17    documents and information to allow Mr. Sluimer to make his case; and (6) failing to accord any

18    deference to the Dutch court's decision, which had collateral estoppel effect.

19    **5.    Alternatively, Deference Must Be Greatly Diminished**

20        There is a clear and unmistakable conflict of interest present here, as the Plan is self-funded

21    from the general assets of the Company (Verity) and the Company serves as the Plan Administrator

22    and Fiduciary. *Sluimer Dec.* Ex A, HS-0010 & 12. After a Change in Control, the Plan explains that

23    it is binding upon the entity that is then in control. *Id.*, at  HS-0014.  Thus, there is an unquestionable

24    conflict of interest because the benefits are paid from the acquiring entity's assets and no separate

25    assets fund the Plan.

26        Where, as here, the ERISA benefit plan gives discretion to an administrator or fiduciary who

27    is operating under a conflict of interest, that conflict must be weighed as a factor in determining

28    whether there is an abuse of discretion.  *Abatie* 458 F.3d at 955.  A court should weigh a conflict

1  more heavily if, for example, the administrator provides inconsistent reasons for denial (*Lang,* 125

2  F.3d at 799); fails adequately to investigate a claim or ask the plaintiff for necessary evidence

3  (*Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1463-64 (9th Cir.1997)); fails to credit a

4  claimant's reliable evidence (*Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003));

5  or by making decisions against the weight of evidence in the record. *Id.*

6       Here, the Court should weigh the conflict extremely heavily because there is a unity of

7  interest between Verity/Mr. Kanter's denial and their own financial well-being, and the Plan

8  Administrator did not investigate or, at the very least, failed to adequately to investigate the claim

9  and/or ask the plaintiff for necessary evidence. One of the reasons, Verity/Mr. Kanter gave for

10 denying the claim was  Mr. Sluimer's purported failure to execute a Release, Confidentiality

11 Agreement and/or a Non-Compete Agreement.  Not only did Verity fail to ask Mr. Sluimer for this

12 evidence, it failed to provide him with  any such document to execute.  The ground for denial is thus

13 wholly specious, and simply highlights the self-dealing present here.

14      Additionally, Verity's July 6, 2006 denial of the claim stated for the first time that it was

15 based upon Mr. Sluimer's purported failure to provide timely written notice of "Constructive

16 Termination" and that the Plan's 90 day window to provide timely written notice of "Constructive

17 Termination" had expired.  Clearly, Mr. Sluimer's petition to the Dutch Court, and the Dutch Court's

18 subsequent decision, after a contested hearing, that Mr. Sluimer was constructively terminated, gave

19 notice that Mr. Sluimer was claiming constructive termination.

20      In fact, Verity/Mr. Kanter had told Mr. Sluimer he was being terminated, and had informed

21 all his clients that he had been terminated, and had taken away his email access and other

22 accouterments.  Additionally, Verity's May 3, 2006 denial letter, which was within the 90 day

23 period, made no mention of a written notice of "Constructive Termination" requirement.  Not only

24 did Verity fail to ask the plaintiff for necessary evidence, it intentionally withheld necessary

25 information and points it deemed to be requirements to perfect a claim in an attempt to sandbag Mr.

26 Sluimer's claim.  Furthermore, Verity failed to credit the reliable evidence from the Dutch Court and

27 made decisions against the weight of evidence that was or should have been in the record. These

28 facts establish that the Court should weigh the conflict of interest more heavily, if the Court declines

**POINTS AND AUTHORITIES IN SUPPORT OF
PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1  to review the matter *de novo*.

2  **B.    SCOPE OF REVIEW**

3      The self-styled Plan Administrator has not provided a complete Administrative Record, but

4  has withheld essential documents and evidence.  Therefore, on review, the Court must allow Mr.

5  Sluimer to supplement the "record" with documents and information provided and otherwise

6  available to the self-styled Plan Administrator, but not showing up on the record produced.

7      When an ERISA matter is reviewed for an abuse of discretion, the Court's review is generally

8  limited to the Administrative Record reviewed by the Plan Administrator during the claim. *Kearney*,

9  175 F.3d at 1094-1095.  Nevertheless, the Court may admit additional evidence on de novo review,

10  or whenever procedural irregularities have prevented full development of the administrative record.

11  *Abatie* 458 F.3d at 970.

12      Clearly, here, the administrative record has not been fully developed.  In fact it has been

13  deliberately abbreviated.  As described above, this matter should be reviewed de novo, but

14  irrespective of the standard of review, the Court may and should admit the additional evidence

15  necessary to complete the record and conduct an adequate review.

16      **1.    Defendants Only Produce a Small, Self-Serving Portion of the Record**

17      Here, before and after May 1, 2006, plaintiff requested copies of Plan documents, the

18  Administrative Record and information needed to adjust his claim.  Those request were made so that

19  Mr. Sluimer could attempt to have a meaningful dialogue with the Plan Administrator regarding his

20  claim.  The Plan Administrator ignored these requests until November 12, 2007, when the Plan

21  provided an extremely limited and one sided/biased Administrative Record, which ensured that there

22  would be no meaningful dialogue.

23      Despite requests for the complete Administrative Record, the purported Administrative

24  Record that was produced only included the Plan itself, and the correspondence addressed to Mr.

25  Sluimer of 6 July 2006, 3 August 2006, 28 September 2006 and 22 March 2007."  The partial

26  Administrative Record **did not include:** (1) any correspondence Mr. Sluimer and his counsel sent

27  to the Plan Administrator and/or the defendants, despite the fact that the outgoing correspondence

28  from Mr. Kanter to Mr. Sluimer, which was in the record, cited and responded to some of plaintiff's

1   correspondence; (2) the Dutch Court's Order; (3) any of the testimony, transcripts or evidence

2   presented to the Dutch court; (4) any job descriptions; or (5) any evidence at all which would support

3   the claims decision. The purported Administrative Record, as provided by Mr. Kanter, includes only

4   Mr. Kanter's own letters to Mr. Sluimer and a copy of the Plan. The Court cannot believe this is the

5   entire administrative record. Nor is it: Mr. Kanter merely claims that everything else is somehow

6   privileged. HS-0095. Apparently, Mr. Kanter and Autonomy/Verity believe that anything that might

7   be incriminating is privileged.

8       This procedural irregularity prevented full development of the administrative record and

9   mandates that the Court consider evidence outside of the obviously, admittedly incomplete

10  Administrative Record produced by the defendants.

11      **2.    Mr. Sluimer Has a Right to Have the Entire Record Considered by the Court.**

12      To ensure that the Court reviews all evidence that was before the Plan Administrator at the

13  time the decision was made, the Court must review documents not included in the incomplete

14  Administrative Record provided by the defendants in bad faith. This evidence includes: (1)

15  plaintiff's correspondence to the defendants; (2) the documents submitted by the parties in the Dutch

16  Court action; (3) the Dutch Court's Order;  and (4) other documents in Verity's possession and

17  control. These documents are necessary to conduct an adequate review because these documents

18  were reviewed by Verity during the claim but pulled by Verity from the Administrative Record so

19  as to deny both Mr. Sluimer and the Court the ability to consider them. The defendants even admit

20  they did not provide the entire record, claiming the rest of it was privileged, or otherwise "outside

21  ERISA's boundary." HS-0095. The defendants' argument is spurious and in bad faith. Mr. Sluimer

22  seeks statutory penalties for this flagrant abuse of the ERISA process, as stated in Section H below.

23      The Court must look at the evidence that was before the plan administrator at the time of the

24  determination on the claim. *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d

25  938, 943 (9th Cir. 1995). Even where review is for abuse of discretion, a District Court may

26  consider evidence outside the Administrative Record to decide the nature, extent, and effect on the

27  decision-making process of any conflict of interest. *Abatie*, 458 F.3d 955 (9th Cir. 2006).

28      As described below, the Plan Administrator must be able to establish that its decision was

**-26-**

1    supported by substantial evidence in its Administrative Record.  The defendants have not even

2    supplied the entire Administrative Record, and for that reason alone, plaintiff should prevail on this

3    motion.  Assuming that the Court does not grant summary judgment based on that argument alone

4    (which it should), the Court must review all documents presented by Mr. Sluimer that were before

5    (or available to) the defendants at the time the made the claims decision, irrespective of whether or

6    not defendants believe those documents to be protected by some amorphous privilege or otherwise

7    "outside ERISA's boundaries." [4]

8
         ###    3.    Claimants Are Allowed to Augment the Record Where it is Incomplete, But the
9         Defendants Must Rely Solely On the Record They Provided.

10       In *Friedrich v. Intel Corp.*, 181 F.3d 1105 (9th Cir. 1999), the Ninth Circuit held that the

11   District Court did not abuse its discretion when it admitted additional evidence offered by an ERISA

12   plan participant but refused to admit additional evidence offered by the ERISA plan administrator.

13   The Ninth Circuit affirmed the decision as follows:

14       Friedrich's additional evidence did not raise any new theories not presented to Intel
         during the claims process. With the addition of Friedrich's trial evidence to Intel's
15       evidence already in the administrative record, the district court had a complete record
         that allowed the court to make an adequate, independent *de novo* review of the
16       benefits decision. Thus, the district court did not abuse its discretion when it allowed
         Friedrich to introduce additional evidence and refused Intel's request to do the same.

17   *Friedrich*, 181 F.3d at 1111.

18       The evidence and testimony presented in the Dutch Court, Mr. Kanter's appearance in the

19   Dutch proceeding, the Dutch Court's order,  and correspondence between Mr. Sluimer and Mr.

20   Kanter all are evidence that was before the defendants when they made the claims decision.  Thus,

21   this Court should review those documents, which demonstrate the claim should have been approved.

22       ###    4.    Claimant Is Allowed To Augment The Record to Show Conflict of Interest.

23       The evidence and testimony presented in the Dutch Court, Mr. Kanter's appearance in the

24   Dutch proceeding, the Dutch Court's order,  and correspondence between Mr. Sluimer and Mr.

25   Kanter all are evidence that a conflict of interest effected the decision making process, and are

26

27       [4]Case law also makes clear that the plan administrator has the obligation to identify the evidence in
     the administrative record and that the claimant may then contest whether that record is complete. *See e.g.*
28   *Vega v. Natl .Life Ins. Svcs., Inc.* 188 F.3d 287, 299 (5th Cir. 1999)

-27-

1    admissible for that reason as well.

2    **C.    UNDER ANY STANDARD OF REVIEW, MR. SLUIMER'S CLAIM SHOULD BE**
3    **APPROVED.**

4         The Plan provides that after a Change in Control "in the event of a Covered Termination, the

5    Company will provide the severance benefits."   Covered Termination means and Involuntary

6    Termination Without Cause or a Constructive Termination.

7         An Involuntary Termination Without Cause is an involuntary termination of employment by

8    the Company.  A Constructive Termination[5] includes the voluntary termination of employment by

9    a Participant after "a substantial reduction in the Participant's duties or responsibilities (and not

10   simply a change in title or reporting relationships) in effect immediately prior to the effective date

11   of the Change in Control; *provided, however*, that it shall not be a "Constructive Termination" if,

12   following the effective date in the Change of Control, either (a) the Company is retained as a

13   separate legal entity or business unit and the participant holds the same position in such legal entity

14   or business unit as the Participant held before such effective date, or (b) the Participant holds a

15   position with duties and responsibilities comparable (though not necessarily identical, in view of the

16   relative sizes of the Company and the entity involved in the Change in Control) to the duties and

17   responsibilities of the Participant prior to the effective date of the Change in Control."

18        On June 7, 2006, the Dutch Court confirmed that Mr. Sluimer's employment with the

19   company had been terminated, and that no suitable alternate position had been offered.  In making

20   those findings, the Dutch Court rejected Verity's arguments that it had offered Mr. Sluimer a

21   comparable alternative position or, alternatively, that they were not liable because they offered Mr.

22   Sluimer immediate reemployment, even if the position was not comparable. *Reilly Dec.* Ex. D, HS-

23

24        [5]A "Constructive Termination" also includes (iv) a material breach by the Company of any
     provisions of the Plan or any enforceable written agreement between the Company and the Participant; or
25   (v) any failure by the Company to obtain assumption of the Plan by any successor or assign of the Company.
     As described in this motion Mr. Kanter materially breached numerous provisions of the Plan, including, but
26   not limited to, the provisions regarding who was designated as the Plan Administrator and who had authority
     to administer the Plan.  *See* Section 2 Definitions (l) "Plan Administrator."  Further, Mr. Kanter's actions
27   also strongly evidence the Company failed to assume its obligations under the Plan after the Change in
     Control.  These are separate and independent reasons why Mr. Sluimer was constructively terminated and
28   is entitled to Plan benefits.

**-28-**

1    380 ¶¶ 28-47 and Ex. H HS-0411 ¶ 3. The Dutch Court rejected those arguments, and held that no

2    suitable position had been offered, or would become available. *Id.* at ¶ 5.

3         Mr. Sluimer had been a Senior Vice President, supervising 100 employees, including 10

4    country managers, and overseeing operations generating approximately $50,000,000 in annual

5    revenue.  He had responsibility for all of Verity's worldwide operations outside of the Americas,

6    including sales, marketing, finance, administration, technical operations, and oversight of

7    consultants, and was one of Verity's senior executives. *Pijl Dec.*, Exs. A, B; *Sluimer Dec.* ¶¶ 2, 8.

8    The position the defendants belatedly offered entailed was essentially that of a mid-level salesman,

9    with alleged supervision of 5 people, and sales focused in a $5,000,000 niche market.

10        Thus, as the Dutch Court held, Mr. Sluimer's termination was a Covered Termination under

11   the Plan, and the sales job defendants belatedly offered him was not a suitable alternative. *Reilly*

12   *Dec.* Ex. H HS-0411 ¶ 6.

13        Mr. Sluimer is entitled to benefits under the Plan.  Mr. Sluimer was never offered his job

14   back, let alone "immediate reemployment."  He was instead offered a mid-level sales job months

15   after being told he was being terminated, and after losing his email and other company services.  Mr.

16   Sluimer provided the Company with written notice that he believed that he suffered a substantial

17   reduction in duties and responsibilities[6], the Constructive Termination Notice was given within three

18   (3) months of the date the event occurred, and the Company did not rescind or cure the conduct

19   giving rise to the event within fifteen (15) days of receipt by the Company of the Constructive

20   Termination Notice, or ever.  The Plan's decision that there was not "a substantial reduction in [Mr.

21

22        [6]Verity's May 23, 2006 Petition to the Dutch Court, *Reilly Dec.* Ex. D, ¶¶ 28-47 and Ex. H HS-0411
23   ¶ 3 confirmed that they had written notice that the Mr. Sluimer believed that he suffered a substantial
     reduction in duties and responsibilities and had been constructively terminated as early as January 5, 2006
24   when he emailed Mr. Kanter to confirm that "no comparable position would be available for him." ¶ 49.
     Eight days after being offered the new position on March 23, 2006, Mr. Sluimer wrote to Mr. Kanter and
25   stated that "he was not satisfied with the conversation" that he had about the new position.  ¶ 33.  On April
     3, 2006 again wrote to Mr. Kanter "the offered position does not seem appropriate at all" and Mr. Kanter
26   responded on April 4, 2006 "you complain that the position is not appropriate."  ¶¶ 36 & 37. At Paragraph
     44 it states "Sluimer was of the opinion that the offered position was not comparable with his previous job.
27   Further, Verity stated that it "did offer an alternative position to Sluimer, he did not give this job a chance
     and immediately refused it." ¶ 5.  Verity's Reply Brief confirmed that Mr. Sluimer informed it that the
28   "offered [job] was not suitable" in March 2006. *Reilly Dec.* Ex. F ¶ 7.

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

1  Sluimer's] duties or responsibilities" and that Mr. Sluimer was not entitled to benefits was not

2  reasonable. Therefore, even under an abuse of discretion standard, the decision by the ERISA

3  administrator should be overturned. *Firestone Tire,* 489 U.S. at 111; *Zavora v. Paul Revere Life Ins.*

4  *Co.,* 145 F.3d 1118, 1123 (9th Cir.1998). And certainly, under de novo review, Mr. Sluimer is

5  entitled to summary judgment.

6  **D.    THE CLAIMS DECISION IS NOT SUPPORTED BY ANY EVIDENCE AND WAS**

7  **A CLEAR ABUSE OF DISCRETION.**

8       To the extent, if any, that the Court finds Mr. Kanter was acting as a legitimate Plan

9  Administrator, the claims decision was still a clear abuse of discretion. The self-serving, partial

10  Administrative Record provided by the defendants does not contain any evidence at all to support

11  the claims decision. It contains only the Plan itself and the decision letters. Additionally, the claims

12  decision relies on clearly erroneous findings of act, fails to explain how the conclusion was reached,

13  and cannot be squared with the clear terms of the Plan

14       An ERISA claims decision is an abuse of discretion and must be overturned when it is not

15  supported by substantial evidence. *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 536 (9th

16  Cir.1990); *McKenzie,* 41 F.3d at 1316-18. Substantial evidence "is such relevant evidence as a

17  reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d

18  1035, 1039 (9th Cir.1995). An ERISA plan administrator also abuses its discretion when it denies

19  claims without explanation, construes plan provisions in a way that conflicts with the plain language

20  of the plan, that is erroneous as a matter of law, or relies on clearly erroneous findings of fact.

21  *Bendixen v. Standard Ins.*, 185 F.3d 939, 944 (9th Cir. 1999); *Saffle v. Sierra Pacific Power Co.*

22  *Bargaining Unit LTD Income Plan,* 85 F.3d 455, 460 (9th Cir.1996); *Atwood v. Newmont Gold Co.,*

23  45 F.3d 1317, 1323-24 (9th Cir.1995); 29 C.F.R. § 2560.503-1(h)(2).

24       There is absolutely no evidence in the self-serving "Administrative Record" to support the

25  decision to deny Mr. Sluimer's claim. And defendants cannot now seek to bolster their denial with

26  purportedly new evidence; rather, they are estopped from relying on evidence outside of their self-

27  serving "Administrative Record" to support the decision to deny Mr. Sluimer's claim. *Friedrich*,

28  181 F.3d at 1111.

**-30-**

1    The record does not support the claims decision.  When the entire record is considered

2    (including the findings of the Dutch Court) it is clear that the decision was not only unsupported, but

3    contrary to all evidence that Mr. Sluimer had provided (none of which was in the record). The

4    decision to deny benefits was made solely on unsupported conclusions by Mr. Kanter. Worse yet,

5    Mr. Kanter had made the same unsupported arguments to the Dutch Court and the Dutch Court

6    rejected those arguments.   Mr. Sluimer is entitled to summary judgment.

7

8    **E.    THE DUTCH COURT'S DECISION SHOULD BE GIVEN COLLATERAL ESTOPPEL EFFECT ON THE APPROPRIATENESS OF THE ALTERNATE JOB**

9    The issue of whether or not Mr. Sluimer had been constructively terminated, and

10    whether or not the sales job the defendants offered to Mr. Sluimer was a suitable alternative job were

11    decided by the Dutch court after a contested hearing where both Mr. Sluimer and the defendants

12    produced evidence and provided testimony.  The Dutch Court held:

13    Based on what was adduced from both sides, the cantonal judge is of the opinion
      that, seeing the kind and the importance of the job offered at Neurodynamics, as well

14    as the number of employees at Neurodynamics, Sluimer made it sufficiently
      convincing that from the point of view of the labor law, the job cannot be considered

15    a suitable alternative job. The fact that the job would not change Sluimer's labor
      conditions and that within that job there are/were possibilities for career, do not

16    influence the aforementioned.

17    *Reilly Dec.* Ex. H at ¶ 5. Based on issues of comity, this decision is entitled to collateral estoppel

18    effect on the issues decided.

19    A valid judgment rendered in a foreign nation after a fair trial in a contested
      proceeding will be recognized in the United States so far as the immediate parties and

20    the underlying cause of action are concerned.

21    Restatement (Second) of Conflicts of Laws, § 98 (1971); *see Commercial Ins. Co. of Newark, N. J.,*

22    558 F.2d at 952 (citing same); *British Midland*, 497 F.2d at 871.

23    The Dutch court determined Mr. Sluimer had been constructively terminated, and that he had

24    not been offered a suitable alternate position. As established in the Administrative Record, the Plan

25    Administrator never explained why, how or what facts it relied on in concluding that there was not

26    "a substantial reduction in [Mr. Sluimer's] duties or responsibilities," let alone why the Dutch

27    Court's findings could be ignored.

28    The Dutch Court's finding that the job offered did not have the same duties and

-31-

responsibilities as Mr. Sluimer's prior position is binding on Verity.  Mr. Kanter stated in his

September 26, 2006 letter that the decision of the Dutch Court was "considered in reaching this

decision." (and the court's decision should thus have been in the record).  Mr. Kanter's unexplained

claim that the Dutch Court's decision was "neither binding on the Company for the purpose of the

Plan nor persuasive in reaching this decision" is  completely spurious.

Here, the same parties litigated in a contested hearing before the Dutch Court several

conclusive issues, including: whether the purported new job that was offered to Mr. Sluimer

amounted to a substantial reduction in his duties or responsibilities prior to the change in control (it

did); whether Mr. Sluimer was offered immediate reemployment (he was not); and whether Verity

could avoid liability because Mr. Sluimer had not executed releases and/or non-compete agreements

(they could not).  The Dutch Court rejected all defendants' arguments and found that the position

offered was not an alternative suitable position and that no suitable position would become available.

*Reilly Dec.* Ex. D at ¶ 5

Thus, the Dutch Court's decision precludes relitigation of those issues here, as they have

already been decided.  The claims decision was made without evidence and in bad faith.  The issue

had already been decided.  The defendants are collaterally estopped from claiming Mr. Sluimer was

not constructively terminated, and Mr. Sluimer is entitled to summary judgment.

**F.    THE CLAIMS DECISION WAS SELF-SERVING AND MADE IN BAD FAITH, AND MR. KANTER SHOULD BE REMOVED AS PLAN ADMINISTRATOR.**

Autonomy acquired Verity and immediately tried to reduce its costs.  Autonomy's Chief

Operating Officer, Andrew Kanter's, post-merger job was to "remove unnecessary costs that are a

direct result of duplication caused by the merger and therefore maintain competitiveness." *Sluimer*

*Dec.* Ex. A HS-0020.  Methods of reducing costs included terminating employees deemed redundant,

another was to not pay benefits due under the Plan.

On December 29, 2005, Autonomy sent a letter to Mr. Sluimer, entitled  "Warning of

Possible Redundancy - Acquisition of Verity, Inc. by Autonomy Corporation PLC". *Sluimer Dec.*

Ex. A HS-0017.  On January 5, 2006, Mr. Kanter informed Mr. Sluimer that his position was

redundant and that it was likely that there was no similar position at Autonomy which would be

**POINTS AND AUTHORITIES IN SUPPORT OF**
**PL'S MOTION FOR SUMMARY JUDGMENT**                    CASE NO.  C 07-2381 SI

available to Mr. Sluimer. *Id.*, at HS-0018-19. A few hours later, Mr. Sluimer's company e-mail was shut off without notice to him, and all of his e-mails were re-directed to Autonomy's Chief Financial Officer. *Id.* During January 2006, **Autonomy informed Mr. Sluimer's co-workers and clients that he would no longer be working with the company**. *Id*., at HS-0025. Clearly, Mr. Sluimer had been deemed to be a redundant employee. However, Mr. Sluimer also knew of his rights under Dutch Law and the Plan, and immediately asserted those rights. Mr. Kanter was then faced with a problem. In an effort to reduce costs, he needed to terminate a redundant employee, but he also needed to avoid liability under the Plan.

In a bad faith effort to avoid payment to Plaintiff of severance and other Plan benefits, Kanter informed Mr. Sluimer that Autonomy had found him an "alternative opportunity" in a division of Autonomy, which, as noted above, was essentially a mid-level sales job.

Shortly thereafter, Mr. Kanter, who was the defendant's representative in the Dutch Court proceedings and not the Plan Administrator, made a decision to deny Mr. Sluimer's claim for Plan benefits. Kanter signed the claims decision as "Company Secretary" and did not even pretend to be acting as Plan Administrator at that time. Mr. Kanter ignored the findings of the Dutch Court and claimed, without explanation, that those findings were "neither binding on the Company for the purpose of the Plan nor persuasive in reaching this decision." When Mr. Sluimer appealed, Mr. Kanter then appointed himself Plan Administrator and denied the appeal.

Mr. Kanter's actions have been in clear bad faith, and a deliberate breach of the fiduciary duty owed to Mr. Sluimer. Mr. Sluimer requests that Court remove Mr. Kanter as Plan Administrator, and confirm that Mr. Kanter and Verity acted in bad faith.

## G.   MR. SLUIMER IS ENTITLED TO PLAN BENEFITS

On July 23, 2006, Verity wrongfully cancelled all of Mr. Sluimer's outstanding non-vested options to purchase because of the improper denial of his claim for benefits. Mr. Sluimer's cancelled options to purchase vested should be vested purchase options as follows:

> 1) Under Grant 8513, 22,819 options to purchase at an exercise price of $5.13
> 2) Under Grant 6885, 40,568 options to purchase at an exercise price of $7.25.
> 3) Under Grant 8061, 54,766 options to purchase at an exercise price of $5.63.

*Sluimer Dec.* Ex. A HS-0083.

---

POINTS AND AUTHORITIES IN SUPPORT OF
PL'S MOTION FOR SUMMARY JUDGMENT                    CASE NO.  C 07-2381 SI

1   Pursuant to the Plan, Mr. Sluimer was also entitled to a 12 month period of "Extended

2   Exercisability" of those options. The "Extended Exercisability" period should be measured from the

3   date the vested purchase options are provided to Mr. Sluimer.

4   Additionally, the Plan and Participation Notice provided that Mr. Sluimer was entitled to 18

5   months of Continued Medical Benefits. Mr. Sluimer paid €3,873.30 to continue his medical benefits

6   for the 18 months after his employment with Verity was terminated in June 2006. *Sluimer Dec.* ¶

7   6, Ex. A HS-0084-85.  The defendants should be order to reimburse Mr. Sluimer  €3,873.30 for his

8   Continued Medical Benefits.

9   **H.    STATUTORY DAMAGES ARE WARRANTED**

10   Before and after May 1, 2006, plaintiff and/or his counsel requested copies of Plan

11   documents, including the entire Administrative Record and other information needed to adjust his

12   claim. *Sluimer Dec.* Ex. A HS-0057, 0069; *Reilly Dec.* Ex. A HS-0086.  ERISA requires a plan

13   administrator to timely furnish documents when requested by a participant.  29 U.S.C. § 1022(a);

14   29 U.S.C. § 1024(b)(4). Defendants failed to provide the entire Administrative Record and requested

15   documents within 30 days, and, to this day, have never provided them, even failing to identify or

16   pruduce any documents with their FRCP Rule 26 Initial Disclosure.

17   ERISA provides for a monetary penalty of up to $100 a day from the date of such failure or

18   refusal 29 U.S.C. § 1132(c)(1). Mr. Sluimer hereby respectfully requests a statutory penalty of $100

19   per day from May 31, 2006 to the July 18, 2008 date of this hearing (778 days or $77,800.00).

20   **V.  CONCLUSION**

21   Based upon the foregoing, Mr. Sluimer respectfully requests that the Court grant his motion

22   for summary judgment provide him with accelerated stock option vesting, extended time period in

23   which to exercise stock options and continued medical benefits under the Plan, removal of the

24   fiduciary, statutory penalties, interest and attorneys' fees.

25   Respectfully submitted,

26   RIMAC & MARTIN, P.C.

27   DATED:  June 13, 2008            By:     /s/ **WILLIAM REILLY**
                                               WILLIAM REILLY
28                                             Attorneys for Plaintiff HUGO SLUIMER

**-34-**