1   RIMAC & MARTIN
    A Professional Corporation
2   JOSEPH M. RIMAC – CSBN 72381
    WILLIAM REILLY – CSBN 177550
3   1051 Divisadero Street
    San Francisco, CA 94115
4   Telephone: (415) 561-8440
    Facsimile:   (415) 561-8430
5
6   MCGUINN, HILLSMAN & PALEFSKY
    CLIFF PALEFSKY (State Bar No. 77683)
7   KEITH EHRMAN (State Bar No. 106985)
    535 Pacific Ave.
8   San Francisco, CA 94133
    Telephone: (415) 421-9292
9   Facsimile: (415) 403-0202

10  Attorneys for Plaintiff
    HUGO SLUIMER

11

12                      IN THE UNITED STATES DISTRICT COURT

13                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15
                                                        *E-FILING*
16

17  HUGO SLUIMER,                          )
                                           )   **CASE NO.  C 081220 SI**
18                      Plaintiff,         )
                                           )   *AMENDED* **DECLARATION**
19  v.                                     )   **OF HUGO SLUIMER**
                                           )
20  VERITY, INC., a corporation, and THE   )
    VERITY INC. CHANGE IN CONTROL AND      )
21  SEVERANCE BENEFIT PLAN,                )
                                           )
22                      Defendants.        )
                                           )
23  _____)

24  I, Hugo Sluimer, hereby declare as follows:

25          1.      I am the plaintiff in the captioned action.  I have personal knowledge of the facts

26  set forth herein and can testify competently thereto if requested to do so.

27          2.      On and before December 29, 2005, I was employed as Verity's Senior Vice

28  President for EMEA and APAC Operations, I had responsibility for over 100 reports, including

_____

**DECLARATION OF HUGO SLUIMER**                              CASE NO.  C 07-2381 SI

1   10 country managers.  I was responsible for overseeing operations generating approximately

2   $50,000,000 in revenue (roughly half of VERITY's total worldwide revenue).  I reported directly

3   to VERITY's President/CEO. I had responsibility for all aspects of VERITY operations outside

4   of the Americas, including responsibility for sales, marketing, finance, administration, technical

5   operations, and oversight of consultants.

6       3.      Attached hereto as Exhibit A is true and correct copy of the VERITY INC.

7   CHANGE IN CONTROL AND SEVERANCE BENEFIT PLAN (the "Plan") and my

8   Participation Notice that I received on or after April 6, 2005.  I have reviewed Mr. Kanter's

9   Declaration in support of the defendants' motion to dismiss.  Plan Pages numbered 18-23, which

10  included Exhibit B RELEASE AGREEMENT, Exhibit C RELEASE AGREEMENT and Exhibit

11  D RELEASE AGREEMENT, attached to the Kanter Declaration were not provided to me when

12  the Plan was issued or during my claim.

13      4.      Attached hereto as Exhibit B are true and correct copies of all of the

14  correspondence and emails between me and the defendants regarding my employment and

15  benefits from December 29, 2005 through March 22, 2007 that I possess.

16      5.      Attached hereto as Exhibit C are true and correct copies of my Stock Option

17  Agreement, Notices of Grant of Stock Options and Closing Statement.

18      6.      Attached hereto as Exhibit D are true and correct copies of premiums that I paid

19  for my continued medical benefits for the 18 months after my employment with Verity was

20  terminated in June 2006.  The total cost for the 18 months of continued medical benefits was

21  €3,873.30.

22      7.      In January 2006, Andrew Kanter instructed me to cease performing work at

23  Verity. During this period, I continued to receive a pay check.  However, I was paid significantly

24  less than the monthly pay that I received over the past three years.  From 2003-2005, my average

25  monthly pay was € 45,076 .  Had I received my average monthly pay during these three months

26  in 2006, I would have received additional pay of € 8,842 for the month of January 2006, € 18,043

27  for the month of February 2006 and €15,900 for the month of March 2006.  In 2006, I was

28  informed that my monthly pay was based on commissions which were based upon the then

**DECLARATION OF HUGO SLUIMER**          2          CASE NO.  C 07-2381 SI

1  current sales of a product that I was no longer in charge of selling and that the product was being

2  discontinued by Autonomy.  I suffered a lapse in pay after the change in control.

3      8.      The "alternative" job offered to me by Mr. Kanter with Nerodynamics involved a

4  substantial reduction in my duties and responsibilities from my prior job as Verity's Senior Vice

5  President for EMEA and APAC Operations.  Neurodunamics' revenue was reported to be about

6  $5,000,000 and had 15 employees, only two of which who would have reported to me, whereas

7  before the acquisition I was responsible for revenue of approximately $50,000,000 and managed

8  a team of over 100 employees. Additionally, the offered position with Neurodynamics only

9  involved sales, whereas my prior position included responsibility for sales, marketing, finance,

10  administration, technical operations, and oversight of consultants.  Neurodunamics had a General

11  Manager in place that I was to report to, whereas at my old job the General Managers reported to

12  me and I  reported directly to the CEO.

13      9.      On approximately March 23, 2006, I received a written offer of an

14  alternative job.  I did not have a clear understanding of that job's duties and responsibilities and

15  scope. During late March and for most of April 2006, I had communications with Mr. Kanter and

16  with David Humphries, in which I attempted to get clarification about what exactly this new job

17  would involve. On April 18, 2006, I had a face to face meeting with Mr. Humphries in another

18  attempt to get clarification of what this new job would involve. On April 24, 2006, Mr. Kanter

19  finally sent me a written job description.  By the last half of April 2006, based on my

20  communications with Mr. Kanter and Mr. Humphries, it seemed clear to me that Autonomy was

21  not going to be offering me a job which was comparable to my old job with Verity.

22      10.      I was always willing to be subject to a Confidentiality Agreement and Non

23  Compete Agreement and repeatedly confirmed so in writing by way of emails and the documents

24  that I filed in the Dutch Court.  No one, including but not limited to Mr. Kanter, ever provided

25  me with a Confidentiality Agreement and/or Non Compete Agreement, other than the

26  "Proprietary Rights" Agreement that I executed when I joined Verity, Inc.  No one, including but

27  not limited to Mr. Kanter, ever informed me that my claim would be denied if I did not execute a

28  Confidentiality Agreement and/or Non Compete Agreement, nor did I ever refuse to execute such

1 an agreement. I assumed that all necessary documents would be forwarded to me by the Plan

2 Administrator and that I would execute those documents upon confirmation of the award of Plan

3 benefits. That is why on May 1, 2006, I wrote to the Plan Administrator and stated that I believed

4 I was entitled to Plan Benefits and wrote "[i]f you need more information, please do not hesitate

5 to call me." No one, including but not limited to Mr. Kanter, ever stated or suggested to me that

6 I would be paid the Plan benefits if I did execute a Confidentiality Agreement and/or Non

7 Compete Agreement.

8     11.   I was always willing to execute a waiver and release generally releasing the

9 Company from any and all claims and liabilities. I repeatedly confirmed so in writing by way of

10 emails and the documents that I filed in the Dutch Court. No one, including but not limited to

11 Mr. Kanter, ever provided me with Exhibit B RELEASE AGREEMENT, Exhibit C RELEASE

12 AGREEMENT and/or Exhibit D RELEASE AGREEMENT. No one, including but not limited

13 to Mr. Kanter, ever informed me that my claim would be denied if I did not execute a Release,

14 nor did I ever refuse to execute a Release. I assumed that all necessary documents would be

15 forwarded to me by the Plan Administrator and that I would execute those documents upon

16 confirmation of the award of Plan benefits. That is why on May 1, 2006, I wrote to the Plan

17 Administrator and stated that I believed he was entitled to Plan Benefits and wrote "[i]f you need

18 more information, please do not hesitate to call me." No one, including but not limited to Mr.

19 Kanter, ever stated or suggested to me that I would be paid the Plan benefits if I did execute a

20 Release.

21     I declare under penalty of perjury under the laws of the United States that the foregoing is

22 true and correct.

23 Executed this 12th day of June 2008, at Monaco.

Hugo Sluimer