**DOLL AMIR & ELEY LLP**
Gregory Doll (SBN 193205)
gdoll@dollamir.com
Michael M. Amir (SBN 204491)
mamir@dollamir.com
1888 Century Park East
Suite 1106
Los Angeles, California  90067
Telephone: (310) 557-9100
Facsimile:  (310) 557-9101

Attorneys for Defendants
VERITY, INC., and THE VERITY INC.
CHANGE IN CONTROL AND
SEVERANCE BENEFIT PLAN

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO SLUIMER<br><br>                       Plaintiff,<br><br>     vs.<br><br>VERITY, INC., a corporation, and THE<br>VERITY INC. CHANGE IN CONTROL AND<br>SEVERANCE BENEFIT PLAN,<br><br>              Defendants. | CASE NO.  CV 08-1220 SI<br><br>**DEFENDANTS' OPPOSITION TO: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br><br>Date:       July 18, 2008<br>Time:     9:00 a.m.<br>Ctrm:    10, 19th Floor |

1

**TABLE OF CONTENTS**

2  I.   **INTRODUCTION** ............................................................................................. 1

3  II.  **THE PLAN ADMINISTRATOR'S DECISION TO DENY MR. SLUIMER BENEFITS**

4       **UNDER THE PLAN WAS CORRECT FOR AT LEAST FOUR REASONS** .............. 2

5       A.   Mr. Sluimer's Failure to Execute a Release ................................................. 3

6       B.   Mr. Sluimer's Failure to Confirm in Writing That He Would Be Subject to Verity's

7            Non-Competition and Confidentiality Agreements ...................................... 6

8       C.   Mr. Sluimer's Failure to Provide a Timely and Sufficiently Detailed Constructive

9            Termination Notice to the Plan Administrator ............................................. 9

10      D.   Autonomy Offers Mr. Sluimer Immediate Reemployment With No Lapse in Pay .... 12

11           1.   Immediate Reemployment ................................................................. 12

12           2.   No Lapse in Pay ............................................................................... 12

13  III. **THE COLLATERAL ESTOPPEL DOCTRINE DOES NOT APPLY HERE** ........... 14

14      A.   The Judge in the Dutch Action Decided an Issue of Dutch Law and Did Not Decide

15           Any Issues Regarding the Plan ................................................................... 15

16      B.   Collateral Estoppel Is Inappropriate Because the Decision in the Dutch Action

17           Could Not Be Appealed ............................................................................ 17

18      C.   Procedural Differences Also Bar the Application of Collateral Estoppel ................. 18

19  IV.  **ABUSE OF DISCRETION IS THE APPROPRIATE STANDARD OF REVIEW** ... 19

20      A.   Mr. Kanter Was the Proper Plan Administrator ............................................ 20

21      B.   The Plan Administrator Was Not Self-Interested ......................................... 21

22      C.   The Plan Administrator Adequately Investigated Mr. Sluimer's Claim .................... 23

23      D.   The Plan Administrator Had No Duty to Apply the Collateral Estoppel Doctrine .... 23

24      E.   The Plan Administrator Provided All Proper Documentation to Mr. Sluimer .......... 23

25  V.   **CONCLUSION** ................................................................................................ 25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Abatie v. Alta Health & Life Ins. Co*, 458 F.3d 955 (9th Cir. 2006)............................................19

*Adams v. Paul*, 11 Cal.4th 583 (1995)...................................................................................13

*Bell v. Wolfish*, 441 U.S. 520 (1979) ....................................................................................13

*Bender v. Xcel Technology*, 507 F.3d 1161 (8th Cir. 2007) ...........................................................6

*Clark v. Bear Stearns & Co.,* 966 F.2d 1318 (9th Cir. 1992)................................................14, 18

*Cobb v. Pozzi,* 363 F.3d 89 (2d Cir. 2004) ...........................................................................19

*Collins v. Pension and Ins. Committee of Southern Cal. Rock Products*,

    144 F.3d 1279 (9th Cir. 1998) .......................................................................................22

*Cuddington v. Northern Industrial Pub. Serv. Co.*, 33 F.3d 813 (7th Cir. 1994)........................22

*Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974 (9th Cir. 2001)...............................24

*Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1st Cir. 1988)....................................4

*Eureka Fed. Svgs. & Ln v. Amer. Cas.,* 893 F.2d 229 (9th Cir. 1989) ......................................15

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)...21

*Gehman v. Unum Life Ins. Co. of America*, 2008 WL 666207 (N.D. Cal. 2008)................18, 19

*Harlan v. Sohio Pretroleum Co*, 677 F. Supp. 1021 (N.D. Cal. 1988)........................................5

*Harris v. Jacobs,* 621 F.2d 341 (9th Cir. 1980)........................................................................15

*Ledbetter v. Goodyear Tire & Rubber Co*., Inc., 127 S.Ct. 2162 (2007) ...................................13

*Littlejohn v. United States,* 321 F.3d 915 (9th Cir. 2003) ........................................................18

*Lockheed v. Spink*, 517 U.S. 882 (1996)..................................................................................5

*Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997).....................................................17

*Loskill v. Barnett Banks, Inc.*, 289 F.3d 734 (11th Cir. 2002).....................................................5

*Madera v. Marsh USA, Inc*., 426 F.3d 56 (1st Cir. 2005) ..........................................................5

*Mickens v. Taylor*, 535 U.S. 162 (2002)................................................................................13

*MW Erectors, Inc. v. Niederhauser Ornamental and Metal Works Co., Inc.*,

    36 Cal.4th 412 (2005)................................................................................................13

*Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*,

    2008 WL 220101 (N.D. Cal. 2008) ........................................................................................... 19

*Pennsylvania R. Co. v. Midstate Horticultural Co*., 21 Cal.2d 243 (1942) ................................. 13

*Scott v. Federal Life Ins. Co*., 200 Cal.App.2d 384 (1962) ......................................................... 13

*Snow v. Standard Ins. Co.,* 87 F.3d 327 (9th Cir. 1996) ......................................................... 18, 19

*Spitz v. Berlin Industries, Inc*., 1994 WL 194051 (N.D. Ill. 1994) ........................................ 21, 22

*Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999 (1980) .................................................. 17

*U.S. v. Mett*, 178 F.3d 1058 (9th Cir. 1999) ................................................................................. 24

*United States v. Lasky,* 600 F.2d 765 (9th Cir. 1979) ................................................................... 14

*United States v. Packwood*, 687 F.Supp. 471 (N.D. Cal. 1987) .................................................... 10

*Western Oil & Gas Ass'n v. United States EPA,* 633 F.2d 803 (9th Cir.1980) ............................ 14

**Statutes**

California Civil Code § 3521 ............................................................................................................ 9

**Other Authorities**

*Ballentine Law Dictionary* 709 (3d ed. 1948) .............................................................................. 13

*Black's Law Dictionary* at 896 (8th ed. 2004) .............................................................................. 13

**Treatises**

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,

    *Federal Practice & Procedure* § 4422 (2d ed.2002) ............................................................. 18

*Restatement 2nd of Judgments*, § 28(1) ....................................................................................... 17

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# I.

## INTRODUCTION

Two months ago, Defendants filed a motion for summary judgment, setting forth four specific grounds as to why Mr. Sluimer is not entitled to benefits under the plain language of the benefits plan that is before this Court (the "Plan"). Two weeks ago, prior to the due date for his opposition, Mr. Sluimer countered by filing the underlying summary judgment motion. His motion is devoted largely to factual narrative and argument concerning the appropriate standard of review to be applied in this action, the state of the record, and whether the collateral estoppel doctrine applies to proceedings in the Dutch court.

Today, on at least one issue, the parties are in agreement: this case is ripe for resolution on summary judgment. The parties disagree, however, on the ultimate issue of whether Mr. Sluimer is entitled to benefits under the Plan. It is important, then, to return for a moment to the actual grounds upon which the Plan Administrator denied Mr. Sluimer's claim for benefits, which receive little or no attention in Mr. Sluimer's opposition brief. Respectfully, once these four, specific grounds are examined, it is evident that under *any* standard of review (and the case law is clear that an abuse of discretion standard is applicable here), the Plan Administrator's decision to deny Mr. Sluimer benefits under the Plan was, based on the plain and unambiguous language of the Plan, *correct*.

These four grounds for the denial of benefits to Mr. Sluimer are as follows:

(1)    The Plan required Mr. Sluimer to execute a general waiver and release in order to be eligible for benefits. Mr. Sluimer failed to do so.

(2)    The Plan required Mr. Sluimer to confirm in writing that he would be subject to the Company's Non-Competition and Confidentiality Agreements. Mr. Sluimer failed to do so.

(3)    The Plan required Mr. Sluimer, if he believed that he had been constructively terminated, to timely deliver to the Company (in a specific manner and containing the details required by the Plan) a Notice of Constructive Termination. Mr. Sluimer failed to do so.

(4)    The Plan makes clear that no participant would be eligible for benefits
if he had been offered immediate reemployment by the successor
company (Autonomy) with no lapse in pay.  Mr. Sluimer is precisely
such an individual.

Indeed, an employee benefits plan is a two-way street.  The company offering the plan has obligations to the beneficiaries, but the beneficiaries also have obligations to the company. Mr. Sluimer elected not to execute a general waiver and release (perhaps so as not to foreclose the opportunity to sue the Company in the future); but the Plan makes clear that this was exactly what was required of him in order to obtain benefits.

Mr. Sluimer failed to confirm in writing that he be subject to the Company's Non-Competition and Confidentiality Agreements (perhaps so as not to preclude him from competing against the Company in the future); but, again, the Plan makes clear that this was precisely what was required of him in order to obtain benefits.

Mr. Sluimer may not have thought it important or necessary to comply with the notice and timing provisions of the Plan (perhaps because he viewed these as mere formalities or was immersed in his proceedings before the Dutch court); but the proper administration of employee benefits plans hinges on compliance with such procedures, and benefits should not be awarded to those, like Mr. Sluimer, who do not comply.

And last but not least, where a company determines that certain employees are not eligible to receive benefits under an employee benefits plan – because, as in the case of Mr. Sluimer, they have been offered "immediate reemployment" by the successor company with no "lapse in pay" – the intent of the company should be honored.  Respectfully, that is what Defendants request that the Court do here today.

II.

**THE PLAN ADMINISTRATOR'S DECISION TO DENY MR. SLUIMER BENEFITS**

**UNDER THE PLAN WAS CORRECT FOR AT LEAST FOUR REASONS**

The factual basis for the Plan Administrator's decision to deny Mr. Sluimer benefits under the Plan is set forth at pages 4-12 of Defendants' Memorandum of Points and Authorities

2

1    in Support of its motion to dismiss/summary judgment motion.  In the interest of economy, these

2    facts will not be repeated here.  The Declaration of Andrew Kanter, which is referenced herein,

3    is the same declaration filed in support of that motion.

4    **A.      Mr. Sluimer's Failure to Execute a Release**

5            As set forth in Verity's motion for summary judgment, Mr. Sluimer never signed the

6    required release under the Plan – a condition precedent for his eligibility to receive benefits.

7    This failure, alone, is a sufficient basis to deny Mr. Sluimer benefits under the Plan.  This is

8    because Section 7(a) of the Plan provides that:

9            In order to be eligible for benefits under the Plan, [Mr. Sluimer] also must
             execute a general waiver and release in substantially the form attached hereto
10           as Exhibit B, Exhibit C or Exhibit D, as appropriate, and such release must
             become effective in accordance with its terms.
11
12           It is undisputed that Mr. Sluimer never executed such a release.  There is no suggestion to

13   the contrary in Mr. Sluimer's moving papers.  Mr. Sluimer thus failed to satisfy this condition

     precedent, and he is not entitled to receive such benefits in this action.
14
15           In paragraph 11 of his declaration, Mr. Sluimer attempts to excuse his failure to satisfy

16   this condition precedent by asserting that he was "always willing to execute a waiver and release

     generally releasing the Company from any and all claims and liabilities."
17
18           The problem is, of course, he never did so.  Thus, even if he *intended* to do so at some

     future date (which is not evidenced by the record), he never actually followed through.
19
20           Mr. Sluimer disingenuously suggests that he "repeatedly confirmed [his willingness to

21   execute a general waiver and release] in writing by way of emails and the documents I filed in

     the Dutch Court."  As an initial matter, this is irrelevant (alleged emails or other documents
22
23   submitted to the Dutch court were not part of the record before the Plan Administrator and are

     not subject to judicial notice here).  Moreover, it appears to be untrue.
24
25           Mr. Sluimer tellingly fails to attach to, or specifically reference in, his declaration any of

26   the supposed emails or other documents that he purportedly submitted to the Dutch court, which

     supposedly evidence his purported willingness to execute a general waiver and release.  The
27
28   undersigned counsel has reviewed all of the English-translated documents submitted by Mr.

1    Sluimer in connection with his summary judgment motion (though it is contended that such

2    documents are irrelevant and inadmissible in this proceeding), and has been unable to find any

3    email or other document that Mr. Sluimer submitted to the Dutch court in which he expresses a

4    willingness to sign such a waiver or release.

5        Moreover, Mr. Sluimer's contention that he "repeatedly confirmed . . . in writing" to the

6    Dutch court such willingness is not logically supported, since he was not seeking to recover

7    benefits under the Plan in that action.  As Mr. Sluimer's Dutch counsel stated to the court:

8        In this [Dutch] procedure, moreover, Sluimer does not claim the application of
         the Change in Control plan, but, as already said, he claims the dissolution with
9        the allowance of a reasonable remuneration.

10   (Reilly Decl., Ex. E, HS-0402, ¶ 41)  Indeed, reference to the Plan is found nowhere in the

11   Dutch court's final decision or "Ordinance."  (*Id.*, Ex. H, HS-0410 – HS-0412)

12       Mr. Sluimer further declares that "[n]o one, including but not limited to Mr. Kanter, ever

13   informed me that my claim would be denied if I did not execute a Release."  But Mr. Sluimer

14   neglects to mention that both he and his counsel had copies of the Plan (Mr. Sluimer references

15   the Plan in his correspondence with the Plan Administrator; his Dutch counsel references the

16   Plan in their submissions to the Dutch court; and his current ERISA lawyers obviously have a

17   copy of the Plan).  The Plan, itself, at Section 7(a), sets forth the release requirement in plain and

18   unambiguous terms.  If Mr. Sluimer – a sophisticated senior executive of the Company who,

19   according to his own statements in this lawsuit, was overseeing virtually all of Verity's

20   international sales – had any questions about this provision of the Plan, there was nothing

21   preventing Mr. Sluimer or any of his lawyers from contacting the Plan Administrator, at the

22   address set forth at Section 11(a) of the Plan, and requesting clarification.

23       That Mr. Sluimer saved his concerns about the import or applicability of this release

24   provision for this litigation does nothing to advance his case.  *See Drinkwater v. Metropolitan*

25   *Life Ins. Co.*, 846 F.2d 821, 825-26 (1st Cir. 1988) ("All Metropolitan employees were provided

26   with a 'Statement of Rights under the Employee Retirement Income Security Act.'  The

27   statement informed participants of their right, as required by ERISA, to have their 'claim

28   reviewed and reconsidered upon request.'  It is undisputed that [plaintiff] failed to utilize the

4

1  review procedure provided by Metropolitan, saving his complaints for the litigation process

2  rather than the review procedure."); *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 61-62 (1st Cir.

3  2005) ("Here, it is undisputed that [defendant] provided the required review procedure. The

4  Plan's review procedure was outlined in the Handbook, and [plaintiff] had adequate opportunity

5  to read and understand the relevant provisions. [Plaintiff], however, failed to utilize the review

6  procedure provided by [defendant], saving his complaints for the litigation process rather than

7  the review procedure.") (internal quotations omitted).

8       It merits emphasis here that the Plan, and each of the attached form Releases B, C, and D

9  attached thereto, are also publicly available documents (part of Verity's 10-K SEC filing dated

10  May 31, 2005), which can be downloaded from the Internet in a matter of seconds. (*See*

11  Defendants' Request for Judicial Notice, concurrently filed herewith.) Mr. Sluimer was an

12  executive officer of the company whose compensation was specifically summarized in Ex. 10.17

13  to that filing ("Executive Officer Summary Compensation Sheet"). If Mr. Sluimer did not

14  review the Plan at the time of the SEC filing, he clearly read it (as the law presumes he did)

15  when he signed his Participation Notice, contractually agreeing to participate in the Plan.

16       Finally, contrary to Mr. Sluimer's statement in his declaration, the Plan Administrator

17  *repeatedly* informed Mr. Sluimer that he would not be entitled to benefits because of his failure

18  to execute the required waiver and release, no less than three times in correspondence dated May

19  3, July 6, and September 28, 2006, respectively. (Kanter Decl., Exs. F, H & J) In response, Mr.

20  Sluimer never once claimed that he or his counsel lacked knowledge of this requirement, or that

21  they failed to appreciate its applicability to him as a participant in the Plan. Mr. Sluimer's

22  present efforts to persuade the Court otherwise are belied by his own conduct and actions.

23       It is telling, indeed, that Mr. Sluimer fails in his own motion to address, much less

24  attempt to distinguish, any of the cases cited at pages 17-19 of Verity's motion for summary

25  judgment on this issue. *See Lockheed v. Spink*, 517 U.S. 882 (1996); *Loskill v. Barnett Banks,*

26  *Inc.*, 289 F.3d 734 (11th Cir. 2002); *Bender v. Xcel Technology*, 507 F.3d 1161 (8th Cir. 2007);

27  *Harlan v. Sohio Pretroleum Co*, 677 F. Supp. 1021 (N.D. Cal. 1988). These cases – all of which

28  were known to Mr. Sluimer for months before he filed the underlying motion (and certainly

1  could have been addressed in his moving papers) – make clear that an employer that creates a

2  benefits plan is entitled to impose any lawful conditions that it deems appropriate, including the

3  execution of a waiver and release in the form required by the company, as a condition precedent

4  for receiving benefits.  These cases also make clear that an employee's failure to satisfy this

5  condition precedent warrants dismissal of his or her claim at the summary judgment stage.

6     Nothing that Mr. Sluimer has stated, or ever could state, about the Dutch proceedings or

7  Mr. Kanter's alleged conflicts as Plan Administrator alters the fact that Mr. Sluimer, under the

8  plain and unambiguous terms of the Plan itself, failed to comply with this condition precedent

9  for receiving benefits.  The issue of his non-compliance was raised in three separate letters from

10 the Plan Administrator to Mr. Sluimer.  This issue was raised again in the summary judgment

11 motion filed by the Defendants in April.  And yet, not one word is spoken about this provision

12 by Mr. Sluimer in any of the 35 pages of his underlying memorandum of points and authorities.

13 It is mentioned only in the language quoted above from his declaration.  Opposing counsel's

14 silence on this issue cannot be accidental, and most likely reflects the fact that this is, in reality,

15 an insurmountable obstacle to Mr. Sluimer's claim.  The Plan requires the execution of a general

16 waiver and release.  Mr. Sluimer never did so.  He is not entitled to benefits.

17 **B.**     **Mr. Sluimer's Failure to Confirm in Writing That He Would Be Subject to Verity's**

18         **Non-Competition and Confidentiality Agreements**

19     Mr. Sluimer never confirmed in writing that he would be subject to Verity's Non-

20 Competition and Confidentiality Agreements – another condition precedent for his receipt of

21 benefits under the Plan.  At paragraph 10 of his declaration, Mr. Sluimer offers the identical

22 excuses to those he advanced in connection with his failure to execute the waiver and release.

23 Mr. Sluimer claims that he "was always willing to be subject to a Confidentiality Agreement and

24 Non-Compete Agreement and repeatedly confirmed so in writing by way of emails and the

25 documents that I filed in the Dutch Court."  But again, he references no specific documents in

26 support of this statement, and such contention is irrelevant because the record of the Dutch

27 language record of the Dutch court was not before the Plan Administrator and is not properly

28 subject to judicial notice in this proceeding.  (*See* Defendants' Opposition to RJN.)

1    The undersigned counsel has reviewed the English-translated documents in the record

2    and has been able to find only two references to a "confidentiality" and "non-compete"

3    agreement made by Sluimer's counsel in the Dutch lawsuit.  (Reilly Decl., Ex. E, HS-0399, HS-

4    0401)  The document, which is not signed, suggests that "[Mr.] Sluimer was prepared to do that"

5    (HS-401) – *not that he actually did so* and *not that ever told the Plan Administrator he intended*

6    *to do so*.  The undersigned counsel, moreover, has been unable to find a single email (as Mr.

7    Sluimer claims in his declaration) or other document that Mr. Sluimer submitted to the Dutch

8    court suggesting that he was, in fact, "prepared to do that."

9    That Mr. Kanter was General Counsel of Verity and a witness in the Dutch action is

10   irrelevant, and does not suggest that Mr. Kanter received or considered any of Mr. Sluimer's

11   alleged (but unidentified) statements to the Dutch court concerning his willingness to be subject

12   to the Company's Non-Competition and Confidentiality Agreements.

13   The Plan requires notice to the Plan Administrator (presumably in English) in the specific

14   manner described in the Plan.  The documents submitted in the Dutch action, in the Dutch

15   language, which have nothing to do with the proper interpretation of the Plan, were not part of

16   the record before the Plan Administrator.  Respectfully, for numerous reasons, these documents

17   should not even be considered in this lawsuit, which raises the single ultimate issue of whether

18   the Plan Administrator abused his discretion in rendering his decision based on the record he

19   actually reviewed in his capacity as Plan Administrator.

20   Interestingly, in the one letter that Mr. Sluimer actually submitted to the Plan

21   Administrator on July 13, 2006 in which he touches upon the issue at hand – that is, where he

22   discusses the issue of whether or not he would be subject to the Company's Non-Competition

23   and Confidentiality Agreements – Mr. Sluimer, far from unequivocally confirming that he

24   would be bound by these agreements, *quibbled with the Plan Administrator as to whether or not*

25   *he needed to sign such an agreement*.  Mr. Sluimer argued to the Plan Administrator that he had

26   already signed a "Proprietary Rights Agreement" upon joining the company 15 years earlier,

27   which Mr. Sluimer apparently believed was "comparable."  He told the Plan Administrator that

28   "such agreements have nothing to do with the core/spirit of the Plan."  And he suggested that it

7

was "common practice . . . that such 'sub-agreements' are part of a final 'Separation Agreement' between Verity/Autonomy and the Participant." (Declaration of Andrew M. Kanter, Ex. I) Contrary to his current self-serving statements concerning his willingness to be subject to these agreements, the foregoing demonstrates how Mr. Sluimer actually responded to the Plan Administrator on this issue in writing.

In any event, Mr. Sluimer's position was at odds with the plain language of the Plan, which the Plan Administrator made clear to Mr. Sluimer:

> With regards to Section 3(b)(iv), the Plan is clear that it is within the Company's discretion to deny benefits should you not confirm in writing that you are subject to the Company's Confidentiality Agreement and Non-Compete Agreement. You have not provided any such confirmation. The Proprietary Rights Agreement you reference (in that the "Employee Inventions and Proprietary Rights Assignment Agreement," dated 9 June 1993) is not equivalent to a confidentiality and non-compete agreement. The Proprietary rights Agreement is a standard document that governs the rights between the company and its employees with respect to intellectual property generated before and during their employment. A confidentiality agreement protects a much wider scope of key commercial information, and a non-competition agreement of course relates to post-employment competitive obligations. Acknowledgment in writing of these obligations is a basic consideration for receipt of benefits under the Plan, and is integral to the purpose and spirit of the Plan.

(Declaration of Andrew M. Kanter, Ex. J, p. 2)

Identical to his excuse for not executing the required waiver and release, Mr. Sluimer now contends that "[n]o one, including but not limited to Mr. Kanter, ever informed me that my claim would be denied if I did not execute a Confidentiality Agreement and/or Non-Compete Agreement." But this requirement, again, is part of the Plan itself, at Section 3(b)(iv). Mr. Sluimer and his counsel had copies of the Plan. If they lost their copies, they could have downloaded new ones from the Internet. The Plan Administrator reminded Mr. Sluimer of this requirement at least three times, in three separate letters, in response to one of which Mr. Sluimer opined that there was no need to sign such an agreement because he had signed a "similar" one fifteen years earlier.

This provision of the Plan applied to Mr. Sluimer, as well as to every other participant in the Plan, and he is not entitled to benefits because of his failure to comply

1    with it.  Mr. Sluimer's argument, in essence, is that he seeks to obtain the benefits of the

2    Plan without complying with the attendant burdens of participation.  California law

3    mandates otherwise.  *See* California Civil Code § 3521 ("He who takes the benefit must

4    bear the burden.").

5    **C.    Mr. Sluimer's Failure to Provide a Timely and Sufficiently Detailed Constructive**

6    **Termination Notice to the Plan Administrator**

7    Mr. Sluimer's suggestion that he suffered a constructive termination that triggered his

8    right to benefits under the Plan lacks merit because, under Section 2(f) of the Plan, Mr. Sluimer

9    was required to provide written notice of any such constructive termination – referred to in the

10   Plan as a "Constructive Termination Notice" – "within three (3) months of the date the event

11   occurred."  After that, the Company had "fifteen (15) days" to cure.  Section 15 of the Plan

12   required such notice to be "delivered personally or deposited in the U.S. mail, First Class" to the

13   Plan Administrator at the address set forth in Section 11(a) of the Plan.

14   Autonomy's acquisition of Verity closed on December 29, 2005.  As set forth in Exhibit

15   B to Mr. Sluimer's declaration, Mr. Sluimer was notified that his position was identified at risk

16   of redundancy by letter dated that same day.  (Sluimer Decl., Ex. B, HS-0017)  Mr. Sluimer

17   received Autonomy's "Warning of Possible Redundancy" letter on January 6, 2006.  (HS-0017 -

18   HS-0018)  Mr. Sluimer was then placed on fully paid "garden leave" (a term of art in the U.K.

19   describing such fully paid leave), and was denied access to his email.  (HS-0018 – HS-0019)

20   If Mr. Sluimer now intends to argue that he was constructively terminated on January 6,

21   2006, then his "Constructive Termination Notice" was due no later than March 6, 2006 ("within

22   three (3) months of the date the event occurred").  This, of course, did not happen.  Thus, the act

23   of placing Mr. Sluimer on garden leave cannot be considered a constructive termination for

24   purposes of the Plan because he failed to deliver a timely Constructive Termination Notice to the

25   Plan Administrator.

26   Indeed, Mr. Sluimer's first communication with the Plan Administrator is dated May 1,

27   2006.  (Sluimer Decl., Ex. B, HS-0057)  The Constructive Termination Notice is designed to

28   notify the Plan Administrator of the claimed constructive termination and to enable the

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1   Company to exercise its 15-day right to cure.  *See United States v. Packwood*, 687 F.Supp. 471,

2   475 (N.D. Cal. 1987) ("The need to give a breaching party notice of the breach and an adequate

3   opportunity to cure it is basic to contract law.").  Mr. Sluimer's May 1, 2006 communication did

4   nothing of the sort:

5         In my opinion the acquisition of Verity by Autonomy results in a change in
          Control according to the Plan.  This leads to the conclusion, that, according to the
6         applicable Participation Notice, I am entitled to not only cash severance benefits
          but also to accelerated vesting of options and continued medical benefits.
7
    (*Id.*, HS-0057)
8
9         Nevertheless, the Plan Administrator liberally construed Mr. Sluimer's May 1, 2006

10  letter as a claim for benefits and responded accordingly.  (*Id.*, HS-0059)  But this does not alter

11  the fact that the May 1, 2006 letter never mentions a constructive termination of any kind, and,

12  indeed, provides no detail to enable the Company to exercise its right to cure.  (*Id.*, HS-0057)

13        Mr. Sluimer mentioned constructive termination to the Plan Administrator for the first

14  time in the form of his July 13, 2006, wherein he stated:

15        [A]s you are aware, the Cantonal Court in The Netherlands ruled on 7 July
          2006 that the offered position by Verity/Autonomy (Sr. VP Neurodynamics),
16        is not comparable with the prior position the Participant hold at Verity, Inc.
          Therefore, I claim, per section 2(f) 'Constructive Termination' (i) due to a
17        substantial reduction in the Participant's duties and responsibilities."

18  (Sluimer Decl., Ex. B, HS-0061)

19        But if this is to be considered Mr. Sluimer's Constructive Termination Notice, it is

20  problematic for several reasons.  First, Mr. Sluimer failed to deliver the notice in accordance

21  with the requirements of the Plan, which, under Section 15, requires all notices to be "delivered

22  personally or deposited in the U.S. mail, First Class."  As demonstrated by Exhibit B to Mr.

23  Sluimer's declaration, pages HS-0061 – HS-0063, Mr. Sluimer sent the document by foreign

24  mail (HS-0062) and apparently emailed it to another employee at the Company, Rachel

25  Haverfield (HS-0063), who has never served as Plan Administrator.

26        Further, even if his July 13, 2006 letter had been delivered properly, the question as to

27  *when* Mr. Sluimer's constructive termination allegedly occurred for purposes of assessing his

28  entitlement to benefits under the Plan remains unanswered.

1   Moreover, it is not clear on the face of the document what the July 13, 2006 letter

2   represents.  Mr. Sluimer states in the first paragraph of the letter that "my letter dated 1 May

3   2006 was [meant] to be an application for benefits under the [Plan]."  He then states that "in case

4   this was not clear to you, I hereby repeat my application for benefits."  But then, in the next

5   sentence, he states that "[i]n accordance to section 11(c) of the Plan, I hereby request review,

6   based on the following grounds: . . . ."

7   The Plan Administrator treated the letter as a request for review, replying within the 60-

8   day window from the date on which the document was received by Verity on August 1, 2006,

9   per Section 11(d) of the Plan.  (*See id.*, HS-0065 – HS-0067)

10   At page 29, footnote 6, of his motion, Mr. Sluimer references several letters he wrote to

11   Mr. Kanter earlier in the year expressing his dissatisfaction with the notion of an alternative job.

12   But a careful review of these documents reveals that these are not Constructive Termination

13   Notices, but merely part of an ongoing dialogue between Mr. Sluimer, on the one hand, and Mr.

14   Kanter (who had not yet assumed the role of Plan Administrator), on the other hand.

15   Mr. Sluimer further points to statements made by his lawyers in pleadings submitted to

16   the Dutch tribunal, but, again, this is not the same as actually delivering to the Plan

17   Administrator a "Constructive Termination Notice" as required by the Plan.

18   It is also noteworthy that Mr. Kanter did not assume the role of Plan Administrator until

19   such time as the former Plan Administrator, Jack Landers, received Mr. Sluimer's first letter

20   dated May 1, 2006 requesting benefits under the Plan.  (Kanter Decl., ¶ 4)  Mr. Sluimer had

21   made it clear in this litigation that he never believed that Mr. Kanter was the Plan Administrator

22   prior to and including the time he sent his letter dated May 1, 2006, meaning that he could not

23   have believed that his correspondence with Mr. Kanter prior to that date constituted valid notice

24   to the Plan Administrator.  In truth, Mr. Sluimer made no effort to comply with the procedural

25   and substantive requirements set forth in the Plan relating to him, and, respectfully, his failure to

26   do so should not be overlooked by the Court in assessing whether the Plan Administrator abused

27   his discretion in denying benefits.

28   / / /

**D.**    **Autonomy Offers Mr. Sluimer Immediate Reemployment With No Lapse in Pay**

Mr. Sluimer was not entitled to receive benefits under the Plan because he was offered "immediate reemployment" with no "lapse in pay."

**1.**    **Immediate Reemployment**

Under Section 3(a)(iii), "immediate reemployment" means that "the employee's employment with the successor company or purchaser of its assets . . . results in uninterrupted employment such that the employee does not suffer a lapse in pay as a result of the change in ownership of the Company or sale of its assets."

Mr. Sluimer was never actually terminated from the company.  He was placed on paid leave for approximately 2 ½ months while management conducted its review process as to whether certain positions were redundant (*i.e.* duplicative or unnecessary) in the new company. (Kanter Decl., ¶¶ 7-8)  As already discussed, the act of placing Mr. Sluimer on paid leave could not have constituted constructive termination because Mr. Sluimer failed to provide a Constructive Termination Notice to the Plan Administrator within the specified three-month window set forth in the Plan.

Once the redundancy review process was completed (ten to twelve weeks after the combination of two software companies with close to a thousand employees and billions of dollars in combined market capitalization), Sluimer was offered "immediate reemployment" by Autonomy on March 23, 2006.  (Sluimer Decl., Ex. B, HS-0035 – HS-0037)

Importantly, there is no requirement under the Plan that the reemployment offered to Mr. Sluimer be identical or even comparable to his prior employment, that the number of employees reporting to him be the same or even similar, or that the amount of assets under his management be equal or even comparable.  The offered reemployment need only meet two criteria:  it must be (a) "immediate" with (b) no "lapse in pay."

**2.**    **No Lapse in Pay**

While the Plan does not specifically define the term "lapse in pay" (or "lapse" or "pay" individually), the term "lapse" has a unique meaning in the law.  Black's Law Dictionary defines "lapse" as the "termination of a right or privilege because of a failure to exercise it within some

time limit or because a contingency has occurred or not occurred." *Black's Law Dictionary* at 896 (8th ed. 2004). Ballentine Law Dictionary defines "lapse" in similar fashion: "A termination, particularly of a right or privilege. A forfeiture caused by one's failure to perform some necessary act." *Ballentine Law Dictionary* 709 (3d ed. 1948).

Case law applying and interpreting the term "lapse" is consistent with the legal dictionary definitions set forth above.[1] The undersigned counsel is not aware of any legal authority that uses the term "lapse," as Mr. Sluimer has suggested in his moving papers, to mean a mere decrease in the value of his commissions (notably, Mr. Sluimer does not suggest – nor could he – that there was any decrease in his salary or reduction or elimination of any of his benefits).

Moving on to the word "pay":

Assuming, for the moment, that "pay" means "salary," it is uncontested that Mr. Sluimer received his salary during the time he was placed on garden leave and beyond. There is no suggestion to the contrary in Mr. Sluimer's moving papers. Therefore, if "pay" means "salary," there has been no "lapse in pay."

If the definition of the term "pay" were extended to include commissions as well as salary, it must be noted that Mr. Sluimer continued to be compensated under the identical commission structure during the relevant time period. (Kanter Decl., ¶¶ 7-8) Mr. Sluimer's lone grievance appears to be that the *amount* of his commissions – not the manner in which they were

---

[1]    *See Adams v. Paul*, 11 Cal.4th 583, 590 (1995) ("the cause of action is destroyed by the *lapse* of the period of limitations"); *Pennsylvania R. Co. v. Midstate Horticultural Co.*, 21 Cal.2d 243, 247 (1942) ("The general rule governs unless the action is created by statute and the language of definition requires a construction that the case of action is destroyed by the *lapse* of the period of limitations provided by the statute."); *Ledbetter v. Goodyear Tire & Rubber Co.*, Inc., 127 S.Ct. 2162, 2173 (2007) ("the claimant has lost any right of action by *lapse* of time"); *Scott v. Federal Life Ins. Co.*, 200 Cal.App.2d 384, 391-92 (1962) ("*Lapse* is defined as the termination of a policy's coverage at the end of a policy period, resulting from the insured's failure to pay premiums or otherwise manifest the intent to renew the policy"); *Bell v. Wolfish*, 441 U.S. 520, 575 (1979) ("the protections of the Fourth Amendment do not *lapse* at the jailhouse door"); *MW Erectors, Inc. v. Niederhauser Ornamental and Metal Works Co., Inc.*, 36 Cal.4th 412, 427 (2005) ("if there was a *lapse* in licensure at any time during performance of a contract, one cannot sue on the entire contract"); *Mickens v. Taylor*, 535 U.S. 162, 182 (2002) ("a severe *lapse* in his professional duty") (emphasis added to the word "lapse" in all of the above quotations).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  calculated – was lower between January and March of 2006 than it had been in the previous two

2  years.  But that does not mean that his commission payments "lapsed" – *i.e.*, that the Company

3  terminated his commissions – during this period.  Rather, this means that the value of his

4  commissions decreased in the months immediately following the Autonomy acquisition of

5  Verity.  This alleged decrease, however, could be traced to numerous causes beyond the scope of

6  this proceeding – not the least of which being that Verity, for years a market leader in its

7  industry, had been suddenly acquired by its competitor, Autonomy, a smaller company in

8  England intending to sell a different product to Verity's customers than the products under Mr.

9  Sluimer oversight, and this was time of major transition for Verity's customers and employees.

10     And if "pay" were broadened even further to include "benefits" and "stock option

11  vesting," both of these continued unabated during all times relevant to this lawsuit.  (Kanter

12  Decl., ¶¶ 7-8)  Mr. Sluimer does not dispute this fact.  Mr. Sluimer, indeed, was offered

13  "immediate reemployment" with no "lapse in pay."

14                                    **III.**

15     **THE COLLATERAL ESTOPPEL DOCTRINE DOES NOT APPLY HERE**

16     A party seeking to invoke collateral estoppel must demonstrate that "(1) the issue at stake

17  [is] identical to the one alleged in the prior litigation; (2) the issue [was] actually litigated in the

18  prior litigation; and (3) the determination of the issue in the prior litigation [was] a critical and

19  necessary part of the judgment in the earlier action."  *Clark v. Bear Stearns & Co.,* 966 F.2d

20  1318, 1320 (9th Cir. 1992).   These factors are applied strictly.  It is not sufficient that an issue is

21  "factually similar" to another in an earlier case; to satisfy the collateral estoppel factors, the

22  issues must be *identical* and involve the same facts and surrounding context.  *Western Oil & Gas*

23  *Ass'n v. United States EPA,* 633 F.2d 803, 809 (9th Cir.1980).

24     The party asserting preclusion bears the burden of showing with clarity and certainty

25  what was determined by the prior judgment.  *United States v. Lasky,* 600 F.2d 765, 769 (9th Cir.

26  1979).  "It is not enough that the party introduce the decision of the prior court; rather, the party

27  must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the

28  exact issues previously litigated."  *Id.*

1    If there is any doubt as to its appropriateness, collateral estoppel should <u>not</u> be applied.

2    *Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir. 1980).  "'If the decision could have been

3    rationally grounded upon an issue other than that which the defendant seeks to foreclose from

4    consideration, collateral estoppel does not preclude relitigation of the asserted issue." *Eureka*

5    *Fed. Svgs. & Ln v. Amer. Cas.,* 893 F.2d 229, 233 (9th Cir. 1989) (citations omitted).

6    **A.    The Judge in the Dutch Action Decided an Issue of Dutch Law and Did Not Decide**

7    **Any Issues Regarding the Plan.**

8    Mr. Sluimer has failed to meet his burden of showing that collateral estoppel is

9    appropriate in this case.  As a preliminary matter, Sluimer has not demonstrated with the

10   requisite "clarity and certainty" that the Dutch court decided any of the key issues in the instant

11   case.  Rather, he argues that "the parties litigated in a contested hearing before the Dutch court

12   several conclusive issues."  (MSJ at 32:6-7)  The <u>only</u> evidentiary support offered by Mr.

13   Sluimer for this proposition is a citation to a single paragraph in Verity's response to his petition

14   in that case.  Tellingly, he does not identify any portion of the court's decision in that case

15   addressing or deciding issues conclusive to this case.  This is because, as set forth below, the

16   Dutch court did not decide any such issues.

17   Because he cannot identify portions of the record in the Dutch action supporting his

18   argument, Mr. Sluimer instead resorts to mischaracterizing the nature of that proceeding.  In

19   particular, he claims that "as the Dutch Court held, Mr. Sluimer's termination was a Covered

20   Termination under the Plan . . ."  (MSJ at 29:10-11)  This is not true.  The evidence cited by

21   Sluimer in support of this proposition is found at paragraph 6 of the decision issued by the Dutch

22   court.  (Exhibit H to the Reilly Decl., at p. HS-0412).  That paragraph, in fact, *makes no*

23   *reference to the Plan whatsoever, nor does it use the term "Constructive Termination*."  Even a

24   cursory reading of that paragraph reveals that the judge was applying Dutch law, and was

25   calculating termination benefits pursuant to a "neutral cantonal judge formula."  This formula

26   has nothing whatsoever to do with the Plan.  In fact, the Dutch action involved strictly an issue

27   of Dutch labor law, and the judge in that case did not decide any issues with respect to the Plan.

28   That Mr. Sluimer has distorted the nature of the Dutch action is readily demonstrated by

15

1  reference to the documents from that case.  In particular, Mr. Sluimer's petition was based on

2  Article 7:685 of the Dutch Civil Code.  (Declaration of Jochem de Roos ("de Roos Decl."), ¶ 2)

3  Article 7:685 provides that either party to an employment contract may petition the court for a

4  dissolution of that contract.  The tribunal may grant the dissolution if it determines that there are

5  "changes in circumstances which are of such a nature that the contract of employment should, in

6  fairness, terminate immediately or after a short period."  (Article 7:685(2))  If the tribunal

7  determines that termination is warranted, it may award certain compensation to the employee.

8  (Article 7:685(8))

9       Based on the foregoing, Sluimer's petition alleged that there was a change in

10  circumstances such that:  "Sluimer is entitled to a termination remuneration according to Dutch

11  law.  Hence, article 7:685, paragraph 8 CC, applies and the Recommendations of the Cantonal

12  Judges Circle are the basic principle."  (Reilly Decl., Ex. C, at p. HS-0364)  Thus, the sole issue

13  to be decided by the judge was whether there had been "changes in circumstances" warranting

14  dissolution of the employment agreement pursuant to Article 7:685.  This was the issue

15  ultimately decided by the judge.

16       In framing the issue to be decided in his written decision, the judge stated that "Sluimer

17  requested the dissolution of the labor agreement with Verity because of changes in

18  circumstances."  (Reilly Decl., Ex. H, ¶ 2 at p. HS-0411)  The judge determined that there were

19  "changes in circumstances," and based on those changes, stated that "the cantonal judge will

20  dissolve the labor agreement."  (*Id.* at ¶ 5)  Significantly, *there is not a single reference to the*

21  *Plan in the Dutch court's final decision in that matter.*

22       Ignoring the lack of reference to the Plan in the decision of the Dutch court, Mr. Sluimer

23  nevertheless argues that the Dutch court decided issues relating to the Plan, including whether

24  Mr. Sluimer suffered a "Constructive Termination" under the Plan, whether Mr. Sluimer was

25  eligible for benefits under the Plan due to his failure to satisfy the conditions precedent set forth

26  in the Plan, and whether Mr. Sluimer was offered "immediate reemployment" as defined by the

27  Plan.  (MSJ at 29:10-11; 32:6-13)  The problem with Mr. Sluimer's argument (beyond the fact

28  that it is belied by the actual written decision by the Dutch court) is that it is actually directly

1   contradicted by his own statement in the Dutch action that "Sluimer does not claim the

2   application of the Change in Control Plan, but, as already said, he claims the dissolution with

3   allowance and reasonable remuneration."  (Reilly Decl., Ex. E, ¶ 41 at p. HS-0402)

4        It is unclear why Mr. Sluimer would include any references to the Plan at all in his

5   petition, as he made clear that he was not asking the Dutch court for any relief under the Plan.

6   Nor could he have done so, given that the Dutch court would have no jurisdiction over an

7   ERISA plan, as such jurisdiction is vested exclusively in the United States federal courts.  In

8   responding to Mr. Sluimer's petition in the Dutch action, Verity (as it made clear to the Dutch

9   court) had no choice but to correct certain misstatements made by Sluimer about the Plan.

10  However, neither Mr. Sluimer's references to the Plan, nor Verity's response thereto, changes

11  the fact that the Dutch court did not, and could not, decide any issues relating to the Plan.  As set

12  forth in the transcript of the proceeding before the Dutch court, Verity's counsel made this quite

13  clear ("The [P]lan does not apply, so there is little to be said about it."), with no disagreement

14  from Mr. Sluimer's counsel (Reilly Decl., Ex. G, HS-0408), who, in their own submissions to

15  the Dutch court, had made clear that "Sluimer does not claim the application of the Change in

16  Control Plan" (*id.* Ex. E, ¶ 41 at p. HS-0402).

17  **B.      Collateral Estoppel Is Inappropriate Because the Decision in the Dutch Action**

18  **Could Not Be Appealed.**

19       Sluimer's effort to invoke collateral estoppel fails for an additional reason:  Dutch law

20  specifically prohibits any appeal of a decision under Article 7:685.  The United States Supreme

21  Court has expressed disapproval of the use of collateral estoppel where the party against whom

22  collateral estoppel is sought had no opportunity to obtain appellate review of the first

23  proceeding: "Under contemporary principles of collateral estoppel," the unavailability of

24  appellate review "strongly militates against giving" an action preclusive effect.  *Standefer v.*

25  *United States*, 447 U.S. 10, 23, 100 S.Ct. 1999, 2007 (1980); *see also Lombardi v. City of El*

26  *Cajon*, 117 F.3d 1117, 1122  (9th Cir. 1997) (refusing to apply collateral estoppel where "[t]he

27  party against whom preclusion is sought could not, as a matter of law, have obtained review of

28  the judgment in the initial action"); *Restatement 2nd of Judgments*, § 28(1) (collateral estoppel

1  does not apply where "[t]he party against whom preclusion is sought could not, as a matter of

2  law, have obtained review of the judgment in the initial action.").

3      Here, Article 7:685(11) states that the parties have no right to appeal a ruling made under

4  that provision:  "No appeal or cassation (appeal to the Supreme Court) lies against a ruling under

5  this Article."  Based on the foregoing, because appellate review was unavailable to Defendants

6  in the Dutch action, collateral estoppel does not apply here.

7  **C.    Procedural Differences Also Bar the Application of Collateral Estoppel.**

8      Collateral estoppel may not be applied where the separate cases involve "shifts in the

9  burden of persuasion or … changes in the degree of persuasion required." 18 Charles Alan

10  Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4422 (2d

11  ed.2002); *see also Littlejohn v. United States,* 321 F.3d 915, 924 (9th Cir. 2003) (success on

12  Department of Veterans Affairs disability claim at standard of evidence lower than

13  preponderance not entitled to preclusive effect in tort claim brought under the Federal Tort

14  Claims Act because "[s]uch differences in the burden of proof ... prevent issue preclusion");

15  *Clark, supra*, 966 F.2d at 1322 (9th Cir. 1992) ("[C]ollateral estoppel does not preclude claims

16  that have a different burden of proof than previously decided claims....").

17      Here, there is a marked difference in the burden of proof applicable to the Dutch action

18  and that applicable to the instant case.  In the Dutch action, Sluimer, as the party seeking

19  dissolution of the employment agreement, was required only to make his request for dissolution

20  plausible.  (de Roos Decl., ¶ 3)  This action, by contrast, involves a much higher standard.  In

21  particular, as set forth in Section IV, *infra,* the burden in this case is on Sluimer to show that the

22  plan administrator's decision to deny him benefits was an abuse of discretion.  *Gehman v. Unum*

23  *Life Ins. Co. of America*, 2008 WL 666207 at * 5 (N.D. Cal. 2008).  The standard is requires

24  only a minimal showing by the defendant:

25          The abuse of discretion standard requires only a minimal showing.  *Snow v.*
            *Standard Ins. Co.,* 87 F.3d 327, 331 (9th Cir. 1996) (holding that the abuse of
26          discretion standard does not permit the overturning of a decision where there
            is relevant evidence that reasonable minds might accept as adequate to support
27          a conclusion even if it is possible to draw two inconsistent conclusions from
            the evidence).  "It is an abuse of discretion for an ERISA plan administrator to
28          make a decision without any explanation, or in a way that conflicts with the

---

18

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

plain language of the plan, or that is based on clearly erroneous findings of fact." *Id.* "The mere fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous. Rather, review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed. That standard certainly does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Id.* at 331-32 (internal citations omitted).

*Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2008 WL 220101 (N.D. Cal. 2008). That Sluimer may have been able to satisfy the much lower standard applicable to the Dutch action means that lawsuit can have no bearing on the instant case. *Cobb v. Pozzi,* 363 F.3d 89, 114 (2d Cir. 2004) ("A party's success in an earlier proceeding where it faced a lower burden of proof does not mean that, against a higher burden of proof in a subsequent proceeding, that party would achieve the same result.").

## IV.

## ABUSE OF DISCRETION IS THE APPROPRIATE STANDARD OF REVIEW

As this Court made clear in *Gehman*, the decision of a Plan Administrator – where, as here, he or she is granted exclusive discretion to render decisions on eligibility (*see* Plan, Section 8(a)) – will be reviewed for abuse of discretion:

Under the abuse of discretion standard, the Court will reverse [the plan administrator's] determinations if they are arbitrary and capricious. A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith. The question is not whose interpretation of the plan documents is most persuasive, but whether the interpretation is unreasonable. The reviewing court must look to the plain language of the plan to determine whether the administrator's interpretation of that plan is arbitrary and capricious.

*Gehman*, 2008 WL 666207 at *5 (granting summary judgment where the plan administrator's interpretation of the plan did not conflict with its plain and unambiguous language).

There is no basis here for a *de novo* review, which applies only in cases of "wholesale and flagrant violations of the procedural requirements of ERISA," such that the Plan Administrator acts "in utter disregard of the underlying purpose of the plan." *Abatie v. Alta Health & Life Ins. Co*, 458 F.3d 955, 972 (9th Cir. 2006). Mr. Sluimer compromises his

1    credibility by arguing that such "wholesale and flagrant violations of the procedural

2    requirements of ERISA" occurred here.  (MSJ, p. 23)  Mr. Sluimer's statement that "no reported

3    decision that [he has] been able to find states facts even close to the ERISA violations present in

4    this matter" (Motion, p. 1) is illuminating – but probably not in the way it was intended.  As this

5    statement implicitly reveals, there is no case law to support Mr. Sluimer's request for a *de novo*

6    review because there is no basis in law to apply a *de novo* review in this case.  The reality is, Mr.

7    Sluimer cannot establish any procedural violations at all.

8    **A.    Mr. Kanter Was the Proper Plan Administrator.**

9          Mr. Sluimer challenges the fact that Andrew Kanter served as Plan Administrator after

10   May 1, 2006.  Mr. Sluimer apparently believes that because the Plan requires *notices* to be sent

11   to "Verity, Inc. Attn: Vice-President, Human Resources" (Sluimer Decl., Ex. A, HS-0011), the

12   Vice-President of Human Resources is and must always be the Plan Administrator.  Not so.

13   Section 2(*l*) of the Plan defines the "Plan Administrator" as follows:

14          [T]he Board or any committee duly authorized by the Board to administer the
             Plan.  The Plan Administrator may, but is not required to be, the Compensation
15          Committee of the Board.  The Board may at any time administer the Plan, in
             whole or in part, notwithstanding that the Board has previously appointed a
16          committee to act as the Plan Administrator.

17   (Sluimer Decl., Ex. A, HS-00004)

18          Thus, the Plan Administrator is whomever Verity's board of directors designates to serve

19   in this role, and in this case, the board designated Mr. Kanter to serve as the Plan Administrator.

20   (Kanter Decl., ¶ 4)

21          Interestingly, to the extent his interpretation of the document is at all relevant to this

22   proceeding, Jack Landers, who believed he was the Plan Administrator during this time, agrees

23   that the board of directors was entitled to appoint whomever they chose to serve as the Plan

24   Administrator or Administrators (the Plan does not require it to be a single individual):

25          Q.    Can you tell me whether you had an understanding as to whether the board was
                  authorized, under this particular provision, to administer the plan?
26
             MR. EHRMAN:  Objection to the extent it calls for a legal conclusion.
27
             MR. DOLL:  That's fair enough.
28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Q.    And I'm just asking for your understanding as –

A.    Yeah.  My best understanding, based on not being an attorney, would be that this language does authorize them to be the plan administrator.

(Doll Decl., ¶ 4, Ex. A, Landers Depo., p. 34:18 - 35:3)

Mr. Landers also testified that as of January, 2006, Mr. Kanter asked that "any communication you [Mr. Landers] get from Hugo [Mr. Sluimer] be forwarded to me [Mr. Kanter]." (*Id.*, Landers Depo., p. 37:7-18, discussing an email dated January 8, 2006)

While Mr. Landers believed that he was still the Plan Administrator for other participants during this period, it is important to note that he, in fact, was never asked to administer the Plan at any time subsequent to the Autonomy acquisition in December of 2005:

Q.    Do you recall post-acquisition – between, let's say, December 29, 2005 and the time that you left in September of '06, do you recall on how many occasions you were asked to administer the plan or were called upon to administer the plan?

A.    I recall, to the best of my recollection, that I was never asked during that period to act in regards to that.

(*Id.*, Landers Depo., p. 39:9-16)

**B.    The Plan Administrator Was Not Self-Interested.**

Mr. Sluimer suggests that Mr. Kanter was "self-interested."  Mr. Sluimer offers no evidence to support this statement.  Mr. Kanter has no bias or ill will toward Mr. Sluimer. (Kanter Decl., ¶ 21)  He has no personal financial stake in the outcome of this lawsuit.  (*Id.*)  He was simply acting as an agent on behalf of a company to administer benefits under a plan.  That is not "self-interest."  But even if it were the case that a director of a company serving as Plan Administrator were always deemed "self-interested" under the law, this still would not convert this Court's inquiry into one of *de novo* review based on the Supreme Court's holding in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

For example, in *Spitz v. Berlin Industries, Inc.*, 1994 WL 194051 (N.D. Ill. 1994), the plaintiff advanced this very argument:  namely, that the Plan Administrators in that case were also directors of the company, whose compensation depended in part on the Company's profitability, and thus stood to gain by denying the plaintiff benefits.  The district court rejected the notion that this could convert its inquiry into a *de novo* review:

The Supreme Court [in *Firestone*] stated that if an administrator or fiduciary who is granted discretion by the plan is "operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." This statement is an implicit rejection of [plaintiff's] argument that a de novo standard of review should be applied when there is a potential conflict of interest. . . . For the reasons stated above, we will apply an abuse of discretion standard of review here. As used herein, "abuse of discretion" is synonymous with "arbitrary and capricious."

*Id.* at *4 (citations and internal quotations omitted).

Mr. Kanter's role as a post-acquisition director of Verity creates, at most, a potential structural conflict concerning his administration of the Plan. This merely heightens the abuse of discretion standard. It does not give rise to *de novo* review.

Nor should such a conflict on Mr. Kanter's part be presumed. Indeed, it is well established that the existence of a conflict of interest requires proof of specific facts to support such a conflict. *Collins v. Pension and Ins. Committee of Southern Cal. Rock Products*, 144 F.3d 1279, 1283, n.3 (9th Cir. 1998) (citing *Cuddington v. Northern Industrial Pub. Serv. Co.*, 33 F.3d 813, 816 (7th Cir. 1994) (no automatic conflict even though plan administrator consisted of company and committee dominated by officers and directors of the company).

No such specific facts can be found in the moving papers to support the finding of a conflict of interest. As set forth in his declaration, Mr. Kanter's involvement in this matter consists of the following: Autonomy Corporation plc – the company of which Mr. Kanter was General Counsel and Chief Operating Officer – acquired Verity on December 29, 2005. Upon this acquisition, Mr. Kanter notified Mr. Sluimer (whom he had never met) that Mr. Sluimer's position was potentially redundant. Several months later, Mr. Kanter offered Mr. Sluimer an alternative position at Neurodynamics, and engaged in email correspondence and limited verbal discussions with him on this subject. Mr. Kanter appeared at the hearing in the Dutch court, and answered several questions posed by the judge. Because the Dutch proceeding was still ongoing on May 1, 2006, the date on which Mr. Sluimer drafted his first communication seeking to obtain benefits under the Plan, Mr. Kanter was appointed by the board of directors to step into the role of Plan Administrator. Mr. Kanter holds no bias or animus of any kind toward Mr. Sluimer. He holds no financial stake in the outcome of this litigation. He is not self-interested, and the unsupported suggestion by Mr. Sluimer's counsel fails to establish otherwise.

**C.**    **The Plan Administrator Adequately Investigated Mr. Sluimer's Claim.**

Mr. Sluimer attacks Mr. Kanter for supposedly failing to adequately investigate Mr. Sluimer's claim, and failing to obtain evidence to support the decision to deny benefits. This is simply untrue. The record before the Court demonstrates the care and attention the Plan Administrator applied to this matter, and details the basis for his decision (which he carefully detailed in letters to Mr. Sluimer). Mr. Sluimer's dissatisfaction with the Plan Administrator's performance, in truth, lies in the conclusion he reached, not the process by which he reached it.

**D.**    **The Plan Administrator Had No Duty to Apply the Collateral Estoppel Doctrine.**

Mr. Sluimer takes issue with the fact that the Plan Administrator never applied the collateral estoppel doctrine to the decision of the Dutch tribunal. There are at least three problems with this argument. First, no one ever suggested that the Plan Administrator should apply the doctrine. Second, the Plan Administrator is not a judge or a litigator, and is not qualified to apply the doctrine. Third, as discussed above, the doctrine is inapplicable here.

**E.**    **The Plan Administrator Provided All Proper Documentation to Mr. Sluimer.**

Mr. Sluimer suggests that the Plan Administrator failed to provide him with all of the documents he requested. This may be true, but only because – as the Plan Administrator made clear in his correspondence to Mr. Sluimer – some of the documents requested went beyond those documents to which Mr. Sluimer was lawfully entitled, and threatened to invade the privacy rights of third parties and privileges of the Company:

> As the Plan Administrator, I write to respond to your October 12, 2007 letter. Preliminarily, I object to providing requested information: 1) outside ERISA's boundary pursuant to 29 U.S.C. § 1132(c) and 2) information protected against disclosure under any doctrine or privilege, including without limitation the attorney-client privilege, work-product doctrine and/or any right to privacy. [¶] Enclosed herewith are: 1) Verity Inc.'s Change in Control and Severance Benefit Plan (with Exhibit A thereto); and 2) correspondence to Hugo Sluimer of 6 July 2006, 3 August 2006, 28 September 2006 and 22 March 2007.

(Reilly Decl., Ex. A, HS-0095)

Neither Mr. Sluimer nor his attorneys ever followed up on this letter with additional requests for documents or clarification of the Plan Administrator's response, with indeed no communication on the matter until it was put forth as an issue in this litigation.

1    There was no attempt to deny Mr. Sluimer any of the information to which he was

2    lawfully entitled, and there is no evidence, whatsoever, that Mr. Sluimer was denied any

3    information that he actually needed to pursue his claim.

4    Moreover, the Plan Administrator's privilege and privacy objections are well founded.

5    As to the Plan Administrator's privilege objection:  While the Ninth Circuit has recognized a

6    "fiduciary exception" to the attorney-client privilege (declining to apply the privilege in matters

7    where the plan administrator seeks legal advice on general matters of plan administration), the

8    privilege remains intact when the plan administrator retains counsel to defend himself against an

9    action by a beneficiary.  The Ninth Circuit explained this distinction:

10    > Thus, the case authorities mark out two ends of a spectrum.  On the one hand, where
11    > an ERISA trustee seeks an attorney's advice on a matter of plan administration and
      > where the advice clearly does not implicate the trustee in any personal capacity, the
      > trustee cannot invoke the attorney-client privilege against the plan beneficiaries.  On
12    > the other hand, where a plan fiduciary retains counsel in order to defend herself
      > against the plan beneficiaries . . . the attorney-client privilege remains intact.

13    *U.S. v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999).

14    As to the Plan Administrator's privacy objection:  The Ninth Circuit has made it clear

15    that a plan administrator acting pursuant to ERISA is not shielded from state-law liability for

16    invasion of privacy and other torts.  *See, e.g., Dishman v. UNUM Life Ins. Co. of America*,

17    269 F.3d 974, 984 (9th Cir. 2001) ("The fact that the conduct at issue allegedly occurred 'in

18    the course of UNUM's administration of the plan' does not create a relationship sufficient to

19    warrant preemption.  If that were the case, a plan administrator could 'investigate' a claim in

20    all manner of tortious ways with impunity.")  This means that if the Plan Administrator, in

21    response to an overreaching request by Mr. Sluimer, were to have produced documents that

22    invaded the financial privacy rights of other participants of the Plan, he would have exposed

23    himself to lawsuits for invasion of privacy and/or other tort or contract-based claims, which

24    is neither in the best interest of the Plan Administrator nor any third party so aggrieved.

25    / / /

26    / / /

27    / / /

28

# V.

## CONCLUSION

The appropriate standard here is abuse of discretion.  The Plan Administrator was duly appointed by the board to handle Mr. Sluimer's claim.  The Plan Administrator committed no procedural violations in his administration of Mr. Sluimer's claim for benefits.  The Plan Administrator's investigation was thorough, and his decision was well reasoned and correct. There is no basis to overturn his decision here.  Defendants respectfully request that the underlying motion be denied in its entirety, and that summary judgment be entered in favor of Defendants on their previously filed motion for summary judgment.

Dated: June 27, 2008                    Respectfully submitted

                                        DOLL AMIR & ELEY


                                        By  _/s/ Gregory L. Doll_                    .
                                              Gregory L. Doll

                                        Attorneys for Defendants VERITY, INC., and THE
                                        VERITY INC. CHANGE IN CONTROL AND
                                        SEVERANCE E BENEFIT PLAN

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1888 Century Park East, Suite 1106, Los Angeles, CA 90067.

On June 27, 2008, I served the foregoing document(s) described as **DEFENDANTS' OPPOSITION TO: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** on the parties in this action by serving:

Joseph M. Rimac, Esq.                    Cliff Palefsky, Esq.
William Reilly, Esq.                     Keith Ehrman, Esq.
RIMAC & MARTIN                           McGuinn, Hillsman & Palesfsky
1051 Divisadero Street                   535 Pacific Avenue
San Francisco, CA 94115                  San Francisco, CA 94133
F: (415) 561-8430                        F: (415) 403-0202


**(  )       By Envelope** - by placing (  ) the original (  ) a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

**(  )       By Mail:** As follows:  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**(X)       By Electronic Filing:** Based upon my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this Document, upon its submission to the Court, will be electronically served on the addressees.

Executed on June 27, 2008, at Los Angeles, California.

**(  ) STATE**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**( X ) FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.


          _/s/ Susan Reimers_____.
          Susan Reimers