**DOLL AMIR & ELEY LLP**
Gregory Doll (SBN 193205)
gdoll@dollamir.com
Michael M. Amir (SBN 204491)
mamir@dollamir.com
1888 Century Park East
Suite 1106
Los Angeles, California 90067
Telephone: (310) 557-9100
Facsimile: (310) 557-9101

Attorneys for Defendants
VERITY, INC., and THE VERITY INC.
CHANGE IN CONTROL AND
SEVERANCE BENEFIT PLAN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO SLUIMER,<br><br>            Plaintiff,<br><br>vs.<br><br>VERITY, INC., a corporation, and THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE BENEFIT PLAN,<br><br>            Defendants. | CASE NO.  CV 08-1220 SI<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     July 18, 2008<br>Time:    9:00 a.m.<br>Ctrm:    10, 19th Floor |

**TABLE OF CONTENTS**

I. OVERVIEW ..........................................................................................................1

   A. *Mr. Sluimer failed to sign the general waiver and release* ......................................2

   B. *Mr. Sluimer failed to confirm in writing that he would be subject to Verity's Confidentiality and Non-Competition Agreements* ....................................................3

   C. *Mr. Sluimer failed to provide proper notice to the Plan Administrator* .................4

   D. *Mr. Sluimer was offered "immediate reemployment" with "no lapse in pay"* .......5

II. ADDITIONAL POINTS AND AUTHORITIES RESPONSIVE TO THE OPPOSITION ........................................................................................................7

   A. Mr. Sluimer's Claim That He Lacked Knowledge of the Requirement to Sign the General Waiver and Release Is Frivolous ..............................................7

   B. Mr. Sluimer Cannot Claim a Lack of Knowledge Concerning the Requirement That He Confirm In Writing That He Would Be Subject to the Company's Confidentiality and Non-Competition Agreements ....................................................9

   C. Mr. Sluimer's Request That The Court Rewrite the Plan to Alter the Definition of "Immediate Reemployment" Must Be Rejected ................................................10

   D. Mr. Sluimer's Compliance With the Plan Is Not Excused for "Futility" ..............13

   E. The Record of the Dutch Court Proceedings Is Irrelevant and Inadmissible ........14

V. CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) .................................... 15

*Adams v. Paul*, 11 Cal.4th 583 (1995) ...................................................................................... 6

*Aero Consulting Corp. v. Cessna Aircraft Co.*, 867 F.Supp. 1480 (D. Kan. 1994) ................. 8

*Bell v. Wolfish*, 441 U.S. 520 (1979) ........................................................................................ 6

*Bender v. Xcel Energy, Inc.,* 507 F.3d 1161 (8th Cir. 2007) ....................................................... 3

*Blakenship v. Liberty Life Assur. Co.*, 486 F.3d 620 (9th Cir. 2007) ...................................... 12

*Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974 (9th Cir. 2001) .................... 13, 14

*Eckstein v. Balcor Film Investors,* 58 F.3d 1162 (7th Cir. 1995) ............................................... 9

*Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188 (9th Cir. 1996) ............................. 7

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948,
   103 L.Ed.2d 80 (1989) ........................................................................................................ 1, 2

*Harlan v. Sohio Petroleum,* 677 F.Supp. 1021 (N.D. Cal. 1988) .................................... 2, 3, 4

*Hulsey v. Elsinore Parachute Center*, 168 Cal.App.3d 333, 339 (1985) .................................. 7

*Inamed Corp. v. Medmarc Cas. Ins. Co.*, 258 F.Supp.2d 1117 (C.D. Cal. 2002) .................... 9

*King v. Larsen Reality, Inc.*, 121 Cal.App.3d 349 (1981) ......................................................... 8

*Ledbetter v. Goodyear Tire & Rubber Co.*, Inc., 127 S.Ct. 2162 (2007) ................................. 6

*Lockheed v. Spink*, 517 U.S. 882, 116 S.Ct. 1783(1996) .......................................................... 3

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. -- , 128 S.Ct. 2343 (June 19, 2008) ............ 1, 2

*Mickens v. Taylor*, 535 U.S. 162 (2002) ................................................................................... 6

*MW Erectors, Inc. v. Niederhauser Ornamental and Metal Works Co., Inc.*,
   36 Cal.4th 412 (2005) ............................................................................................................ 6

*Pennsylvania R. Co. v. Midstate Horticultural Co.*, 21 Cal.2d 243 (1942) ............................. 6

*Ramirez v. United Airlines Inc.*, 416 F.Supp.2d 792 (N.D. Cal. 2005) .................................. 14

*Salterelli v. Bob Baker Group Medical Trust,* 35 F.3d 382 (9th Cir. 1994) ........................... 12

*Santini v. Cytec Industries, Inc.*, 537 F.Supp.2d 1230 (S.D. Ala. 2008) ............................ 6, 11

*Scott v. Federal Life Ins. Co.*, 200 Cal.App.2d 384 (1962) ...................................................... 6

*Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605 (1975) ......................................................................... 8

**Statutes**

Cal. Civ. Code § 1642. .......................................................................................................................... 8

Cal. Civ. Code § 3521 .......................................................................................................................... 4

**Other Authorities**

*Ballentine Law Dictionary* (3d ed. 1948) .......................................................................................... 6

*Black's Law Dictionary* (8th ed. 2004) ............................................................................................. 6

**Treatises**

27 Williston on Contracts § 70:113 (4th Edition, 2008) ............................................................ 7, 8

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# I.

# **OVERVIEW**

The ultimate issue for the Court to decide in this action is straightforward: Did the Plan Administrator abuse his discretion in denying Mr. Sluimer benefits under the Plan? To this end, Mr. Sluimer's opposition brief fails to contradict any of the following facts:

1. Mr. Kanter was properly appointed to serve as Plan Administrator. The Plan, at paragraph 2(*l*), makes clear that Verity's board of directors was entitled to appoint any person, persons, or committee to serve as Plan Administrator. As set forth in Mr. Kanter's declaration, in May of 2006, Verity's board of directors appointed Mr. Kanter to serve as Plan Administrator with respect to Mr. Sluimer's claim for benefits.[1]

2. Mr. Kanter is not self-interested. He harbors no bias or ill-will toward Mr. Sluimer. As to any purported financial interest, it is important to keep in mind that the heart of Mr. Sluimer's case relates to his ability to exercise *stock options* in a *publicly traded company*. If Mr. Sluimer had been allowed to exercise those stock options, he first would have had to pay in excess of $700,000 to the Company (*i.e.*, the aggregate exercise price of the options), which is actually a significant *benefit* to the Company. After the Company received this benefit, Mr. Sluimer's stock then could be sold on the open market to the investing public at its then-current market value (or both steps could be completed simultaneously in a same-day transaction). The suggestion that Mr. Kanter was financially motivated to deny Mr. Sluimer benefits is unfounded.

3. Even if Mr. Kanter were self-interested, which is not the case, Mr. Sluimer still would not be entitled to a *de novo* review of the decision to deny him benefits under the Plan. Every single case cited by both sides of this case, from the United States Supreme Court[2] to the

---

[1] As a matter of caution (though perhaps cumulative), Defendants have submitted a declaration from Sushovan Hussain, the other member of Verity's board of directors, confirming that the board of directors appointed Mr. Kanter to serve as Plan Administrator in May of 2006.

[2] Mr. Sluimer cites to the Supreme Court's most recent statement on this issue – *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. -- , 128 S.Ct. 2343 (June 19, 2008) – which confirms this point: "We do not believe that *Firestone's* statement implies a change in the *standard* of review, say, from deferential to *de novo* review. Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while

1

Ninth Circuit to this District Court, makes clear that a plan administrator's alleged conflict of interest is merely one factor for the Court to consider in determining whether a plan administrator abused his discretion. The standard is still abuse of discretion, not *de novo* review.

4. The record of the Dutch court proceedings was not before the Plan Administrator when he rendered in his decision, and there is no evidence to suggest that the Plan Administrator reviewed all or any of the documents submitted in that action; nor was he required to do so. Accordingly, the record of the Dutch court proceedings should not be part of the record considered by this Court in determining whether the Plan Administrator abused his discretion. The record is not subject to judicial notice; it does not contain sworn statements of any kind; and it is replete with inadmissible hearsay and other evidentiary defects.

With these preliminary issues in mind, Defendants turn once again to the four bases upon which the Plan Administrator denied Mr. Sluimer's claim, addressing in overview form the problems with Mr. Sluimer's counterarguments on each issue. (Further analysis of Mr. Sluimer's opposition brief then follows in Section II, *infra*.)

**A.**    *Mr. Sluimer failed to sign the general waiver and release*. The requirement of signing a waiver and release is a clear condition precedent to Mr. Sluimer's *eligibility* to receive benefits under the Plan – not merely his *receipt* of benefits, as Mr. Sluimer falsely suggests in his opposition brief (at page 5, line 16 through page 6, line 2) by failing to accurately quote the Plan. Indeed, the Plan plainly states at Section 7(a):

> In order to be ***eligible*** for benefits under the Plan, [Mr. Sluimer] also must execute a general waiver and release in substantially the form attached hereto as Exhibit B, Exhibit C or Exhibit D, as appropriate, and such release must become effective in accordance with its terms.

(Emphasis added).

The case of *Harlan v. Sohio Petroleum,* 677 F.Supp. 1021 (N.D. Cal. 1988) is instructive. *Harlan* is one of the four cases cited by the Defendants in their moving papers, which holds that

---

at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused its discretion. We see no reason to forsake *Firestone's* reliance upon trust law in this respect. Nor would we overturn *Firestone* by adopting a rule that in practice could bring about near universal review by judges *de novo – i.e.*, without deference – of the lion's share of ERISA plan claim denials." *Id.* at 2350.

it is proper for a plan administrator to deny plan benefits to a participant who fails to execute a release. Mr. Sluimer suggests that *Harlan* is distinguishable because "the company had found the claimant entitled to Plan benefits [but] [t]he only hold-up to payment of benefits was the employee's refusal to sign the Release which was required by the Plan as a condition of receiving the benefits." (Opposition Brief, p. 10, lines 7-10) This is simply not true.

In *Harlan*, the plaintiff filed an administrative action against his company, which, similar to the filing and prosecution of Mr. Sluimer's Dutch Lawsuit against Verity, was inconsistent with the requirement of signing a general release. "[W]hen [the employer] learned that [the employee in *Harlan*] had already filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC), [the employee] was told he could not sign the agreement as the EEOC charge was inconsistent with the release." *Id*. at 1024. The court affirmed the decision to deny benefits because a "plaintiff cannot accept the benefits and at the same time say that the condition was not part of it." *Id.* at 1026. *Harlan* is directly on point.[3]

**B.    *Mr. Sluimer failed to confirm in writing that he would be subject to Verity's Confidentiality and Non-Competition Agreements*.** By failing to comply with this important condition precedent (which merely required written confirmation that Mr. Sluimer would be subject to the agreements), Mr. Sluimer left the window open during the past two years to compete against his former employer and misuse the Company's confidential information.

When the Plan Administrator confronted Mr. Sluimer with his failure to comply with this condition precedent, Mr. Sluimer – far from cooperating with the Plan Administrator to cure his

---

[3]    In fact, in all but one of the four cases cited by Defendants, the courts never address at all whether or not the employee would have been entitled to benefits had he or she signed the requisite releases. Rather, the analysis in each case properly concerned whether or not the employee satisfied the condition precedent of signing a release. Because in each case the employee failed to do so, the courts each held that the denial of benefits on this basis was entirely appropriate. *See Lockheed v. Spink*, 517 U.S. 882, 894, 116 S.Ct. 1783(1996) ("the execution of a release . . . is an act that the employee performs for the employer in return for benefits); *Harlan v. Sohio Petroleum,* 677 F.Supp. 1021, 1026 (N.D. Cal. 1988) ("plaintiff cannot accept the benefits and at the same time say that the condition was not part of it"); *Bender v. Xcel Energy, Inc.,* 507 F.3d 1161,1170 (8th Cir. 2007) ("The plain language of the plan required the participants 'to provide the Company with a release in the form to be provided by the Company' . . . This condition clearly was not met.").

non-compliance – quibbled as to whether or not these agreements were necessary at all.  Mr. Sluimer argued that he had already signed a "Proprietary Rights Agreement" upon joining the company 15 years earlier, which he believed to be "comparable."  He told the Plan Administrator that "such agreements have nothing to do with the core/spirit of the Plan," and suggested that it was "common practice . . . that such 'sub-agreements' are part of a final 'Separation Agreement' between Verity/Autonomy and the Participant" – that is, something to be addressed at a later date.  (Kanter Decl., Ex. I)  Mr. Sluimer repeated these arguments again in February of 2007 (Sluimer Decl., Ex. B, HS-0068 – 0069), in response to which the Plan Administrator again disagreed with Mr. Sluimer's assertions (*id.* at HS-0070 – 0071).

        The fact is, Mr. Sluimer cannot avoid the burdens imposed on him under the Plan (*i.e.*, promising not to compete against his former employer) while at the same time seeking to recover benefits (*i.e.*, extended stock option vesting and medical benefits).  This is true as a matter of law.  *See* Cal. Civ. Code § 3521 ("He who takes the benefit must bear the burden."); *Harlan*, 677 F.Supp. at 1026 ("plaintiff cannot accept the benefits and at the same time say that the condition was not part of it.").

        **C.**    *Mr. Sluimer failed to provide proper notice to the Plan Administrator*.  Mr. Sluimer considers his May 1, 2006 letter to the Plan Administrator to be an application for benefits.  (*See* Opposition Brief, p. 2, lines 15-17 ("On May 1, 2006, Sluimer sent a notice to the Plan Administrator (Jack Landers, the VP of Human Resources) seeking his other benefits under the Plan …. "); Kanter Decl., Ex. I (Mr. Sluimer writes to the Plan Administrator: "I hereby confirm that my letter dated May 1, 2006 was [meant] to be an application for benefits ….")

        Mr. Sluimer, however, does not even attempt to argue that this May 1, 2006 letter constitutes a "Constructive Termination Notice" as required by the Plan.  The language of the letter never suggests or implies that Mr. Sluimer had been constructively terminated sufficient to trigger the company's right to cure.  *See* Kanter Decl., Ex. E (Mr. Sluimer merely states: "In my opinion the acquisition of Verity by Autonomy results in a Change in Control according to the Plan.  This leads to the conclusion, that, according to the applicable Participation Notice, I am entitled not only [to] cash severance benefits, but also to accelerated vesting of options and

continued medical benefits."). Now, two years later, Mr. Sluimer incredibly seeks to rely on other incidental correspondence related to the Dutch court proceedings to suggest that he was complying with his obligation to put the Plan Administrator on notice of the constructive termination under the Plan, triggering the cure period. That is an unsupported, after-the-fact rationalization, nothing more.

In his next actual communication with the Plan Administrator dated July 13, 2006 (his "Request for Review"), which was improperly delivered to the Company, Mr. Sluimer for the very first time mentions an alleged "constructive termination" in connection with his claim for Plan benefits. (Kanter Decl., Ex. I) This letter might have satisfied the requirements of a Constructive Termination Notice, but for two critical defects: 1) the claim had already been denied (Mr. Sluimer's July 13, 2006 letter sought a review of the decision arising from the May 1, 2006 application; thus, on the face of the document, it is not a new application for benefits); and 2) Mr. Sluimer's employment contract had already been permanently dissolved by the Dutch court, at Mr. Sluimer's request, meaning that he no longer had any employment relationship with the Company, thus depriving the Company of the possibility to cure.

**D.     *Mr. Sluimer was offered "immediate reemployment" with no "lapse in pay."***

Mr. Sluimer spends considerable time arguing that the position offered to him at Neurodynamics was not "comparable" to the one he held with Verity. First, the issue of whether these positions were comparable would involve the adjudication of numerous facts beyond the scope of this summary judgment motion. More importantly, the proper interpretation of the Plan does not require the consideration of any extrinsic facts and disposes of Mr. Sluimer's claim here.

"Immediate reemployment" is specifically defined at Section 3(a)(iii) of the Plan to mean that "the employee's employment with the successor company or purchaser of its assets … results in uninterrupted employment such that the employee does not suffer a lapse in pay as a result of the change in ownership of the Company or sale of its assets." That is the entire definition. It does not cross-reference any other provisions of the Plan. The position offered to Mr. Sluimer at Neurodynamics need not satisfy Mr. Sluimer's own subjective criteria of whether it is comparable to his former position at Verity to warrant the denial of benefits under the Plan.

*See, e.g., Santini v. Cytec Industries, Inc.*, 537 F.Supp.2d 1230, 1247 (S.D. Ala. 2008) ("[T]he court finds that the clear language of the Plan does not even require that the offer of retention by a successor be for a comparable position. The Plan excludes plaintiff if he was 'provided the opportunity to be retained by a successor employer.' As such, the court finds that the decision to deny severance payments under the plan was clearly correct.").

Indeed, the Plan (a "Change in Control" and "Severance" Plan) aims to provide benefits to employees who are no longer employed by the Company as a result of a "Change in Control" (*i.e.*, they are not earning income), now unable to compete against the Company (by virtue of being subject to the Company's Non-Competition Agreement).[4] This is not Mr. Sluimer.

As to the term "lapse in pay," the legal dictionaries and case law define "lapse" as the "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred," not a mere "decrease" in pay.[5] The Plan is

---

[4] Defendants agree with Mr. Sluimer that it would be completely unreasonable to demote the president of a company to a janitorial position, as Mr. Sluimer argues at page 9, line 26 through page 10, line 4 of his opposition brief. But every contract under California law contains an implied covenant of good faith and fair dealing, which prevents parties from taking such bad faith actions, and nothing resembling this far-fetched hypothetical is at issue here.

[5] Black's Law Dictionary defines "lapse" as the "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred." *Black's Law Dictionary* at 896 (8th ed. 2004). Ballentine Law Dictionary defines "lapse" in similar fashion: "A termination, particularly of a right or privilege. A forfeiture caused by one's failure to perform some necessary act." *Ballentine Law Dictionary* 709 (3d ed. 1948). *See also Adams v. Paul*, 11 Cal.4th 583, 590 (1995) ("the cause of action is destroyed by the *lapse* of the period of limitations"); *Pennsylvania R. Co. v. Midstate Horticultural Co.*, 21 Cal.2d 243, 247 (1942) ("The general rule governs unless the action is created by statute and the language of definition requires a construction that the case of action is destroyed by the *lapse* of the period of limitations provided by the statute."); *Ledbetter v. Goodyear Tire & Rubber Co.*, Inc., 127 S.Ct. 2162, 2173 (2007) ("the claimant has lost any right of action by *lapse* of time"); *Scott v. Federal Life Ins. Co.*, 200 Cal.App.2d 384, 391-92 (1962) ("*Lapse* is defined as the termination of a policy's coverage at the end of a policy period, resulting from the insured's failure to pay premiums or otherwise manifest the intent to renew the policy"); *Bell v. Wolfish*, 441 U.S. 520, 575 (1979) ("the protections of the Fourth Amendment do not *lapse* at the jailhouse door"); *MW Erectors, Inc. v. Niederhauser Ornamental and Metal Works Co., Inc.*, 36 Cal.4th 412, 427 (2005) ("if there was a *lapse* in licensure at any time during performance of a contract, one cannot sue on the entire contract"); *Mickens v. Taylor*, 535 U.S. 162, 182 (2002) ("a severe *lapse* in his professional duty") (emphasis added to the word "lapse" in all of the above quotations).

a legal document. The words used in the contract should be given their ordinary legal meaning. This is not consistent with a mere "decrease" in commissions, as Mr. Sluimer suggests. There was no "lapse in pay." The Plan Administrator did not abuse his discretion in so concluding.

## II.

## ADDITIONAL POINTS AND AUTHORITIES RESPONSIVE TO THE OPPOSITION

**A.    Mr. Sluimer's Claim That He Lacked Knowledge of the Requirement to Sign the General Waiver and Release Is Frivolous.**

Mr. Sluimer declares that "[n]o one, including but not limited to Mr. Kanter, ever informed me that my claim would be denied if I did not execute a Release." (Sluimer Decl., ¶ 11) This misses the point. Mr. Sluimer and his counsel had copies of the Plan. Mr. Sluimer references the Plan in his correspondence with the Plan Administrator. His Dutch counsel references the Plan in their submissions to the Dutch court (submitted before Mr. Sluimer's May 1, 2006 notice to the Plan Administrator). And his current ERISA lawyers obviously have a copy of the Plan on which this lawsuit is based. *The Plan, itself, at Section 7(a), sets forth the release requirement in plain and unambiguous terms*.

If Mr. Sluimer had any questions about this provision of the Plan, there was nothing preventing him or any of his lawyers from contacting the Plan Administrator, at the address set forth at Section 11(a) of the Plan, and requesting clarification. Mr. Sluimer's professed lack of notice concerning the requirement is of no moment in this lawsuit for at least five reasons:

One: Mr. Sluimer is presumed to have read the entire agreement and is bound by its terms, even if he claims not to have done so. "A party who signs a written agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it." *Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188,1192 (9th Cir. 1996); *Hulsey v. Elsinore Parachute Center*, 168 Cal.App.3d 333, 339 (1985) ("one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.") A leading treatise explains this principle:

> The operating premise that all parties know what's in the contract (though subject to its own list of exceptions) draws upon each party's duty to read and understand the contract. Passing up the opportunity to read a contract is like speeding along a

7

> two lane highway while pulling out to zoom past an 18 wheeler with one eye shut and the other closed. One who chooses not to read the contract is still charged with whatever duties the agreement imposes as if it had been read and understood.

27 Williston on Contracts § 70:113 (4th Edition, 2008)

Two: The attached releases – even if they were executed at different times – were part of a single agreement between Mr. Sluimer and Verity, which he is presumed to have read in its entirety. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code Section 1642.

Three: Mr. Sluimer had an affirmative duty to inquire further of the Plan Administrator if he did not have copies of the exhibits referenced in the Plan. The Plan states that "[i]n order to be eligible to receive benefits under the Plan, a Participant also must execute a general waiver and release in substantially the form attached hereto …." (Emphasis added) If, in fact, Mr. Sluimer had not received these referenced attachments, the foregoing language clearly should have prompted Mr. Sluimer to inquire further. "Failure to make reasonable inquiry to ascertain or effort to understand the meaning and content of the contract upon which one relies constitutes neglect of a legal duty such as will preclude recovery for unilateral mistake of fact." *Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605, 615 (1975). Mr. Sluimer's failure to make such an inquiry bars the relief he seeks here. *See, e.g., Aero Consulting Corp. v. Cessna Aircraft Co.*, 867 F.Supp. 1480, 1489 (D. Kan. 1994) ("If Revision A in fact were not attached to the change order provided to Mr. Morales, he had a duty to find out what it contained before he signed a provision making it a part of the contract.").

Four: The Plan referred Mr. Sluimer to documents that were readily available to him. *See King v. Larsen Reality, Inc.*, 121 Cal.App.3d 349, 358 (1981) (signer of contract bound by the terms of a referenced document because it "was readily available to appellant.") It merits emphasis that if Mr. Sluimer actually lost his copy of the Plan or the attachments, the entire document, as well as each of the form Releases B, C, and D, is publicly available (part of Verity's 10-K SEC filing for the year ended May 31, 2005, filed August 12, 2005) and can be downloaded from the Internet in a matter of seconds. (*See* Defendants' Request for Judicial Notice, Docket No. 30.) Mr. Sluimer was an executive officer of the company, whose biography

was included in the main SEC filing, whose compensation was specifically summarized in Ex. 10.17 thereto, and who held significant stock options in the Company. Certainly, he had compelling reasons to review the company's 10-K report. The 10-K was sufficient to put him on constructive if not actual notice of the release documents attached to the Plan. *See Inamed Corp. v. Medmarc Cas. Ins. Co.*, 258 F.Supp.2d 1117, 1124 -25 (C.D. Cal. 2002) ("[Plaintiff's] filing of its Form 10-K placed Defendant on constructive notice of the potential liability . . .."); *Eckstein v. Balcor Film Investors,* 58 F.3d 1162, 1169 (7th Cir. 1995) ("SEC filings are public documents and give constructive notice to ordinary investors of their contents.")

Five: Contrary to Mr. Sluimer's statement in his declaration, the Plan Administrator *repeatedly* informed Mr. Sluimer that he would not be entitled to benefits because of his failure to execute the required waiver and release. (Kanter Decl., Exs. F, H & J) In response, Mr. Sluimer never once claimed that he or his counsel lacked knowledge of this requirement, that he did not have a copy of the releases, or that he or his counsel failed to appreciate the applicability of this provision to him as a participant in the Plan.

**B.** **Mr. Sluimer Cannot Claim a Lack of Knowledge Concerning the Requirement That He Confirm In Writing That He Would Be Subject to the Company's Confidentiality and Non-Competition Agreements.**

Mr. Sluimer claims that he "was always willing to be subject to a Confidentiality Agreement and Non-Compete Agreement and repeatedly confirmed so in writing by way of emails and the documents that [he] filed in the Dutch Court." (Sluimer Decl., ¶ 10) He also suggests that he was diligent in his efforts to obtain a copy of this document because his ERISA litigation counsel requested a copy in the fall of 2007. (Reilly Decl., HS-0086 – HS 0087; Opposition Brief, p. 6, lines 17-21) The problem with the latter suggestions is that these communications from his counsel occurred over a year after the decision to deny Mr. Sluimer benefits, and Mr. Sluimer had been free to compete against the Company during this entire time (*i.e.*, negating the purpose of this provision). As to his remaining contentions:

One: Nothing that his counsel ever stated in the Dutch Lawsuit – the record of which was not before the Plan Administrator – is admissible in this action seeking to determine

9

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

whether the Plan Administrator abused his discretion in rendering his decision to deny Mr. Sluimer benefits.  (*See, infra,* Section II(E))

<u>Two</u>:  The undersigned counsel has reviewed all of the English-translated documents in the record and has been able to find only two references to a "confidentiality" and "non-compete" agreement made by Sluimer's Dutch counsel.  (Reilly Decl., Ex. E, HS-0399, HS-0401)  The document, which is not signed, suggests that "[Mr.] Sluimer was prepared to do that" (HS-401) – *not that he actually did so* <u>and</u> *not that ever told the Plan Administrator he intended to do so*.  The undersigned counsel, moreover, has been unable to find a single email (as Mr. Sluimer claims in his declaration) or other document that Mr. Sluimer submitted to the Dutch court suggesting that he was, in fact, "prepared to do that."

<u>Three</u>:  In the letters that Mr. Sluimer actually submitted to the Plan Administrator on July 13, 2006 and February 27, 2007 in which he discusses these agreements, Mr. Sluimer did not confirm that he would be subject to them; instead he argued that it was not necessary to sign them because he had already signed a "comparable" agreement fifteen years earlier.

<u>Four</u>:  Mr. Sluimer cannot claim a lack of notice of this condition precedent because: a) the condition is set forth in the Plan itself; b) the Plan was in Mr. Sluimer's possession; c) the Plan was publicly available and could be downloaded it from the internet in a matter of seconds; and d) the Plan Administrator reminded him of this obligation three separate times in writing.

### C.    **<u>Mr. Sluimer's Request That The Court Rewrite the Plan to Alter the Definition of "Immediate Reemployment" Must Be Rejected.</u>**

Mr. Sluimer argues that because he supposedly suffered a "Constructive Termination," he automatically is entitled to benefits under the Plan.  In other words, the Court should disregard Section 3(b)(iii) of the Plan, which provides that employees offered "immediate reemployment" are not eligible for benefits.

Recognizing that his argument is at odds with the language of the Plan, Mr. Sluimer further argues that the "constructive termination" provision of the Plan must be read "in conjunction with" the "immediate reemployment" provision so that "'immediate reemployment' means reemployment in the same or a comparable job." (Opp. at 11:6-7.)   The Plan, however,

10

does not support such an approach. Neither section references the other; nor is there anything in Section 3(b)(iii) that makes its application dependent on whether or not the job is comparable.

This flaw in Mr. Sluimer's argument – that the two provisions of the Plan should be tied together despite the lack of any language in the Plan supporting such an interpretation – is illustrated by *Santini v. Cytec Industries,* 537 F.Supp.2d 1230 (S.D. Ala. 2008). In that case, a severance benefit plan contained two exclusions, providing that an employee was not entitled to benefits if: (1) the employee was "offered but refused to accept another reasonably comparable (in terms of location, compensation and job level) position with the organization;" or (2) the employee was "provided the opportunity to be employed by a successor employer." *Id*. at 1246. The division for which the employee worked was sold, and the employee was offered a job with the purchaser. The employee declined that position, and instead sought severance benefits. The employer denied the application. The employee sued, arguing that the position with the purchaser was not comparable.

In analyzing the propriety of the decision to deny benefits, the court held that the position was in fact comparable. The court also considered the application of the second exclusion, and held that even if the position were not comparable, the employee was not entitled to benefits:

> Moreover, the Plan uses the word "or" rather than "and" between the two exclusion clauses. Thus, the court finds that the clear language of the plan does not even require retention by a successor be for a comparable position. The Plan excludes plaintiff if he was "provided the opportunity to be retained by a successor employer." As such, the court finds that the decision to deny severance payments under the Plan was clearly correct.

*Id.* at 1247.

Similarly, here, there are two independent provisions of the Plan: the "constructive termination" provision and the "immediate reemployment" provision. There is nothing in the "immediate reemployment" provision that requires that it be read in conjunction with the constructive termination provision. Nor is there anything in this provision that limits the definition of "immediate reemployment" to situations in which an employee is offered a comparable position. Finally, there is nothing in the record to suggest that the Plan Administrator abused his discretion in interpreting the document in this manner, and under an

abuse of discretion standard, his interpretation should be accorded some deference here.

Nor is there any merit to Mr. Sluimer's contention that either the doctrine of *contra proferentem* (construing the terms of the contract against the drafter) or the doctrine of "reasonable expectations" (honoring the reasonable expectations of the parties) requires the Court to rewrite the Plan and redefine the term "immediate reemployment" to enable Mr. Sluimer to obtain benefits.

As to the *contra proferentem* doctrine, *Blakenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 625 (9th Cir. 2007), which was cited by Sluimer in his Opposition, makes clear that the *contra proferentem* doctrine has no application to this case. In particular, in *Blankenship*, the Ninth Circuit reiterated the well-established rule that the *contra proferentem* doctrine does not apply "where the plan: (1) grants the administrator discretion to construe its terms, (2) is the result of a collective-bargaining agreement, or (3) is self-funded." *Id.* Here, the Plan plainly grants the Plan Administrator precisely such discretion to construe its terms (Section 8(a)), and it is a self-funded Plan. The doctrine does not apply.

As to the "reasonable expectations" doctrine, the only case cited by Sluimer in support of his argument that the Plan must be reformed based on this doctrine – *Salterelli v. Bob Baker Group Medical Trust,* 35 F.3d 382 (9th Cir. 1994) – is easily distinguished from this case. There, the court found that the exclusion at issue was hidden in the plan document, without a heading, and requiring a "coordinated reading of three separate definitions" to comprehend. *Id.* at 385. By contrast, here, the language of the "immediate reemployment" provision is clear and unambiguous – set forth under the conspicuous heading (in bold text) "**Exceptions to Benefit Entitlement**." The "reasonable expectations" of the parties were that the exception would apply to those employees offered "immediate reemployment" as set forth in that section.

Even then, Mr. Sluimer argues that he did not experience "immediate reemployment" because he did not have "uninterrupted employment" due to the Dutch court's decision to terminate his employment contract. This argument lacks merit. At the outset, Mr. Sluimer was the one who initiated the Dutch lawsuit requesting dissolution of his employment contract, even though he could have simply resigned his position if were uncomfortable with the post-

acquisition structure and claimed benefits under the Plan. The Dutch court terminated that contract in response to Mr. Sluimer's request that he do so. Mr. Sluimer cannot use his own action for dissolution as the basis for requiring Defendants to pay his severance benefits.

What's more, although Mr. Sluimer was suing Autonomy in the Netherlands, Autonomy never terminated his contract and continued to pay him his full salary and benefits. In a word, his employment was uninterrupted with no lapse in pay. Mr. Sluimer nevertheless seeks to persuade the Court that he suffered a lapse in pay because of a purported decrease in his commissions. (Opp. at 11.) However, Mr. Sluimer has not presented any evidence that the manner in which his commissions were calculated changed in any way. There was no such change. (Kanter Decl., ¶¶ 7-8.) That Mr. Sluimer's commissions may have decreased does not mean that he suffered a "lapse in pay." This simply means that the commissions he earned on the Verity products he managed apparently decreased after Autonomy acquired Verity, which could have been for any number of market-based reasons, including the previous competition between Autonomy and Verity, marketplace disruption associated with the acquisition, and sales force attrition. Mr. Sluimer offers nothing but conjecture to suggest otherwise.

**D.      Mr. Sluimer's Compliance With the Plan Is Not Excused for "Futility"**

At pages 7-8 of his opposition brief, Mr. Sluimer argues that he should be excused from complying with the conditions of the Plan – *i.e.*, executing a release or confirming that he would be subject to the Confidentiality and Non-Competition Agreements – because he believed that his claim would eventually be denied anyway. In other words, compliance with the procedures of the Plan would have been futile. This argument has no merit whatsoever here.

The only case cited by Mr. Sluimer to support this "futility" argument – *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974 (9th Cir. 2001) – does not even remotely resemble this case. In *Dishman*, there was *no administrative process* to comply with:

> No administrative review preceded UNUM's decision to suspend Dishman's benefits. Thus, Dishman could not have easily submitted the belatedly-proffered material to his plan administrator before the initial termination decision was made. Dishman could have submitted the materials clarifying his relationship with Semiotix after UNUM suspended his benefits, but in light of the fact that UNUM told him no appeals process applied to him, one can hardly fault him for not doing so. In this case, there was no administrative process to speak of, and hence there

is no administrative record.

*Id.* at 985-86 (internal quotations and alterations omitted).

That is a far cry from the situation here, where specific procedures were established by the Plan, and then followed to the letter by the Plan Administrator. There was nothing preventing Mr. Sluimer from upholding his end of the bargain. True, the individual who became the Plan Administrator was not persuaded in his email exchanges with Mr. Sluimer in the spring of 2006 that the Neurodynamics position would have constituted (generically, without reference to the Plan because Mr. Sluimer never mentioned it) "constructive termination."

But that did not give Mr. Sluimer the right to ignore his other obligations under the Plan – including failing to sign the required release, failing to confirm that he would be subject to the confidentiality and non-competition agreements, failing to provide proper notice to the Plan Administrator, and failing to provide the Company with its contractual right to cure – simply because he might have assumed that his efforts to obtain benefits would be fruitless at the end of the day (notably, the notion of "futility" has been mentioned for the first time in these proceedings, despite significant earlier correspondence between the parties). Cure provisions enable both parties to change course and correct their prior actions if, upon further consideration, change seems warranted. Mr. Sluimer deprived the Company of that important right here.

### E. **The Record of the Dutch Court Proceedings Is Irrelevant and Inadmissible.**

The record of the proceedings before the Dutch court was not before the Plan Adminstator and cannot be subject to judicial notice here. As the District Court noted in *Ramirez v. United Airlines Inc.*, 416 F.Supp.2d 792, 795 (N.D. Cal. 2005):

> While the records of other courts may be proper for judicial notice, such notice is granted only for the limited purpose of recognizing the judicial act that the order [or filing] represents on the subject matter of the litigation. The underlying arguments made by the parties, disputed facts, and conclusions of fact contained in the record are not the subject of judicial notice. Here, defendant does not request notice of the records to show that Ramirez simply filed two other actions Instead, United seeks to use ambiguous statements contained in the records as determinative proof that Mexicana, not United, was the carrier to Mexico City. The Court will not grant such a request.

*Id.* at 795 (citations and internal quotations omitted).

Here, Plaintiff asks this Court to take judicial notice of documents submitted to the Dutch

14
DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

court (often in a foreign language) for the same purpose that the *Ramirez* Court rejected. Plaintiff does not merely seek to establish that he filed an action in a Dutch court. Rather, Plaintiff seeks to persuade this Court that the ruling in the Dutch court (and all underlying submissions) should be considered in review of the Plan Administrator's decision in the instant case. Such information is not only irrelevant for purposes of this Court's review, as it is outside the scope of the materials reviewed by the Plan Administrator in reaching his decision (*see Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)), it is also beyond the scope of information that may be judicially noticed under Federal Rule of Evidence 201.

### III.

### CONCLUSION

Mr. Sluimer cannot, and should not be permitted to, obtain benefits under the Plan. He failed to do what was required of him under the Plan, depriving the Company of the benefit of its bargain. On his own accord, he prosecuted a lawsuit in the Netherlands *prior to* seeking benefits under the Plan, which is fundamentally at odds with the notion of releasing the company. He never agreed in writing to be subject to the Confidentiality and Non-Competition Agreements (in fact, he disputed whether the obligation applied to him) and has been free to compete against his former employer for the past two years. He failed to comply with his procedural obligations under the Plan, even though he was represented by counsel, suggesting now for the very first time that such compliance would be "futile." He was offered "immediate reemployment" by Autonomy with no "lapse in pay." The Plan Administrator did not abuse his discretion in reaching his decision to deny Mr. Sluimer benefits. Respectfully, the Plan Administrator's decision should not be overturned here.

Dated: July 3, 2008                     Respectfully submitted

                                                   DOLL AMIR & ELEY

                                                 By   */s/ Gregory L. Doll*                              .
                                                           Gregory L. Doll

                                                 Attorneys for Defendants VERITY, INC., and THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE E BENEFIT PLAN

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1888 Century Park East, Suite 1106, Los Angeles, CA 90067.

On July 3, 2008, I served the foregoing document(s) described as **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on the parties in this action by serving**:**

| | |
|---|---|
| Joseph M. Rimac, Esq. | Cliff Palefsky, Esq. |
| William Reilly, Esq. | Keith Ehrman, Esq. |
| RIMAC & MARTIN | McGuinn, Hillsman & Palesfsky |
| 1051 Divisadero Street | 535 Pacific Avenue |
| San Francisco, CA 94115 | San Francisco, CA 94133 |
| F: (415) 561-8430 | F: (415) 403-0202 |

( )   **By Envelope** - by placing ( ) the original ( ) a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

( )   **By Mail:**  As follows:  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

(**X**)   **By Electronic Filing:** Based upon my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this Document, upon its submission to the Court, will be electronically served on the addressees.

Executed on July 3, 2008, at Los Angeles, California.

( ) **STATE**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

( **X** ) **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*/s/ Susan Reimers*                              .
Susan Reimers