**RIMAC & MARTIN**
*A Professional Corporation*
JOSEPH M. RIMAC – CSBN 72381
WILLIAM REILLY – CSBN 177550
KEVIN G. GILL – CSBN 226819
1051 Divisadero Street
San Francisco, CA 94115
w_reilly@rimacmartin.com
Telephone: (415) 561-8440
Facsimile: (415) 561-8430

**MCGUINN, HILLSMAN & PALEFSKY**
CLIFF PALEFSKY (State Bar No. 77683)
KEITH EHRMAN (State Bar No. 106985)
535 Pacific Ave.
San Francisco, CA 94133
KAEMHP@aol.com
Telephone: (415) 421-9292
Facsimile: (415) 403-0202

Attorneys for Plaintiff
HUGO SLUIMER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

***E-FILING***

| | |
|---|---|
| HUGO SLUIMER,<br><br>Plaintiff,<br><br>v.<br><br>VERITY, INC., a corporation, and THE VERITY INC. CHANGE IN CONTROL AND SEVERANCE BENEFIT PLAN,<br><br>Defendants. | **CASE NO. C 081220 SI**<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: July 18, 2008<br>Time: 9:00 a.m.<br>Ctrm: 10, 19th Floor<br><br>The Honorable Susan Illston |

**TABLE OF CONTENTS**


I. INTRODUCTION. . . . . 1

II. DEFENDANTS' POINTS IN OPPOSITION. . . . . 1

III. ARGUMENT IN REPLY. . . . . 2

A. KANTER'S DECISION WAS NOT EVEN ARGUABLY CORRECT . . . . .

1. Defendants Have Waived Any Argument that the Job Purportedly Offered to Sluimer Was Substantially Similar to His Old Position . . . . .

2. Defendants' Contention that the Dutch Court Ruling Was Not Before the Plan Administrator is Specious - Either Kanter Was the Plan Administrator or he Was Not - And Defendants Had Notice of Mr. Sluimer's Claim From The Time of The Dutch Action Onward . . . . .

B. COMITY REQUIRES THAT THIS COURT GIVE PRECLUSIVE EFFECT TO THE DUTCH COURT'S DETERMINATION THAT THE TWO JOBS WERE NOT SUBSTANTIALLY SIMILAR . . . . .

C. DE NOVO REVIEW IS APPROPRIATE, AS THE CLAIMS DECISION WAS NOT MADE BY THE PLAN ADMINISTRATOR OR WITHIN THE REQUIRED TIME PERIOD. BUT EVEN UNDER AN ABUSE OF DISCRETION REVIEW, THE DECISION MUST BE OVERTURNED BECAUSE IT WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE . . . . .

1. Kanter Was Not the Plan Administrator When He Summarily Denied Mr. Sluimer's Claim . . . . .

2. There Is No Evidence That Kanter Did Anything to Investigate the Claim . . . . .

3. Defendants' Failure to Provide Documents to Mr. Sluimer Works to Their Own Disadvantage . . . . .

D. MR. SLUIMER IS ENTITLED TO PLAN BENEFITS . . . . .

E. MR. SLUIMER IS ALSO ENTITLED TO STATUTORY PENALTIES . . . . .

V. CONCLUSION. . . . .

# TABLE OF AUTHORITIES

## Cases

*British Midland Airways Limited v. Intl. Travel, Inc.*, 497 F.2d 869 (9th Cir. 1974). . . . . . . . . . 6, 7

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) . . . . . . . . . . 8

*Commercial Ins. Co. of Newark, N. J. v. Pacific-Peru Const. Corp.,* 558 F.2d 948 (9th Cir. 1977) . . . . . . . . . . 6

*Friedrich v. Intel Corp.*, 181 F.3d 1105 (9th Cir. 1999) . . . . . . . . . . 14

*Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997) . . . . . . . . . . 6

*Lujan v. National Wildlife Fed'n,* 497 U.S. 871 (1990) . . . . . . . . . . 8

*Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008) . . . . . . . . . . 2, 8, 13

*Standefer v. United States*, 447 U.S. 10 (1980) . . . . . . . . . . 5, 6

## Statutes and Codes

29 C.F.R. § 2560.503-1. . . . . . . . . . 4, 7, 10

29 U.S.C. § 1132. . . . . . . . . . 2, 11

Federal Rule of Civil Procedure 56 .. . . . . . . . . . 8

## Restatements and Treatises

Restatement (Second) of Conflicts of Laws, § 98 (1971). . . . . . . . . . 6

## I. INTRODUCTION

The argument offered by defendants Verity Inc. and the Verity Inc. Change in Control and Severance Benefit Plan in opposition to the Plaintiff Hugo Sluimer's motion for summary judgment boils down to the largely unsupported assertion that, by his own authority or the undocumented, undated act of some undisclosed board, Andrew Kanter was or became the proper person to handle Sluimer's claim decision – even though he handled no such other decisions – and that he made the correct decision. Defendants also claim that Mr. Sluimer was not eligible for benefits because they offered him another job, and the fact that the new job was far lower in status, pay, responsibility and authority was irrelevant. Further, defendants claim Mr. Sluimer's failure to sign some general waiver and release of all claims they never provided him resulted in his benefits claim not even being eligible for consideration. Defendants gloss over the fact that the two rationales for their denial are mutually exclusive – if he was not terminated, there would be no need for him to even consider signing a waiver of claims or non-compete agreement. Lastly, though defendants now apparently admit that the job they offered Mr. Sluimer was not substantially similar to his former position, defendants nonetheless claim that the Dutch Court's decision is irrelevant and that this Court is constrained from reversing defendants' claims decision by the abuse of discretion standard. None of these are valid arguments.

Defendants do not meet their burden in opposing summary judgment, and plaintiff's motion should be granted.

## II. DEFENDANTS' POINTS IN OPPOSITION

Defendants provide three broad arguments in opposition to summary judgment: (1) Kanter's decision was correct; (2) collateral estoppel does not apply; and (3) the court should employ straightforward abuse of discretion review because defendants suffered no conflict of interest. (*Def's Opp.*, 2-24.)

Defendants do not oppose, and thus waive any argument that Mr. Sluimer was not offered a substantially similar position, as defined by the Plan (*Pl's Mot.* 28:4-30:5); that the Plan did not provide Mr. Sluimer with the Release or a Confidentiality Agreement or a Non-Compete Agreement that it maintained he was required to execute (*Pl's Mot.* 24:11); that the Plan did not issue a benefits

decision within the 60 days specified by the terms of the Plan (*Pl's Mot.* 21:26-22:24); that the Court's Scope of Review is limited to the Administrative Record produced by the Plan Administrator, supplemented by plaintiff and that defendants may not supplement the Administrative Record (*Id.* 25:2-28:1); that Mr. Kanter should be removed as Plan Administrator (*Id.* 25:2-28:1); that the 12 month "Extended Exercisability" period should be measured from the date the vested purchase options are provided to Mr. Sluimer (*Id.* 34:2); and that Mr. Sluimer's 18 months of Continued Medical Benefits are to reimbursed in the amount €3,873.30 (*Id.* 34:7).

## III. ARGUMENT IN REPLY

The Supreme Court recently reaffirmed:

> ERISA . . . sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," (citation); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

*Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2350 (2008). Employers that administer their own benefits plan – that both determine whether an employee is eligible for benefits and pay benefits out of its own pocket – operate under a conflict of interest. *Id*., at 2346. That conflict is "of great importance" where circumstances suggest a higher likelihood that it affected the benefits decision. *Id*., at 2351.

Here, circumstances suggest that the defendants completely disregarded their fiduciary duties, and simply decided Sluimer's claim in the way that best suited their own self-interest. Nowhere is there any evidence that Kanter and the defendants discharged their fiduciary duties "solely in the interests of the participants and beneficiaries" of the Plan. Rather, their overarching self-interest was and remains on full display. There is no evidence at all of any efforts by the defendants to ensure accurate claims assessment. Nor was there any "full and fair review" of the claim denial. There was not even a reasoned denial: Kanter never explained how and why the two jobs were substantially similar. Rather, the defendants engaged in procedural unreasonableness – requiring Sluimer to have already signed documents they never provided; suggesting that Sluimer's claim was late, even

though they had already denied the claim by the time their suggested deadline came and went – and took inconsistent positions – claiming that Sluimer was never terminated, and alternately claiming he should already have realized he had been terminated, searched for and signed a waiver of all claims and general release. There is nothing but bluster and facade supporting the defendants' position. Summary judgment is warranted.

**A. KANTER'S DECISION WAS NOT EVEN ARGUABLY CORRECT**

The defendants contend the claim denial was "correct" and cite four grounds for denial of benefits:

(1) to be eligible for benefits, the Plan required that Sluimer execute a general waiver, and he did not;

(2) to be eligible for benefits, the Plan required that Sluimer confirm in writing he would be subject to a non-competition agreement, and he did not;

(3) to be eligible for benefits, the Plan required Sluimer to "timely deliver" a Notice of Constructive Termination, and Sluimer failed to do so in a timely fashion; and

(4) Sluimer was offered another job, and it is irrelevant that it was not substantially similar to the one he previously had.

(*Def. Opp*, at 1-2.)

As explained in plaintiff's opposition to the defendants' motion to dismiss, none of these grounds square with the plain language of the Plan. (*See Plaintiff's Opp. to Def's Mot. Dismiss*, 5-16.) (for brevity's sake, plaintiff will not repeat these arguments here, but simply refers the Court to plaintiff's opposition.)

**1. Defendants Have Waived Any Argument that the Job Purportedly Offered to Sluimer Was Substantially Similar to His Old Position.**

It is important to note that one of the grounds for the denial of benefits stated in Mr. Kanter's letters was that Mr. Sluimer did not suffer a "Constructive Termination" within the meaning of the Plan. Defendants have abandoned that argument, as they no longer contend that the job offered to Mr. Sluimer was substantially similar to his prior job (it was not). Defendants did not assert that the two jobs were substantially similar in their motion, nor did they oppose plaintiff's argument that he

was not offered a substantially similar position. (*Plaintiff's Mot.* 28:4-30:5). Thus, as the defendants now concede that Mr. Sluimer suffered "a substantial reduction in [his] duties or responsibilities," the Court need only determine that the "immediate reemployment" provision does not override and render superfluous the "constructive termination" provision, that Mr. Sluimer provided timely notice of his constructive termination and that his claim could not have been denied based upon the purported failure to execute documents that the Plan Administrator never provided to the claimant, and which, even if they were required, would only be required before benefits were paid, and not as a precondition to eligibility.

**2. Defendants' Contention that the Dutch Court Ruling Was Not Before the Plan Administrator is Specious - Either Kanter Was the Plan Administrator or he Was Not - And Defendants Had Notice of Mr. Sluimer's Claim From The Time of The Dutch Action Onward.**

Defendants speciously contend that the "record of the Dutch court was not before the Plan Administrator" and that the written statements made therein of Mr. Sluimer's "willingness to be subject to the Company's Non-Competition and Confidentiality Agreements" did not amount to confirmation to the Plan Administrator. (*Def. Opp*, at 6:27, 7:15.)

This contention flies in the face of the defendants contention that Mr. Kanter was the Plan Administrator on and before May 1, 2006. It is undisputed that Mr. Kanter was defendants' representative in the Dutch Court, attended the May 30, 2006 hearing and testified. Either Mr. Kanter was the Plan Administrator or he was not. Defendants' topsy-turvy "Now I have this hat on, wait, now I have this hat on" game is clear evidence of bad faith.

Mr. Kanter's September 30, 2006 letter sates in relevant part: "You reference the 7 Jury 2006 decision of the Cantonal Court in the Netherlands as evidence supporting your position[1]. . . [and that] . . .the Cantonal Court decision has been considered in reaching this decision." *Sluimer Dec.* Ex. A HS-0065-67. Defendants' claims that Mr. Sluimer didn't give proper or timely notice are equally specious, as the Dutch Court proceedings had already completed, and defendants had already denied the claim long before defendants' alleged 90 day deadline elapsed.

[1] Pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iv) the Plan Administer was required to take into account and include in the Administrative Record Mr. Sluimer's evidence presented to the Dutch Court based upon his reference to it in his letters to the Plan Administrator.

Defendants' notice argument and their claim that Mr. Sluimer never properly indicated he would sign a general waiver or covenant not to compete or whatever else they come up with are all – in addition to being completely specious – outside the central question of whether Mr. Sluimer suffered a constructive termination which would entitle him to benefits. He did. Summary judgment is warranted.

**B. COMITY REQUIRES THAT THIS COURT GIVE PRECLUSIVE EFFECT TO THE DUTCH COURT'S DETERMINATION THAT THE TWO JOBS WERE NOT SUBSTANTIALLY SIMILAR.**

Defendants contend that neither they nor this Court were or are required to give collateral estoppel effect to the Dutch Court's finding of fact that the job the defendants offered to Sluimer was not substantially similar to the job he held at Verity. (Opp. at 14-15.) Alternatively, defendants contend that Sluimer has not shown "with clarity and certainty" what was determined in the Dutch Court's decision. (Opp. at 14.)

The Dutch Court's decision speaks for itself as to the "clarity and certainty" of its findings. The issue which deserves collateral estoppel effect is not the Dutch Court's calculation of the appropriate benefit pursuant to "neutral cantonal judge formula" nor is it whether the Dutch Court properly interpreted the Plan or found constructive termination. Mr. Sluimer's entitlement to benefits under ERISA was not decided by the Dutch Court. What was before the Dutch Court was the underlying facts of Sluimer's predicament – the job description of Sluimer's former position at Verity and the description of the job the defendants were purportedly offering in its place. Weighing the two descriptions and determining whether they are equivalent is a factual, not a legal, determination. It is that factual determination – that the two jobs were not substantially similar – that deserves consideration.

Defendants contend the case of *Standefer v. United States*, 447 U.S. 10 (1980) weighs against collateral estoppel, and quotes a few choice words from *Standefer* to suggest that the unavailability of appellate review strongly militates against giving an action preclusive effect. (Op., at 17).

*Standefer* dealt with a criminal case, and the question of whether a person could be convicted of aiding and abetting a principal who had himself been acquitted. The Court discussed concerns that the passions of a jury that may override their deliberative duty and result in an otherwise

inappropriate acquittal, and determined that the acquittal of the one was not to be given preclusive effect in the trial of the other. *Standefer v. U. S.*, 447 U.S. 10, 21-22 (1980). The *Standefer* Court noted that, in civil cases, post trial motions and appellate review give the aggrieved litigant a remedy against jury verdicts induced by passion and prejudice, but that such remedy is not available to the government upon an acquittal in a criminal matter. *Id*.

Nevertheless, the *Standefer* court noted:

> This is not to suggest that the availability of appellate review is always an essential predicate of estoppel. (citations). The estoppel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted.
> . . .
> In short, this criminal case involves "competing policy considerations" that outweigh the economy concerns that undergird the estoppel doctrine.

*Standefer*, 447 U.S. at 23 n. 18, 25 (internal citations omitted). *Standefer* is thus not applicable. Similarly, the other case cited by defendants, *Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997) dealt with the question of giving preclusive effect to a state court's interlocutory determination, and decided not to do so, because the decision was unappealable. *Id*., at 1122.

Neither the *Standefer* court nor the *Lombardi* court considered when and whether to give preclusive effect to decisions of a foreign sovereign nation.[2] Defendants refer to the Restatement of Judgments, but do not even acknowledge that the issue here involves the conflict of laws (Dutch versus United States) and not a question of the finality of a determination within the United States.

Here, the question is one for the conflict of laws, and the rule is clear:

> A valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States so far as the immediate parties and the underlying cause of action are concerned.

Restatement (Second) of Conflicts of Laws, § 98 (1971); *see Commercial Ins. Co. of Newark, N. J. v. Pacific-Peru Const. Corp.,* 558 F.2d 948, 952 (9th Cir. 1977) (citing the Rest. 2d Confl., § 98 as authority); *British Midland Airways Ltd. v. Intl. Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974) ("It has long been the law that unless a foreign country's judgments are the result of outrageous

[2] Interestingly, the declaration of Dutch attorney Jochem de Roos filed with the defendants' Opposition does not state that Verity had no means to seek reconsideration by the Dutch Court, and does not address any other avenue of appeal.

departures from our own motions of 'civilized jurisprudence,' comity should not be refused")

Mr. de Roos' declaration states quite clearly that Verity received a "fair trial in a contested proceeding:"

> 2. I represented Verity Benelux B.V. ("Verity") in a lawsuit filed by Hugo Sluimer in the Netherlands. Mr. Sluimer's petition in that matter sought dissolution of his employment agreement with Verity and was based on Article 7:685 of the Dutch Civil Code. A true and correct copy of Article 7:685 (translated into English) is attached hereto as Exhibit A.
> 3. In a proceeding under Article 7:685, the party seeking dissolution must make it plausible that it is reasonable that the employment agreement is terminated immediately or at short notice. The other party may produce contradicting statements or evidence.

Decl. de Roos, at ¶¶ 2, 3.

Mr. De Roos's declaration confirms that the defendants received a "fair trial in a contested proceeding," and comity must not be refused. *British Midland Airways* 497 F.2d at 871. Defendants do not argue that the Dutch Court's decision resulted from "outrageous departures from our own motions of 'civilized jurisprudence.'" *See Id*. Comity requires that the Dutch Court's determination that the position the defendants offered to Sluimer was not substantially similar to the one he previously had at Verity be given preclusive effect.[3]

**C. DE NOVO REVIEW IS APPROPRIATE, AS THE CLAIMS DECISION WAS NOT MADE BY THE PLAN ADMINISTRATOR OR WITHIN THE REQUIRED TIME PERIOD. BUT EVEN UNDER AN ABUSE OF DISCRETION REVIEW, THE DECISION MUST BE OVERTURNED BECAUSE IT WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Defendants assert that their claims decision is entitled to deference and should be reviewed

---

[3] Furthermore, even if the Plan Administrator was not required to give the Dutch Court's decision preclusive effect (which he was), he would have been required to take "into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv). The Plan Administrator could not "arbitrarily refuse to credit a claimant's reliable evidence." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Here, the Plan Administrator was not involved. Mr. Kanter, who made the claims decision, refused to give any credit to the Dutch Court's decision. Mr. Kanter's September 30, 2006 letter that stated:

> You reference the 7 July 2006 decision of the Cantonal Court in the Netherlands as evidence supporting your position. Section 10 of the Plan clearly states that the Plan is governed by the laws of the State of California. There are of course very substantial differences between Dutch and California employment law, such as the applicable rules and regulations, factors considered by the Cantonal Court and standards of evidence. Thus whilst the Cantonal Court decision has been considered in reaching this decision, it is neither binding on the Company for purposes of the Plan nor persuasive in reaching this decision."

The letter did not explain what the alleged differences in law were, or why they should result in rejection of the Dutch Court's reasoned opinion. The refusal to credit the Dutch Court's decision, much less give a reasoned analysis as to why it could be ignored, was a clear abuse of whatever discretion was afforded to Mr. Kanter, if any.

under the abuse of discretion because (1) Kanter was the plan administrator; (2) he was not self-interested, (3) he adequately investigated the claim; (4) he had no duty to defer to the Dutch Court's ruling; and (5) he provided all proper documentation to Mr. Sluimer. (Opp., at 19-23.) There is no documentary support for any of these assertions.

Where, as here, a party moving for summary judgment sustains its initial burden of identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The nonmoving party must not simply rely on the pleadings and must do more than make conclusory allegations in an affidavit. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, at 322.

First off, Kanter suffered under a *per se* conflict of interest. *Glenn*, 128 S.Ct. at 2346. That conflict was express and clear: Mr. Kanter "was part of the core team making decisions regarding the integration of the entities." As Autonomy's Chief Operating Officer, Mr. Kanter's, post-merger task was to "remove unnecessary costs that are a direct result of duplication caused by the merger and therefore maintain competitiveness." *Sluimer Dec.* Ex. A HS-0020. The conflict of interest is both real and definite.

Second, Kanter and the defendants offer nothing other than Kanter's conclusory declaration to support their contentions, and summary judgment is thus warranted. Third, as explained below, by his own surreptitious admission, Kanter was not the Plan Administrator when he denied Mr. Sluimer's claim. Finally, Kanter's unsupported claim that he adequately investigated Mr. Sluimer's claim and provided all proper documentation to Mr. Sluimer are without basis. Mr. Sluimer is entitled to summary judgment.

/ / /

/ / /

**1. Kanter Was Not the Plan Administrator When He Summarily Denied Mr. Sluimer's Claim**

On April 6, 2005 Verity, Inc. established the Plan. HS-0001. The Plan identified "the Plan Administrator [a]s: Verity, Inc. Attn: Vice President Human Resources." HS-0010. From April 2005 through September 2006, Verity's Vice President of Human Resources was Jack Landers. As Vice President of Human Resources, Mr. Landers was the Plan Administrator up through September 2006, when he parted ways with Verity. *Ehrman Dec.,* Ex. A (Landers Depo, 12:9–13:25; 16:11–15; 18:19–19:11; 31:22–32:19). As Plan Administrator, Mr. Landers ensured that claims were processed and payments made under the Plan after the change in control. *Id.* , Ex. A (Landers Depo, 38:9-19). At no time did Mr. Landers delegate his duties as Plan Administrator to any other person. Nor did the Verity board of directors or anyone else ever inform Mr. Landers that he had been relieved of his duties as Plan Administrator. *Id.*, Ex. A (Landers Depo, 19:12–20:11).

On January 6, 2006, while Mr. Landers was still Plan Administrator, Mr. Kanter sent an email to an Autonomy coworker that stated:

> One matter that may come to your attention is any final determination on Hugo [Sluimer]. We have to follow the formal process required by law, and I've sent him the requisite letter and spoken to him. Unfortunately I fear that Hugo may already be positioning against the company as he sent me an email which is simply not true. In any event I urge to pass back to me any communications or matters that may come up with Hugo. The legals are complicated enough so that it's easy to let a small mistake become fatal. We are committed to running a fair, open and honest procedure with Hugo but need to keep the channel formalized.

*Sluimer Dec.* Ex. A, HS-0022.

On January 8, 2006, Mr. Kanter forwarded the above January 6, 2006 email to the Plan Administrator Jack Landers. Additionally, he included the following:

> I sent the message below to Anthony on Friday. Can I ask you as well that any communication you get from Hugo be forwarded to me. It's easier to get this process wrong than right and we're committed to the proper process.

*Sluimer Dec.* Ex. A, HS-0022.

On May 1, 2006, Mr. Sluimer wrote to Plan Administrator Jack Landers. The letter stated that Mr. Sluimer believed he was entitled to Plan benefits and requested that the Plan Administrator contact him if he needed more information. *Sluimer Dec.* Ex. A, HS-0057.

On May 3, 2006, Mr. Sluimer received a response, not from Mr. Landers, but from Mr. Kanter, stating that Mr. Sluimer was not entitled to Plan benefits.[4] Kanter explained:

> I write on behalf of Verity, Inc. I refer to the fax dated 1 May 2006 which was addressed to Mr. Jack Landers. Mr. Landers has forwarded this document to me as you are currently in a legal dispute with Verity, Inc. regarding your employment and thus I am responsible for all communications.

*Sluimer Dec.* Ex. A, HS-0058. Mr. Kanter did not claim that he was the Plan Administrator or that Mr. Landers was not the Plan Administrator. He did however sign the letter as "Company Secretary" for Autonomy. *Id*.

On July 6, 2006, Mr. Kanter again wrote to Mr. Sluimer on "behalf of Verity, Inc."[5] Mr. Kanter again stated that Mr. Sluimer's claim for benefits was denied, but now offered him the right to appeal as required by the Plan and ERISA. 29 C.F.R. § 2560.503-1(g)(iv). Further, Mr. Kanter directed Mr. Sluimer to appeal the decision to the attention of Verity, Inc.'s Vice President of Human Resources, Jack Landers. Mr. Kanter still was not claiming to act as the Plan Administrator, nor did he claim that Mr. Landers had ceased to be the Plan Administrator. Instead, Mr. Kanter again asserted his authority by signing the letter as "Company Secretary" for Autonomy. *Sluimer Dec.* Ex. A, HS-0058.

On July 13, 2006, Mr. Sluimer drafted a letter attempting to appeal to Plan Administrator Jack Landers. *Sluimer Dec.* Ex. A, HS-0061.

On September 29, 2006, Mr. Kanter again responded to Mr. Sluimer's July 13, 2006, again affirming the denial of benefits on "behalf of Verity, Inc."[6] This time, however, Mr. Kanter signed

---

[4] This May 3, 2006 letter fell far short of ERISA requirements: (1) it failed to state what was needed to perfect the claim; (2) it didn't provide necessary Plan documents; (3) it didn't inform of appellate rights; (3) it was not issued by the Plan Administrator; and (5) it failed to reference any evidence to support the decision to deny. It was clear the defendants did not even attempt to comply with ERISA requirements.

[5] As with the May 3, 2006 letter, this July 6, 2006 letter also fell far short of ERISA requirements: (1) it failed to state what was needed to perfect the claim; (2) it didn't provide necessary Plan documents; (3) it was not issued by the Plan Administrator; and (4) it failed to reference any evidence to support the decision to deny. This shows a repetitive, wholesale and flagrant failure to comply with ERISA requirements.

[6] As with the May 3, 2006 and July 6, 2006 letters, the September 29, 2006 letter also fell far short of ERISA requirements: (1) it failed to state what was needed to perfect the claim; (2) it didn't provide necessary Plan documents; (3) it was not issued by the Plan Administrator; and (4) it failed to reference any evidence to support the decision to deny. This shows a repetitive, wholesale and flagrant failure to comply with ERISA requirements, and that the denial of

the letter as "Chief Operating Officer - Autonomy Group of Companies," and further stated:

> Your letter was addressed to the Vice President, Human Resources of Verity, Inc. That position reported to my office, which has global responsibility for group human resources matters. Jack Landers, the previous Vice President, Human Resources of Verity, Inc., has recently left the company, and as such I have assumed his duties as Plan Administrator within the meaning of the [Plan].

*Sluimer Dec.* Ex. A, HS-0065.

On October 12, 2007, Mr. Sluimer's counsel wrote the Plan Administrator and requested Plan documents and the administrative record, including but not limited to: "[d]ocuments governing the operation the Verity, Inc. Change in Control and Severance Benefit Plan ("the Plan") for the years 2005, 2006 and 2007 [and a]ll documents related the Board's authorizing any person or committee to administer the Plan for the years 2005, 2006 and 2007." *Reilly Dec.* Ex A, HS-0086 – 94. Through counsel, Mr. Sluimer also requested a list of any withheld documents, along with an explanation of why they were being withheld. *Id.*

On November 12, 2007, Mr. Kanter responded and claimed that the requested information was "outside ERISA's boundary pursuant to 29 U.S.C. § 1132 (c)" and was "information protected against disclosure under any doctrine or privilege, including without limitation the attorney-client privilege, work product doctrine and/or any right to privacy." *Reilly Dec.* Ex A, HS-0095-123. Mr. Kanter did not include any documents from the Verity board or anyone else stating that he had been appointed Plan Administrator.

On February 29, 2008, Mr. Sluimer filed a complaint which alleged in part that "[d]efendants have produced no evidence to show that as of September 2006 Kanter was authorized by the PLAN to act as the PLAN Administrator and to make any determinations as to Plaintiff's entitlement to PLAN benefits [and had] a non-designated individual act as PLAN Administrator." Complaint ¶¶ 28, 35.

On April 22, 2008, Mr. Kanter executed a Declaration which stated in relevant part: "Verity became a wholly owned subsidiary of Autonomy, and I became one of two corporate directors of Verity, and later, the Plan Administrator for the" Plan. *Kanter Dec.* ¶ 1. Kanter also declared:

---

benefits was simply an exercise in hubris.

> When a dispute with plaintiff Hugo Sluimer . . . arose, I was authorized to administer the Plan. This occurred because Autonomy has (and has since I joined the company) a strict policy of limiting communications between the company and adverse litigants to certain individuals (to protect the company from inadvertent issues arising in the litigation), because I was group Chief Operating Officer and General Counsel, it was best that I act as Plan Administrator while the dispute with Sluimer was pending. Thus, on or about May 1, 2006, I took over the duties of Plan Administrator.

*Kanter Dec.* ¶ 4.[7]

Purportedly based upon the Kanter Declaration, defendants argue "the board designated Mr. Kanter to serve as the Plan Administrator." *Defendants' Opp.* 20:19, 22:25. Further, defendants maintain that Mr. Kanter was the Plan Administrator when he drafted the May 3, July 6 and September 2006 letters. *Defendants' Mot.* III, (F) (H) & (I). The defendants do not specify any date when this designation supposedly occurred, nor do they offer any evidence to back it up.

Setting aside the fact that Mr. Kanter's Declaration does not state that any board ever designated him to serve as the Plan Administrator, Mr. Kanter's correspondence to Mr. Sluimer establishes that he was not the Plan Administrator during the relevant time period. On September 29, 2006, Mr. Kanter admitted that "Jack Landers, the previous Vice President, Human Resources of Verity, Inc., has recently left the company, and as such I have assumed his duties as Plan Administrator within the meaning of the [Plan]." *Sluimer Dec.* Ex. A, HS-0065. Mr. Landers testified that he left the company on September 15 or 22, 2006. *Ehrman Dec.* , Ex. A (Landers Depo, 32:11-15). The decision on Mr. Sluimer's appeal was due on or before September 11, 2006[8]. Even if Mr. Kanter was designated Plan Administrator after Mr. Landers left the Company, he was

---

[7]Based upon Mr. Kanter's January 6 & 8, 2006 emails it is clear that a dispute arose with Mr. Sluimer on or before those dates.

[8]*See Plaintiff's Motion* 21:26-22:24. The September 11, 2006 due date is calculated by adding 60 days to the date the defendants received the appeal, July 13, 2006. Defendants' Opposition does not contest Mr. Sluimer's claim that the Plan Administrator failed to exercise its discretion within the required time period by failing to render a decision by September 11, 2006. (which means that the ultimate decision rendered was "undeserving of deference." *Jebian,* 349 F.3d at 1106.) Defendants may have conceded this argument because of glaring inconsistences between allegations in their own motion to dismiss and Mr. Kanter's Declaration. In their motion, defendants assert that Mr. Sluimer's July 13, 2006 letter "was received by Verity on August 1, 2006." *Defendants' Mot.* 11:6. Mr. Kanter's Declaration alternately states that he "properly received [Mr. Sluimer's July 13, 2006 letter] on August 1, 2006," indicating he viewed the July 13, 2006 email as improper. Nevertheless, plaintiff's motion for summary judgment attached an email that confirmed that one of Mr. Kanter's subordinate attorneys received the emailed July 13, 2006 letter on July 13, 2006, and the time to respond thus began counting down on that date. *Sluimer Dec.* Ex. A, HS-0062-62.

not the Plan Administrator by his own admission on or before the date that the decision was due on Mr. Sluimer's appeal, let alone during the original claim consideration.

Moreover, despite a request for documents establishing the identity of the Plan Administrator (which ERISA required the Plan to provide) and allegations in the Complaint that Mr. Kanter was not the Plan Administrator, the defendants have failed to produce a single document to establish that Mr. Kanter was ever designated the Plan Administrator. Instead, defendants rely on a Declaration from Mr. Kanter that is internally inconsistent, contradicts the Administrative Record and offers nothing in support of defendants' claim that "the board designated Mr. Kanter to serve as the Plan Administrator." The Administrative Record and all other evidence establishes that Mr. Sluimer's claim was not decided by the Plan Administrator and or that the benefit decision was not made within the time specified by the terms of the Plan. Thus, the claims decision is undeserving of even the modicum of deference it might have been given under *Glenn*, but must instead be reviewed *de novo*.

**2. There Is No Evidence That Kanter Did Anything to Investigate the Claim**

Defendants opposition to the assertion that Kanter failed to properly investigate Mr. Sluimer's claim is ludicrous. It is only a short paragraph long. (Op., at 23.) Basically, the defendants' contention is that Kanter says he properly investigated, and thus it is so. That is not even a genuine argument.

Kanter never requested any information from Mr. Sluimer: he never offered a side-by-side comparison of the two jobs to show they were substantially similar. And in fact the defendants have dropped any claim that the two jobs were substantially similar. The defendants now rest their opposition entirely on the spurious assertion that Mr. Sluimer failed to sign documents they never provided and never asked to be signed, and that they offered him another job, which, even though it was far below his prior position, still constituted "immediate reemployment" in their eyes. These arguments border on condescension. They certainly do not create a genuine issue. Mr. Sluimer is entitled to summary judgment.

### 3. Defendants' Failure to Provide Documents to Mr. Sluimer Works to Their Own Disadvantage.

The defendants offer an equally spurious response to the contention that they failed to provide requested documents. The problem with defendants' contention that they didn't have to provide privileged documents and other documents they deemed outside ERISA's scope (whatever that is supposed to mean) is that defendants are limited in the documents they can use in their defense to those documents they did provide to Mr. Sluimer. *See Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110-11 (9th Cir. 1999). And as none of those documents supports any genuine issue militating against summary judgment, Mr. Sluimer is entitled to summary judgment.

Defendants do not dispute that they failed to provide the complete Administrative Record to Mr. Sluimer upon request, or at all. Nor do they dispute that the Court must allow Mr. Sluimer to supplement the incomplete "record." Nor do they dispute that they should not be permitted to supplement the "record" as the Ninth Circuit has confirmed they may not.[9] *See Friedrich*, 181 F.3d at 1110-11. Plaintiff's have not objected to the Declaration of Mr. Sluimer or any of the documents attached thereto.[10] Defendants do not address the Court's scope of review in their opposition. Thus, plaintiff respectfully requests that the Court limit its scope of review to the documents submitted by plaintiff in support of this motion, which includes all documents purportedly making up the "administrative record" that defendants provided to Mr. Sluimer.

## D. MR. SLUIMER IS ENTITLED TO PLAN BENEFITS

On July 23, 2006, Verity wrongfully cancelled all of Mr. Sluimer's outstanding non-vested options to purchase because of the improper denial of his claim for benefits. Mr. Sluimer's cancelled options to purchase vested should be vested purchase options as follows:

1) Under Grant 8513, 22,819 options to purchase at an exercise price of $5.13

2) Under Grant 6885, 40,568 options to purchase at an exercise price of $7.25.

3) Under Grant 8061, 54,766 options to purchase at an exercise price of $5.63.

---

[9] Plaintiff will file an objection to the evidence submitted by defendants based upon this and other reasons.

[10] Defendants did object to the Van Der Pijl and Reilly Declarations, those objections will be addressed in separate responses.

*Sluimer Dec.* Ex. A HS-0083.

Pursuant to the Plan, Mr. Sluimer was also entitled to a 12 month period of "Extended Exercisability" of those options. The "Extended Exercisability" period should be measured from the date the vested purchase options are provided to Mr. Sluimer.

Additionally, the Plan and Participation Notice provided that Mr. Sluimer was entitled to 18 months of Continued Medical Benefits. Mr. Sluimer paid €3,873.30 to continue his medical benefits for the 18 months after his employment with Verity was terminated in June 2006. *Sluimer Dec.* ¶ 6, Ex. A HS-0084-85. The defendants should be order to reimburse Mr. Sluimer €3,873.30 for his Continued Medical Benefits.

**E. MR. SLUIMER IS ALSO ENTITLED TO STATUTORY PENALTIES**

Defendants contention that they provided all proper documentation to Mr. Sluimer is absurd considering they admit that they did not provide him with the Release, Non-Compete and Confidentiality Agreements that they contend needed to be executed for Mr. Sluimer to be eligible for benefits. Furthermore defendants' contention that the documents were properly withheld based upon privilege is equally absurd. No privilege is attached to Mr. Sluimer's own claim documents, Plan documents or documents establishing how the Plan was administered. Defendants were required to produce those documents and they failed to produce those documents. Defendants' failure to produce the required documents has severely prejudiced Plaintiff and this Court. Accordingly, an award of statutory fees is especially warranted here.

## V. CONCLUSION

Based upon the foregoing, Mr. Sluimer respectfully requests that the Court grant his motion for summary judgment, provide him with accelerated stock option vesting, extended time period in which to exercise stock options and continued medical benefits under the Plan, removal of the fiduciary, statutory penalties, interest and attorneys' fees.

Respectfully submitted,

RIMAC & MARTIN, P.C.

DATED: July 3, 2008 By: **/s/ WILLIAM REILLY**
WILLIAM REILLY
Attorneys for Plaintiff HUGO SLUIMER