1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6        FOR THE NORTHERN DISTRICT OF CALIFORNIA
7

8   HUGO SLUIMER,                              No. C 08-01220 SI

9              Plaintiff,                      **ORDER GRANTING PLAINTIFF'S**
                                               **MOTION FOR SUMMARY JUDGMENT**
10     v.                                      **AND DENYING DEFENDANT'S**
                                               **MOTION TO DISMISS AND MOTION**
11  VERITY, INC, and THE VERITY, INC.,         **FOR SUMMARY JUDGMENT**
    CHANGE IN CONTROL AND SEVERANCE
12  BENEFIT PLAN,

13             Defendants.
                                            /
14

15         The parties have filed cross-motions for summary judgment, and defendant has filed a motion

16   to dismiss.  Argument on the matter was heard on July 18, 2008.  Having considered the arguments of

17   the parties and the papers submitted, the Court hereby DENIES defendant's motions and GRANTS IN

18   PART plaintiff's motion for summary judgment.

19
                                        **BACKGROUND**
20
21         This case raises the question of whether a former employee was properly denied benefits under

22   a plan governed by the Employee Retirement Income Security Act ("ERISA").  The parties do not

     dispute the following facts.  Plaintiff Hugo Sluimer was employed by defendant Verity, Inc., a computer
23
     software provider, from 1990 until December 2005, when defendant was acquired by Autonomy
24
     Company.  In anticipation of a possible acquisition, defendant Verity created, in April 2005, a "Change
25
26   in Control and Severance Benefit Plan" ("Plan"), which provided that if a Plan participant experienced

27   a "covered termination" following a change in control, the participant would receive benefits such as

28   a cash severance, accelerated stock option vesting, and continued medical benefits.  *See generally*

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Kanter Decl. at ex. A.  The Plan defined a "covered termination" as either an involuntary termination without cause or a voluntary termination after "a substantial reduction in the Participant's duties or responsibilities." *Id.* at ex. A, §§ 2(g) & (f).  The Plan labeled this latter termination a "constructive termination."  *Id.*  On May 4, 2005, defendant informed plaintiff that he would be considered a participant in the Plan.  Plaintiff confirmed his participation and both parties signed a notice indicating that plaintiff would not be eligible for any cash severance under the Plan and that his entitlement to a cash severance would be determined under Dutch law "without reference to the Plan."  Kanter Decl. at ex. B.

After Autonomy acquired defendant Verity, plaintiff was informed that he was at risk of termination unless a suitable alternative position was identified.  On January 5, 2006, Autonomy's chief operating officer, Andrew Kanter, contacted plaintiff and informed him that there likely would not be a similar position available for him at Autonomy; a few hours later, plaintiff's access to his company email address was terminated.  Plaintiff, however, continued to receive his base salary for the next few months.  On March 23, 2006, Kanter sent plaintiff a letter alerting him to an alternative position at Neurodynamics, an entity controlled by Autonomy.  The letter did not contain many details about the new position, and over the next month or so plaintiff attempted to learn more about the position to determine whether it was comparable to his former position.  Plaintiff now alleges, and defendant does not dispute, that the new position would have meant a significant reduction in the amount of revenue for which plaintiff was responsible, the number of employees plaintiff had managed, and the variety of duties and responsibilities with which plaintiff had been charged.

On April 19, 2006, plaintiff filed a lawsuit in a court in the Netherlands seeking a cash severance benefit under Dutch law (not under the Plan).[1]  On June 7, 2006, the Dutch court issued an order declaring that the new position was not an "alternative suitable position," terminating the employment relationship between plaintiff and defendant, and awarding plaintiff a cash severance of roughly one

---

[1] Defendant objects to plaintiff's submission of documents related to the Dutch court proceeding. The Court takes judicial notice of the decision of the Dutch court, and does not rely on the other documents submitted in connection with the Dutch proceeding.  In any event, the Court notes that the Dutch court "decision [was] considered in reaching" Kanter's decision to deny benefits. Sluimer Decl. at ex. B, HS 66.

1   million euros.

2       During the pendency of the Dutch proceeding, plaintiff sought a determination from the Verity

3   plan administrator that he was entitled to benefits under the Plan. Plaintiff's letter of May 1, 2006,

4   asked for a confirmation that he was entitled to accelerated stock option vesting and medical benefits

5   contemplated by the Plan. This letter was addressed to Jack Landers, who plaintiff believed was the

6   plan administrator. Kanter, not Landers, responded to plaintiff on May 3, 2006, stating that plaintiff was

7   not entitled to benefits under the Plan because he had been offered "immediate reemployment" within

8   the meaning of the Plan, had not confirmed in writing that he would be subject to Autonomy's

9   confidentiality and non-compete agreements, as required by the Plan, and had not executed a waiver and

10  release of claims against Autonomy, as required by the Plan. Kanter sent another letter on July 6, 2006,

11  confirming that plaintiff's application for benefits had been denied. This letter stated the same grounds

12  for denial as the May 3rd letter, but also added that plaintiff had not suffered a "constructive

13  termination" within the meaning of the Plan. On July 13, 2006, plaintiff requested a review of this

14  decision and raised arguments regarding each of Kanter's grounds for denying benefits. On September

15  29, 2006, Kanter announced that he had reviewed the prior decision and that it was upheld. Kanter also

16  informed plaintiff that he had assumed the duties of the plan administrator because Landers had recently

17  left the company.

18      On February 29, 2008, plaintiff filed the instant action against Verity and the Plan. Plaintiff's

19  complaint argued that he had been constructively terminated and thus entitled to benefits under the Plan,

20  such as the accelerated vesting of stock options and continued medical benefits. Plaintiff also sought

21  statutory penalties under § 502(c)(1) of ERISA for defendant's failure to produce documents related to

22  the plan administrator's decision. Now before the Court are the parties' cross-motions for summary

23  judgment, as well as defendant's motion to dismiss the complaint.

24

25                              **LEGAL STANDARD**

26      Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

27  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

28  material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

United States District Court
For the Northern District of California

56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only point out to the Court that there is an absence of evidence to support the non- moving party's case.  *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  *Id.* at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment."  *Id.*

**DISCUSSION**

Currently before the Court is defendant's motion to dismiss or, in the alternative, motion for summary judgment, as well as plaintiff's motion for summary judgment.  Defendant asks the Court to uphold the decision of the plan administrator and deny plaintiff's claims for benefits under the Plan, while plaintiff asks the Court to find that he is eligible and entitled to receive benefits.  As an initial matter, the Court DENIES defendant's motion to dismiss.  As discussed below, the Court also GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment.

**I.   Standard of review**

A threshold issue disputed by the parties is whether the Court should review Kanter's decision

United States District Court
For the Northern District of California

*de novo* or under the abuse of discretion standard.  The Supreme Court has held that denials of benefits under ERISA are reviewed *de novo* by the district court "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  "[F]or a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1998)).  The parties do not dispute that the plan provides the administrator with discretionary power, *see* Kanter Decl. at ex. A, § 8(a), and therefore that an abuse of discretion standard would normally apply here.

The abuse of discretion standard, however, can be heightened by the presence of a conflict of interest.  *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322 (9th Cir.1995).  "A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Abatie*, 458 F.3d at 968.  Factors that could show an administrator's self-interest include:

> evidence of malice, of self-dealing, or of a parsimonious claims-granting history, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id.* at 968-69.  Recently, the Supreme Court confirmed that a conflict of interest will also be found where the "entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).  Where such conflicts exist, courts must adhere to the abuse of discretion standard – rather than apply *de novo* review – but must "take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion." *Id.* at 2350.

Plaintiff argues that the Court should not defer to Kanter's decision regarding plaintiff's eligibility for benefits because Kanter has a conflict of interest and a personal bias against plaintiff. Defendant does not seriously dispute the existence of some degree of conflict, and the Court agrees with

plaintiff that Kanter's roles as chief operating officer of Autonomy and plan administrator create a conflict of interest because Kanter is responsible for determining eligibility under the plan and also serves as a high-level executive and director of the entity that would serve as the source of funding for plaintiff's benefits were plaintiff found eligible. *See Metropolitan Life Ins.*, 128 S. Ct. at 2346. The Court also finds a related, though distinct, conflict of interest inherent in Kanter's dual role as the person offering plaintiff alternative employment and the person evaluating whether that alternative employment is sufficient under the plan to render plaintiff ineligible for benefits. *See* Kanter Decl. at ex. A, §§ 2(f) & 3(b). Accordingly, although the Court rejects plaintiff's call for *de novo* review, the Court will consider these conflicts of interest as it evaluates Kanter's decision and will apply a heightened abuse of discretion standard. *See generally Abatie*, 458 F.3d at 968.

Plaintiff also argues the Court owes no deference to Kanter's decision because Kanter was not the plan administrator at the time he made the decision to deny benefits to plaintiff.[2] The Plan defines the plan administrator as

> the Board or any committee duly authorized by the Board to administer the Plan. The Plan Administrator may, but is not required to be, the Compensation Committee of the Board. The Board may at any time administer the Plan, in whole or in part, notwithstanding that the Board has previously appointed a committee to act as the Plan Administrator.

Kanter Decl. at ex. A, § 2(l). Kanter claims that he was made plan administrator on or about May 1, 2006, *see* Kanter Decl. at ¶ 4, and this is confirmed by a member of Verity's board of directors, *see* Hussain Decl. at ¶ 2. However, Jack Landers, the former plan administrator, testified that he was never informed that he had been relieved as plan administrator. Ehrman Decl. at ex. A (Deposition of Jack Landers at 18-20). In addition, Kanter never identified himself to plaintiff as the plan administrator until

---

[2] Plaintiff also argues that the Court owes no deference to Kanter's decision because his September 29, 2006 "decision on review" was not made within 60 days of plaintiff's "request for review," as required by § 11(d) of the plan as well as by 29 C.F.R. § 2560.503-1(i)(1)(i), and thus should be "deemed denied" rather than denied following an exercise of discretion. *See Jebian v. Hewlett-Packard Co. Employee Benefits Org.*, 349 F.3d 1098, 1106 (9th Cir. 2003). However, this argument presents two problems not addressed by plaintiff. First, the plan requires the administrator to act on a request for review within 60 days "after receipt of the request," not within 60 days of the date the request was mailed. *See* Kanter Decl. at ex. A, § 11(d). Second, the *Jebian* court specifically clarified that its application of *de novo* review was based on an earlier version of the regulation, and that the new regulation, the one at issue here, no longer provided "that transgressions of time limitations will result in the claim being 'deemed denied.'" *Jebian*, 349 F.3d at 1103 n.5.

September 29, 2006, when Kanter sent plaintiff a letter explaining that "Jack Landers . . . has recently left the company, and as such I have assumed his duties as Plan Administrator within the meaning" of the Plan. Sluimer Decl. at ex. B, HS 65. Thus, the facts are in dispute as to whether Kanter was the plan administrator. However, this dispute is of no relevance because, as explained below, the Court finds it appropriate to overturn Kanter's decision even under heightened abuse of discretion review.

## II.    Plaintiff's compliance with the Plan's notice requirement

Plaintiff argues that he is entitled to benefits because, although he was offered an alternative position after Autonomy purchased Verity, this position would have resulted in a substantial reduction in his duties and responsibilities and thus should be considered a "constructive termination." *See* Kanter Decl. at ex. A, § 2(f). Plaintiff's reliance on the constructive termination provision of the Plan poses a second threshold question: whether plaintiff is precluded from seeking benefits because he failed to comply with the notice requirements for constructive termination. The Plan provides that a participant's voluntary termination after a reduction in duties or responsibilities "shall not be deemed a Constructive Termination unless . . . the Participant provides the Company with written notice . . . that the Participant believes that an event described in this Section 2(f) has occurred." *Id.* Such notice must be provided within three months of the date the constructive termination occurred, and the company has 15 days after receipt of the notice to cure the conduct giving rise to the constructive termination. *Id.*

The parties dispute the date the constructive termination should be deemed to have occurred, and thus when the three-month window for plaintiff's notice would have closed. Defendant argues that Autonomy's decision to place plaintiff on leave should have triggered his notice requirement, resulting in either a March 6, 2006 or a March 29, 2006 deadline for plaintiff to give notice. In response, plaintiff contends that the event triggering his notice requirement could not have occurred until at least April 18, 2006, when plaintiff learned, for the first time, what the alternative position would entail. The Court agrees. It would have been impossible for plaintiff to notify Autonomy that he believed a constructive termination had occurred until he had been provided with sufficient detail about the alternative position to determine whether the position would result in "a substantial reduction in [his] duties or responsibilities." Kanter Decl. at ex. A, § 2(f). The earliest date plaintiff possibly could have been in

1  possession of this information was March 23, 2006, when Autonomy first offered plaintiff an alternative

2  position with Neurodynamics. *See* Sluimer Decl. at ex. B, HS 35-36. The March 23 letter did not

3  provide any details about the alternative position, and defendant does not appear to dispute that plaintiff

4  did not learn the necessary details until at least April 18, 2006, when plaintiff met with David

5  Humphrey, the would-be supervisor of the position. *See* Sluimer Decl. at ¶ 9. Accordingly, plaintiff's

6  constructive termination notice was due on or before July 18, 2006.

7       Defendant also argues that even if plaintiff's notice was not due until July 18, plaintiff failed to

8  comply with the notice requirement because his correspondence did not clearly notify defendant that

9  he believe a constructive termination had occurred. The Court disagrees. Plaintiff first notified Kanter

10  on April 25, 2008, via email, that "[t]he alternative position that Autonomy offered to me is just not

11  comparable at all to my former job with Verity." Sluimer Decl. at ex. B, HS 54. Later, in a letter sent

12  by email and "registered delivery" on July 13, 2006, plaintiff notified the plan administrator that "I

13  claim, per section 2 (f) 'Constructive Termination' (i) due to a substantial reduction in the Participant's

14  duties and responsibilities." *Id.* at ex. B, HS 61. In addition, it is clear to the Court that defendant

15  received actual notice that plaintiff believed he had been constructively terminated because Kanter

16  indicated in two separate letters to plaintiff that he did not agree that the alternative position amounted

17  to a constructive termination. On July 6, 2006, Kanter wrote to plaintiff that "[y]ou have not suffered

18  a 'Constructive Termination' within the meaning of Section 2(f) of the Plan." *Id.* at ex. B., HS 59. On

19  September 29, 2006, Kanter again wrote to plaintiff that "[a]s you are aware, it is the company's

20  position that you did not suffer a substantial reduction in your duties or responsibilities." *Id.* at ex. B,

21  HS 65. For these reasons, the Court finds that plaintiff is not precluded from seeking benefits under the

22  Plan for failure to provide the required constructive termination notice, and DENIES defendant's motion

23  for summary judgment on this ground.[3]

24  _____

25       [3] Two additional arguments raised by defendant should be addressed. Defendant contends that
    the July 13th letter cannot constitute proper notice because the letter was not "delivered personally or
26  deposited in the U.S. mail, First Class with postage prepaid," as per the general notice provisions of the
    Plan. Kanter Decl. at ex. A, § 15(a). Although plaintiff does not appear to respond to this argument,
27  the Court finds that the letter was appropriately sent by registered foreign mail because plaintiff resides
    in Monaco, and in any case defendant received the letter through the United States mail at its California
28  address. Defendant also puts forth the argument, raised for the first time in its reply brief, that plaintiff's

United States District Court

For the Northern District of California

**III.    Determination of eligibility by the plan administrator**

Applying the abuse of discretion standard, the Court must reverse the determinations of the plan administrator if they are arbitrary and capricious. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001). "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000). The question is not "whose interpretation of the plan documents is most persuasive, but whether the . . . interpretation is unreasonable." *Canseco v. Constr. Laborers Pension Trust*, 93 F.3d 600, 606 (9th Cir. 1996 ) (citations and internal quotations omitted). The reviewing court must look to the plain language of the plan to determine whether the administrator's interpretation of the plan is "arbitrary and capricious." *Id.* The Ninth Circuit has consistently explained that administrators "abuse their discretion if they construe provisions of a plan in a way that clearly conflicts with the plain language of the plan." *Id.* (internal quotation marks and citations omitted). In addition, "an error of law constitutes an abuse of discretion." *Schikore*, 269 F.3d at 960.

Here, the plan administrator, Kanter, denied plaintiff's request for benefits under the Plan for four reasons: (1) plaintiff had been offered "immediate reemployment" in accordance with § 3(b)(iii) of the Plan; (2) plaintiff did not suffer a "constructive termination" under § 2(f) of the Plan; (3) plaintiff had failed to confirm in writing, per § 3(b)(iv), that he would be subject to a confidentiality and non-compete agreement; and (4) plaintiff had failed to execute a waiver and release generally releasing Autonomy from all claims and liabilities.

**A.    Immediate reemployment**

The Plan provides that "[a]n employee . . . will not receive benefits under the Plan" if the employee "is offered immediate reemployment by a successor to the Company or by a purchaser of its assets, as the case may be, following a change in ownership of the Company." Kanter Decl. at ex. A,

---

July 13th letter could not have constituted notice because his claim for benefits had already been denied at that time and because his employment contract had already been dissolved by the Dutch court, such that Autonomy would have been unable to exercise its right to cure the alleged constructive termination. The Court does not agree, and need not reach this untimely argument.

§ 3(b)(iii). The Plan defines "immediate reemployment as "uninterrupted employment such that the employee does not suffer a lapse in pay as a result of the change in ownership of the Company or the sale of its assets." *Id.* The "immediate reemployment" section of the Plan contains no requirements about the quality of the new employment offer or whether it must be comparable to the employee's former employment. As such, the plain language of § 3(b)(iii) would preclude employees from receiving benefits under the Plan as long as their employment is uninterrupted and there is no lapse in pay, without regard to any changes in duties, responsibilities, location, supervision structure, or other aspects of employment that distinguish one position from another.

Pursuant to this provision, Kanter denied plaintiff benefits because he was offered immediate reemployment that was "continuous, with uninterrupted payment of salary, commission and other benefits such as stock option vesting." Sluimer Decl. at ex. B., HS 65; *see also id.* at HS 59. Defendant continues to argue that this decision was correct because plaintiff was offered the Neurodynamics position without an interruption in his salary. Plaintiff, on the other hand, argues that this job offer did not constitute immediate reemployment because he was offered employment with a third party, not Autonomy, and because he suffered a "lapse in pay" when his average monthly income declined following the acquisition of Verity. More importantly, plaintiff also argues that the immediate reemployment provision of the Plan, § 3(b)(iii), must be read in conjunction with the constructive termination provision, § 2(f), and thus that plaintiff would be ineligible for benefits under § 3(b)(iii) only if the new position constituting uninterrupted employment would not lead to a substantial reduction in duties or responsibilities.

The Court agrees with plaintiff's interpretation of the Plan and therefore need not reach plaintiff's other arguments. The Plan is explicit that severance benefits will be provided in the event of a "covered termination," Kanter Decl. at ex. A, § 3(a), which is defined as "an Involuntary Termination Without Cause or a Constructive Termination," *id.* at ex. A, § 2(g). A constructive termination, in turn, is defined as, *inter alia*, "a substantial reduction in the Participant's duties or responsibilities" or "a change in the Participant's business location of more than 20 miles." *Id.* at ex. A, § 2(f). Thus, the Plan unambiguously provides that an employee may be eligible for benefits under the plan as the result of reassignment to a position that is not comparable to the employee's former

position. Reading the immediate reemployment provision of the plan to exclude any consideration of the differences between the former position and the new position, as defendant suggests, would render the constructive termination provision mere surplusage whenever an employee's pay remains constant. It would mean that, as plaintiff suggests, plaintiff would be ineligible to receive benefits even if Autonomy had shifted his position from senior vice president to janitor, as long as the transition was immediate and he suffered no lapse in pay. *See* Kanter Decl. at ¶ 13 ("Thus, the only criteria I was to consider in determining whether Sluimer had been offered 'immediate reemployment' was whether he suffered a lapse in pay."). The Court does not believe the Plan was intended to lead to such an anomalous result, and cannot permit the constructive termination provision to be read out of the Plan when it is possible to give effect to both provisions. *See Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1519 n.10 (9th Cir. 1985) ("The first choice, when construing a contract is, of course, to give effect to all of its provisions. Only when that is impossible, should a court choose to apply one clause and ignore another."). Accordingly, the Court construes the immediate reemployment provision as applying only to positions that would fall outside the definition of constructive termination. As such, Kanter erred as a matter of law when he determined, independent of any consideration of the quality of the position, that plaintiff had been offered immediate reemployment. Whether or not plaintiff was offered immediate reemployment necessarily turns on the propriety of Kanter's determination that Autonomy did not constructively terminate plaintiff, and the Court DENIES defendant's motion for summary judgment on grounds of immediate reemployment.

### B.      Constructive termination

As discussed above, the Plan provides that an employee may be eligible for severance benefits when he is offered a position that would result in "a substantial reduction in the Participant's duties or responsibilities (and not simply a change in title or reporting relationships) in effect immediately prior to the effective date of the Change in Control." Kanter Decl. at ex. A, § 2(f)(i). A constructive termination will not be found, however, where "the Participant holds a position with duties and responsibilities comparable (though not necessarily identical . . .) to the duties and responsibilities of the Participant prior to the effective date of the Change in Control." *Id.* Kanter determined that plaintiff

**United States District Court**
For the Northern District of California

1   did not experience a constructive termination because "it is the company's position that you did not

2   suffer a substantial reduction in your duties or responsibilities in effect immediately prior to the effective

3   date of the Change in Control." Sluimer Decl. at ex. B, HS 65; *see also id.* at ex. B, HS 59. Kanter also

4   determined that the decision of the Dutch court with regard to the offered position was neither binding

5   nor persuasive. *Id.* at ex. B, HS 66.

6          Plaintiff argues that the decision of the Dutch court should have preclusive effect on the question

7   whether the new position offered by Autonomy resulted in a constructive termination. In support of this

8   argument, plaintiff points to the Dutch court's decision that "seeing the kind and the importance of the

9   job offered at Neurodynamics, as well as the number of employees at Neurodynamics, Sluimer made

10  it sufficiently convincing that from the point of view of labor law, the job cannot be considered a

11  suitable alternative job." Reilly Decl. at ex. H, ¶ 5. Collateral estoppel, also known as issue preclusion,

12  "bars the relitigation of issues actually adjudicated in previous litigation between the same parties."

13  *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Plaintiff correctly contends that

14  the decision of a foreign court may have preclusive effect in federal court, but fails to address an issue

15  of primary importance in deciding whether issue preclusion applies: whether "the issue at stake [is]

16  identical to the one alleged in the prior litigation." *Id.* Examination of the Dutch court decision reveals

17  no indication that the court considered whether the alternative position amounted to a constructive

18  termination or whether it would lead to a substantial reduction in plaintiff's duties or responsibilities.

19  Indeed, there is no indication that the Dutch court ever addressed or considered the Plan itself. Rather,

20  the question before the Dutch court was whether, under Dutch law, "the labor agreement" should be

21  "dissolved." Reilly Decl. at ex. H, ¶¶ 5, 6. In this context, the court determined that "from the point

22  of view of labor law," the new position was not a "suitable alternative job." *Id.* at ex. H, ¶ 5. The Court

23  therefore holds that the Dutch court did not decide an issue identical to the one presented here, such that

24  the decision has no collateral estoppel effect in this Court.

25         Plaintiff next argues that the Neurodynamics position would have led to a substantial reduction

26  of plaintiff's duties and responsibilities. The Court agrees. Although Kanter determined that plaintiff

27  would not have suffered a substantial reduction in his duties or responsibilities had he taken the position

28  offered to him, the Court finds that, under heightened abuse of discretion review, this decision was

United States District Court
For the Northern District of California

unreasonable and contrary to the uncontroverted evidence.  It is undisputed that at the time Autonomy acquired Verity, plaintiff was a Senior Vice President for operations in Europe, the Middle East, Africa, and Asia, managing over 100 employees including 10 country managers.  Sluimer Decl. at ¶¶ 2, 8.  It is also undisputed that plaintiff "was responsible for overseeing operations generating approximately $50,000,000 in revenue," that he reported directly to Verity's president and CEO, and that his responsibility extended to various facets of Verity's business, including sales, marketing, finance, administration, and technical operations.  *Id.*  In contrast, the Neurodynamics position that Kanter offered to plaintiff would have put him in charge of roughly $5,000,000 in revenue and only 15 employees.  *Id.* at ¶ 8.  The Neurodynamics position also would have involved only sales, and would have required plaintiff to report to a general manager rather than the CEO.  *Id.*  These differences are undisputed, and defendant has made no attempt – either in its briefing before this Court or in the plan administrator's decision – to refute the factual differences between the two positions or to explain how the two positions could have comparable duties and responsibilities.  The Court therefore holds that plaintiff suffered a constructive termination within the meaning of § 2(f) of the Plan.

### C.      Conditions precedent to receipt of benefits

The "Exceptions to Benefit Entitlement" section of the Plan provides that an employee "will not receive benefits under the Plan" if the employee "does not confirm in writing that he or she shall be subject to the Company's Confidentiality Agreement and Non-Compete Agreement."  Kanter Decl. ex. A, § 3(b)(iv).  Similarly, the "Limitations on Benefits" section of the Plan provides that "[i]n order to be eligible to receive benefits under the Plan, a Participant also must execute a general waiver and release in substantially the form attached hereto as Exhibit B, Exhibit C, or Exhibit D."  *Id.* at ex. A, § 7(a).  In addition to determining that plaintiff had been offered immediate reemployment and that he had not suffered a constructive termination, Kanter determined that plaintiff's failure to comply with these provisions meant that plaintiff was ineligible to receive benefits, *see* Sluimer Decl. at ex. B, HS 59, 66, and it is undisputed that plaintiff never executed a general waiver and release or provided written confirmation that he would be subject to Autonomy's confidentiality and non-compete agreements.

Defendant argues that these requirements were conditions precedent to plaintiff's *participation*

13

in the Plan, i.e. his eligibility to be considered for benefits.  *See*, *e.g.*, Defendants' Reply at 2.  Plaintiff

argues the requirements were only conditions precedent to *receipt* of benefits, not to participation in the

Plan or a determination of eligibility, and that he would have fulfilled these conditions if and when he

was to be awarded benefits.  For the following reasons, the Court holds that it was an abuse of discretion

for Kanter to base his denial of eligibility on conditions that did not need to be fulfilled unless and until

plaintiff was to be awarded benefits.

The Supreme Court has confirmed that an employer may, without violating ERISA, require an

employee to "cross a picket line," "retire early," or execute "a release of claims against the employer"

in connection with an ERISA plan.  *Lockheed v. Spink*, 517 U.S. 882, 894 (1996).  Each of these "is an

act that the employee performs for the employer *in return for benefits*."  *Id.* (emphasis added).  In other

words, these exchanges of value involve "a *quid pro quo* between the plan sponsor and the participant:

that is, the employer promises to pay increased benefits in exchange for the performance of some

condition by the employee."  *Id.*  This language strongly suggests that an employee's provision of a

release of claims, for instance, occurs only after it has been determined that the employee will otherwise

receive benefits in exchange.  Defendant contends, however, that an employee must perform all required

conditions before any decision has been made by the plan administrator whether the employee is

otherwise entitled to receive benefits.  Defendant has it precisely backwards.  It would be illogical to

require an employee to hand over his or her rights – for instance, his right to bring a claim against the

employer or to postpone retirement – in exchange merely for consideration of eligibility, a point in the

process where the employer has not yet parted with anything of real value to the employee.  Rather, that

*quid pro quo*, as the Supreme Court has indicated, is an exchange of the employee's rights for the

provision of the benefits themselves.  The conditions precedent are actions the employee takes "in return

for benefits" once the employer has already "promise[d] to pay increased benefits."  *Id.*

This understanding of the proper timing of these conditions precedent is supported by the

language of the Plan itself.  The Plan provides no direct indication that these requirements are conditions

precedent to an employee's *participation* in the Plan, and defendant has not pointed to any such

language.  Instead, the Plan's language indicates that the requirements are conditions to *receipt* of

benefits.  The Plan states that an employee who does not provide written confirmation regarding the

United States District Court
For the Northern District of California

confidentiality and non-compete agreements "will not *receive* benefits." Kanter Decl. ex. A, § 3(b) (emphasis added). Similarly, the Plan states that an employee who fails to execute a general waiver and release will not "be eligible *to receive* benefits." *Id.* at ex. A, § 7(a) (emphasis added).[4] Section 7(a) also states that the employer "shall determine the form of the required release," indicating that plaintiff could not have signed the release until Autonomy provided him with the appropriate form, a process that presumably would take place at the time the Plan was to take effect and benefits were to be awarded, not prior to the decision whether plaintiff was eligible for benefits. Accordingly, the Court concludes that the signing of a waiver and release and the written confirmation regarding the confidentiality and non-compete agreements are conditions precedent only to plaintiff's receipt of benefits, not to plaintiff's eligibility for benefits, and that Kanter abused his discretion when he relied on these conditions to reject plaintiff's benefits application before determining whether plaintiff should be awarded benefits.

Having decided that it was unnecessary for plaintiff to perform the conditions of §§ 3(b)(iv) & 7(a) until it had been determined that he would otherwise receive benefits, the Court must consider whether plaintiff is precluded from fulfilling the waiver and release condition because, by bringing claims against Autonomy in Dutch court, he has already taken an action that is inconsistent with the release. Defendant argues that plaintiff "could not have executed a general release and waiver in the form required by Section 7(a) of the Plan without releasing his claims in the Dutch Lawsuit as well as his claims here." Defendants' Motion at 19. In support of this contention, defendant relies on *Harlan v. Sohio Petroleum Co.*, 677 F. Supp. 1021 (N.D. Cal. 1988), in which an employer had determined that an employee could not sign a release that was a condition precedent to receiving benefits because the employee "had already filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC)" which "was inconsistent with the release," *id.* at 1024. The *Harlan* court, however, never explicitly reached the question whether the employee was precluded by his discrimination claims from ever signing the release. Even if the *Harlan* court had reached that question, the situation presented here is considerably different because at the time the parties agreed to the Plan,

---

[4] Part of defendant's confusion may stem from defendant's misunderstanding of this provision. Defendant misquotes § 7(a) as stating "[i]n order to be eligible for benefits under the Plan . . . ." *See* Defendants' Reply at 2. The plan, however, states "[i]n order to be eligible to receive benefits under the Plan . . . ." Kanter Decl. ex. A, § 7(a).

United States District Court
For the Northern District of California

they understood that plaintiff "will be entitled to no cash severance benefit under the terms of the Plan, and any cash benefit to which [plaintiff] shall be entitled shall be determined under Dutch law without reference to the Plan." Kanter Decl. ex. B (Plan participation notice signed by the parties). In other words, from the outset, the parties had contemplated plaintiff's Dutch court action. Because it was expected that plaintiff's entitlement to a cash severance would be determined in a separate proceeding, that proceeding does not bar plaintiff from fulfilling the waiver and release condition. Were it otherwise, plaintiff would be forced to make a decision between either pursuing his cash severance under Dutch law and foregoing his eligibility to receive benefits under the Plan, or pursuing his benefits under the Plan and foregoing his cash severance. Either option would violate the Plan's "Participation Notice" and lead to absurd results.

For these reasons, the Court holds that the plan administrator abused his discretion in denying plaintiff benefits, that plaintiff is eligible to receive benefits because he suffered a constructive termination under the terms of the Plan, and that plaintiff may fulfill the § 3(b)(iv) and § 7(a) conditions in exchange for receiving benefits under the Plan.

**IV.     Entitlement to statutory penalties**

Plaintiff also moves for summary judgment on the question whether defendant should be subject to statutory penalties for failure to furnish documents requested by plaintiff. *See* 29 U.S.C. §§ 1022(a), 1024(b)(4) & 1132(c)(1). The Court finds that plaintiff has not, at this time, met his burden of showing that documents that were statutorily-required to be produced were not in fact produced. Plaintiff's motion for summary judgment on this ground is DENIED.

/ / /

16

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for summary judgment in part [Docket No. 22] and DENIES defendant's motion to dismiss and motion for summary judgment [Docket No. 18].

**IT IS SO ORDERED.**

Dated: July 22, 2008

_____

SUSAN ILLSTON
United States District Judge